ACCEPTED
01-15-00408-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/5/2015 7:01:51 AM
CHRISTOPHER PRINE
CLERK

# FIRST COURT OF APPEALS

# HOUSTON, TEXAS

## RE: Case No. 01-15-00408-CV

## IN RE JOSEPH ANDRE DAVIS

## APPELLANT

## V.

## FLOYD D. LOPEZ

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

8/5/2015 7:01:51 AM

CHRISTOPHER A. PRINE
Clerk

## APPELLEE

## From cause No. 2014-58410

## in the 245th District Court of

## Harris County, Texas

## The Honorable Roy L. Moore

_____

**MOTION FOR CLARIFICATION, REHEARING, AND REHEARING EN BANC OF THE PER CURIAM AFFIRMANCE AND REQUEST FOR A WRITTEN OPINION AND CERTIFICATION**

_____

Appellant, Joseph Andre Davis, pursuant to Rules 47, 48, and 49 of Texas Rules of

Civil Procedures, hereby respectfully move this Court for rehearing, rehearing en

blanc, clarification, certification; written opinion of the Court's July 28, 2015

decision in this matter and request a written opinion, and certification of question to Texas Supreme Court.

I, Joseph Andre Davis, respectfully request clarification of the Court's order summarily denying a Writ of Mandamus and Motion to Stay from judgment of the lower court's decision and their failure to rule on the May 01, 2015 request for a Writ of Mandamus. I, Joseph Andre Davis, respectfully assert that the Court has overlooked or misapprehended critical facts and has misapprehended the law. I, therefore, request a rehearing. I, further, respectfully assert that the case is of exceptional importance and that this Court's decision to affirm the lower court conflicts with decisions of the Texas Appellate courts, the Texas Supreme Court and the U.S. Supreme Court Constitutional and fundamental rights that are protected by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. Therefore, I am requesting a rehearing en banc.

I, Joseph Andre Davis, also respectfully assert that a written opinion would provide a legitimate, good faith basis for Texas Supreme Court review and request that this court issue a written opinion regarding its decision to affirm the lower court.

Finally, Appellant Joseph Andre Davis, requests that this court certify a question of great public importance to the Texas Supreme Court. My arguments are set forth below.

## I. Motion for Clarification

Because this Court issued only a per curiam affirmance, Appellant Joseph Andre Davis can only assume that the Court granted summary affirmance under Texas R. App. P. I request clarification of the Court's position that no preliminary basis for reversal has been demonstrated.

## II. Motion for Rehearing

Because the Court denied Writ of Mandamus Appellant Joseph Andre Davis filed May 01, 2015, and First Court Of Appeals did not provide a written opinion for its decision to affirm the lower court, it is difficult to ascertain the extent of the Court's misapprehending or overlooking of the facts and law. However, it seems that the court must have misapprehended or overlooked numerous matters because of its failure to grant a Writ of Mandamus and its failure to issue a written opinion in so vital a matter. Appellant Joseph Andre Davis raised many arguments of reversible error involving the lower court's lack of Subject Matter Jurisdiction, the application of which raises important State and Federal Constitutional issues that make it no longer equitable to enforce the trial court's earlier order authorizing standing to the maternal grandparents. The 245th District Court did not hear oral argument in this matter nor did it address the

merits of any of these issues.  Thus, it is apparent that the Court misapprehended or overlooked important matters of fact and law.

**III. Motion for Rehearing En Banc**

Under the exceptional importance standard, cases involving important precedents likely to affect other cases merit rehearing en banc.  The Petitioner Floyd Daniel Lopez who is seeking managing conservatorship has the burden to prove standing. In re Smith, 262 S.W. 3d 463,465 (Texas App. Beaumont 2008)

In re Richard Scheller, Relator, "A trial court abuses it discretion when a grandparent does not overcome the presumption that a parent acts in his or her child's best interest  by proving that denial of or access to the child would significantly impair the child's physical or emotional well-being." Derzapf, 219 S.W. at 333 (quoting Texas Family Code Sec. 153.433 (a) (2).

The Trial Court erred because it did not indicate any reason why "it should interfere with the parent-child relationship."  In re Mays-Hooper, 189 S.W. 3d at 778 (Texas)

Troxel v.Granville, U.S. 57 (2000).  The Court held that a trial court's order for grandparent access unconstitutionally infringed on the parent's fundamental liberty interest where there was no evidence that the parent was unfit, the children's health and well-being would suffer, or that the parent intended to exclude grandparent access entirely.

Parent's fundamental liberty interests in the care, custody, and control of her children is of public importance.  It also amounts to issues of exceptional importance within the terms of Constitutions of this State and the United States.

In addition, the error regarding the violations of Due Process Clause of the Fourteenth Amendment to the U.S. Constitution raised in Appellant, Joseph Andre Davis' initial brief is of exceptional importance. The U.S. Supreme Court, the Texas Supreme Court and this Court have all recognized that parental interests are a fundamental right protected by the Due Process Clause of the 14th Amendment to the U.S. Constitution". In re Pensom, 126 S.W. 3d 251,254 (Tex. App. San Antonio 2003, orig. proceeding citing Troxel v. Granville, 530 U.S. 57,65,120 S.Ct 2054,147 L ed 2d 49 (2000). "Texas statutes are intended by the legislature to be in compliance with the Constitutions of this State and the United States." In re K.K.C., 292 S.W. 3d at 792 (citing TEX.GOV'T CODE ANN. 311.021 (1) (Vernon 2005).

"The power of a trial court to adjudicate disputes between a parent and a non-parent, and to enforce its own orders contrary to a parent's decisions concerning her children, constitutes state involvement that implicates the parent's fundamental liberty interests in the care, custody, and control of her children." See Troxel, 530 U.S. at 65-76, 120 S.Ct. 2054. Appellant Joseph Andre Davis has raised the lower court's violation of subject matter jurisdiction in an appeal. This Court's summary affirmance of this alleged error and the precedent established thereby is an issue of exceptional importance that merit en banc review.

Finally, the precedents set by this Court's decision will also affect this Court's future rulings on issues of the Texas statutory and U.S. and Texas Constitutional. The interest of parents in the "care, custody, and control" of their children "is perhaps the oldest of the fundamental liberty interests" recognized by the U.S. Supreme Court. (Troxel v.Granville, 530 U.S. 57,645,120 S.Ct. 2054,147 L Ed.2d 49

(2000). Furthermore, this State has long recognized that the "natural right which exists between parents and their children is one of Constitutional dimensions." See Wiley v. Spratlan, 543 S.W. 2d 349,352 (Tex. 1976); see also Holick v. Smith, 685 S.W. 2d 18, 20 (Tex. 1985); In re Pensom, 126 S.W.3d 251, 254 (Tex. San Antonio 2003, orig. proceeding). In re K.K.C., 292 S.W.3d at 792(footnote omitted). It, therefore, greatly implicates the important state and federal constitutional issue of the interest of parents in the "care, custody, and control" of their children. An issue involving standing is a component of subject matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit under Texas law. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 s.w.2d. 440,443-44 (Tex. 1993). The standard of review applicable to subject matter jurisdiction also applies to standing ld. at 446. Under that standard, Appellee, Floyd Daniel Lopez is required to allege facts affirmatively demonstrating the trial court's jurisdiction to hear the case. ld. Under Texas Family Code102.003 (11) a person with whom the child and the child's guardian, managing conservator, or parent have resided for at least six months ending not more than 90 days preceding the date of the filing of the petition if the child's guardian, managing conservator, or parent is deceased at the time of the filing of the petition is where Appellee, Floyd Daniel Lopez claims to have standing. Deceased Parent " A stepparent who has resided with the child can seek standing upon the death of the child's natural parent: Subsection 102.003 (a) (11) was designed as a "stepparent" statute affording standing to, among others, a stepparent who helps raise a child when the stepparent's spouse , one of the child's parents dies. A traditional application would indicate that upon the death of the mother, as a sole managing conservator of the child, her current husband would have standing. Note,

however, that the statutory language is not limited merely to stepparents; literally it can also include an unmarried cohabitant or even an adult sibling of the child of a deceased parent. Appellee Floyd Daniel Lopez fits in neither category nor his daughter, Sandra Lopez, J.A.D.'s mother <u>was not sole managing conservator</u>. We were joint managing conservators, she was the custodial joint managing conservator.

On review, appellate courts "construe the pleadings in favor of the plaintiff and look to the pleader's intent." Id A party's standing to pursue a cause of action is a question of law. See N. Alamo Water Supply Corp. v. Tex Dep't of Health, 839 S.w.2d 455,457 (Tex.App.-Austin 1992, writ denied). Consequently, we review the trial court's actions de novo. Mayhew v. Town of Sunnyvale, 964 s.W.2d 922,928 Tex. 1998).

Appellant Joseph Andre Davis argues Subject Matter Jurisdiction must be decided if this court notices the issue at any time during an appeal as noted, it is settled that question of subject matter jurisdiction cannot be waived, and must be decided if raised at any time, including on the Court's own motion and even for the first time at the oral argument on appeal. See Smith v. City of Santa Fe, 2007-NMSC-055,10,142N.M.786,171 P.3d 500 (Before a court can review the case...jurisdictional issues should always be resolved even if not preserved"); Wilson v. Denver, 1998-NMSC-016, 8, 125 N,tvt 308,961 P.2d 153 ("A jurisdictional defect may not be waived and may be raised at any stage of the proceedings, even sua sponte by the appellate court.");Parental interests are a fundamental right protected by the Due Process Clause of the Fourteenth Amendment that warrant the close consideration of this Court, it would seem

that this would also affect this Court's rulings on appeals from other future appeals of fundamental liberty interests" recognized by the United States Supreme Court. The Texas Supreme Court has held that a child must be in imminent danger of physical or emotional harm for there to be a serious question concerning the child's physical health or welfare. The grandparents in In the Interest of ALS, filed suit requesting appointment as managing conservators after the death of their son. The court cases show that a challenge to a grandparent's standing asserted under Texas Family Code § 102.004(a)(1) requires the grandparent to make a prima facie showing of potential harm. The grandparents must be fully prepared to put on evidence of facts that will demonstrate a serious question or concern about the child's health or welfare. A grandparent seeking custody has an incredibly high burden of proof to meet the standing requirements. This Court's summary affirmance of the lower court's decision has significant precedential impact on parent's fundamental liberty interest where there was no evidence that the parent was unfit, that the children's health and well-being would suffer, or that the parent intended to exclude grandparent access entirely, thereby making this an issue of exceptional importance warranting en banc review.

Situations where petitions for a writ of mandamus is appropriate in family law cases include (1) standing and jurisdiction (under UCCJEA or UIFSA, (2) appointment of a receiver in temporary orders, (3) change of the conservator with the right to designate the primary residence of a child in temporary orders, (4) certain discovery disputes, (5) and failure of the trial court to enter an order after rendition (the court's oral ruling on the record). In these situations, given

the issues at stake, it is often appropriate to request that the court of appeals enter an emergency stay prohibiting the trial court from taking any action to enforce or proceed with the challenged order until the court of appeals can decide the mandamus case. The First Court of Appeals denied my child custody Writ of Mandamus of a non-parent (grandparent) custody lawsuit and my Motion of Stay without explanation most situations above were included in my petition for a Writ of Mandamus and a Motion to Stay.

Jurisdiction and Venue of Child Custody Lawsuits

Texas residents: Texas has very specific laws to determine whether a custody case has been filed in the correct court. Disputes arise when one parent does not reside in Texas or one parent does not reside in the same county as the other parent. In such cases, Texas law will determine which the proper court to hear the dispute is.

Texas Residents: It is a fairly simple procedure to determine the proper court for the child custody dispute when all parties and the child reside in Texas. In such case, Texas will have jurisdiction to hear the matter. It is only necessary to determine the proper county the suit should proceed in. Section 103.001 of the Family Code provides that an original suit must be filed in the county the child resides in. Petitioner Floyd Daniel allegedly filed Original Child custody lawsuit on October 07, 2014. 245th District Court's continuing exclusive jurisdiction under Chapter 155 was terminated May 30, 2014.

A child resides in the county where the child's parents reside or the child's parent resides, if only one parent is living. J.A.D. and her only surviving parent, Joseph Andre Davis was residing, at the time the lawsuit was allegedly filed by Petitioner Floyd Daniel Lopez in Harris County 245th District Court on October 7, 2014, in

Montgomery County and continue to reside in Montgomery County. Harris County 245th District Court has been and still is aware of that fact.

If venue of a suit is improper in the court in which an original suit is filed and no other court has continuing, exclusive jurisdiction of the suit, on the timely motion of a party other than the petitioner, the court must transfer the proceeding to the county where venue is proper. This Court's summary affirmance of the lower court's decision has significant precedential impact on parent's fundamental liberty interest where there was no evidence that the parent was unfit, that the children's health and well-being would suffer, or that the parent intended to exclude grandparent access entirely, thereby making this an issue of exceptional importance warranting en banc review.

Rehearing en banc should be granted because such consideration is necessary to maintain uniformity in the court's decisions.

1. Motion for rehearing en banc. I express a belief, based on a reasoned and studied judgment, which the panel decision is of exceptional importance. I express a belief, based on a reasoned and studied judgment, that the panel decision is contrary to the following decisions of this court and that a consideration by the full court is necessary to maintain uniformity of decisions in this court, other Texas Appellate Courts and State Supreme

Court.  (See appendix A)

2. Motion to request a written opinion. I express a belief, based upon a reasoned and studied judgment, that a written opinion will provide a legitimate basis for Supreme Court review because this case involves matters that directly implicate fundamental rights protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## PRAYER

Respondent prays for justice to prevail, that the Court grants this petition and orders Respondents suit, Cause No. 2014-58410 to be dismissed with prejudice and that it will not be granted a trial.   Relator prays that the court orders underlying respondents Floyd Daniel Lopez, Irma Olga Jimenez and their Counsel,  Norman Eugene Lester Jr. to pay Relator's reasonable expenses and  attorney's fees including interest incurred in presenting or opposing the motion, and if no due diligence is shown the court may award to the prevailing party all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject.  Relator prays that underlying respondents Floyd Daniel Lopez and Irma Olga Jimenez will be

denied further possession of, access to and all contact with Relator's minor child J.A.D. Relator prays that all adverse interlocutory rulings that merged in the judgment issued by 245th District Court on April 10, 2015 be rendered null and void including the judgment to pay Amicus Attorney/Guardian Ad Litem/Parenting Facilitator the sum of $3,062.50 or any sum at all. Relator prays for general relief and all other relief the court deems just and proper.

_Joseph A Davis_    08/04/2015

Joseph Andre Davis, Pro Se

3714 Pinebrook Hollow Ln.

Spring, Texas  77386

Tel: (832)660-7207

Jdavis1103@hotmail.com

## CERTIFICATION OF SERVICE

I certify that a true copy of the above was served on Respondents Floyd Daniel Lopez and Irma Olga Jimenez's Counsel Norman Eugene Lester Jr, by E-Mail: HouTxLawyer@aol.com  and served by E-File to 245th District Judge Roy L. Moore and Associate Judge James Cooper in accordance with the Texas Rules of Civil Procedure on

_Joseph A Davis_ 08/04/2015

JOSEPH ANDRE DAVIS, PRO SE

I, _Joseph A Davis_ certify that I have reviewed the petition and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record.

# APPENDIX A

## A. TEXAS SUPREME COURT CASES WITH OPINIONS

**in re Chambless No. 07-0767 ,51 Texas S.Ct. j111, (Texas 2008) (grandparent visitation improperly granted, mother's due process rights disregarded) Mandamus granted.**

**In re mays-Hooper, 189 S.W. 3d 777 (Texas 2006) (Parents prevail in dispute over grandparent visitation) Supreme Court grants mandamus relief.**

**In re Ricky Derzapf, No. 06-0669,219 S.W. 3d 327 (Texas 2007) , Texas Supreme Court grants mandamus to vindicate natural parent's superior rights.**

## CONTROLING U. S. SUPREME COURT PRECEDENT

**Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L. Ed 49 (2000) ( parents fundamental right to decide who has access to their child.**

A plaintiff must have standing for the court to have subject-matter jurisdiction to decide the merits of the plaintiff's claims. See id.; Farmers Tex. County Mut. Ins. Co. v. Romo, 250 S.W.3d 527, 532 (Tex.App.-Austin 2008, no pet.).

The plaintiff must allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. Texas Ass'n of Bus., 852 S.W.2d at 446.

The general test for standing is whether there is a real controversy between the parties that will actually be determined by the judicial declaration sought. Id.

Standing focuses on the question of who may bring a lawsuit. Patterson v. Planned Parenthood, 971 S.W.2d 439, 442 (Tex.1998).

STANDING

To bring an action in Texas, a party must have standing. E.g., DaimlerChrysler Corp. v. Inman, 252 S.W.3d 299, 304 (Tex. 2008)

Standing is a component of subject-matter jurisdiction. Douglas v. Delp, 987 S.W.2d 879, 882 (Tex. 1999);

OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P., 234 S.W.3d 726, 735 (Tex. App.-Dallas 2007, pet. denied); see also DaimlerChrysler Corp. v. Inman, 252 S.W.3d 299, 304 (Tex. 2008)

("A court has no jurisdiction over a claim made by a plaintiff without standing to assert it.") (footnote omitted). Thus, standing cannot be waived, and we may examine standing sua sponte if necessary. See OAIC, 234 S.W.3d at 735;

see also Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 445-46 (Tex. 1993) (noting that standing "may be raised for the first time on appeal by the parties or by the court").

The general test for standing is whether there is a real controversy between the parties that will actually be determined by the judgment sought. Tex. Ass'n of Bus., 852 S.W.2d at 446.

"To establish standing, a person must show a personal stake in the controversy." In re B.I.V., 923 S.W.2d 573, 574 (Tex. 1996) (per curiam).

Standing must exist at the time a plaintiff files suit; if the plaintiff lacks standing at the time of filing, the case must be dismissed, even if the plaintiff later acquires an interest sufficient to support standing. Doran v. ClubCorp USA, Inc., No. 05-06-01511-CV, 2008 WL 451879, at *2 (Tex. App.-Dallas Feb. 21, 2008, no pet.) (mem. op.);

Kilpatrick v. Kilpatrick, 205 S.W.3d 690, 703 (Tex. App.-Fort Worth 2006, pet. denied). And the standing doctrine requires a controversy to continue to exist between the parties at every stage of the legal proceedings,

including the appeal. City of Dallas v. Woodfield, 305 S.W.3d 412, 416 (Tex. App.-Dallas 2010, no pet.).

Standing is a component of subject-matter jurisdiction. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 445–46 (Tex. 1993); see also DaimlerChrysler Corp. v. Inman, 252 S.W.3d 299, 304 (Tex. 2008)

"A court has no jurisdiction over a claim made by a plaintiff without standing to assert it."). If a party lacks standing to bring an action, the trial court lacks subject-matter jurisdiction to hear the case.
Tex. Ass'n of Bus., 852 S.W.2d at 444–45.

"[S]tanding focuses on the question of who may bring an action." Patterson v. Planned Parenthood, 971S.W.2d 439, 442 (Tex. 1998).

The general test for standing is whether there is a real controversy between the parties that will actually be determined by the judgment sought. Tex. Ass'n of Bus., 852 S.W.2d at 446.

"To establish standing, a person must show a personal stake in the controversy." In re B.I.V., 923 S.W.2d 573, 574 (Tex. 1996).

Standing to sue may be predicated upon either statutory or common law authority. Nauslar v. Coors Brewing Co., 170 S.W.3d 242, 252 (Tex. App.—Dallas 2005, no pet.);

see Williams v. Lara, 52 S.W.3d 171, 178–79 (Tex. 2001). The common law standing rules apply except when standing is statutorily conferred. SCI Tex. Funeral Servs., Inc. v. Hijar, 214 S.W.3d 148, 153 (Tex. App.—El Paso 2007, pet.denied).

Neeley v. West Orange-Cove Consol. Indep. Sch. Dist., 176 S.W.3d 746, 774 (Tex.2005) ("Standing to assert a constitutional violation depends on whether the claimant asserts a particularized, concrete injury.")


TEXAS SUPREME COURT CASES

The Standing Doctrine in the Texas Supreme Court

**Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 445-446 (Tex. 1993) (standing, as a matter of subject matter jurisdiction, may be raised for the first time on appeal).**

**Standing by Statute**

**The Constitution requires standing to maintain suit. Williams v. Lara, 52 S.W.3d 171, 178**

**<u>B.CASES DECIDED BY TEXAS COURT OF APPEALS</u>**

**In re B.N.S. No. 247 S. W. 3d 807 (appeal from order granting grandparents possession of their three grandchildren. see Texas Family Code section 153.433, because grandparents did not meet statutory requirements of section 153.433 of the family code, appeal court reversed trial court' s judgment and rendered judgment that grandparent's petition is denied) .**

**In re J.R.D. No. 05-06-01554 (Texas 2007) (trial court order granting access reversed by court of appeals; grandparents did not meet burden set by statute to rebut parental presumption.**

**In re D. R. D. No. 05-06-00666 (Texas 2008) (grandparent access denied , no evidence to support applicable standard, i.e., that denial of access would significantly impair the child's physical health or emotional well- being)**

**In re J.P.C. No. 02-07-00184 (Texas 2008) (death of a parent, grandparent intervention unsuccessful, access order reversed by court of appeals.)**

**In re Taylor v. Taylor, 254 S.W. 3d S.W. 527 (Texas 2008) (grandparent v. parent SAPCR judgment on jury verdict reversed)**

**In Interest of C.A.M.M., 243 S.W. 3d 211 (Texas 2007) (SAPCR, non parent custody, grandparents must overcome presumption that parents act in the best interest of child)**

**Whitworth v.Whitworth 222 S. W. 3d 616 (Texas 2007 no Pet.) (grandparents and siblings lacked standing)**

**In re J.O., No 04-07-00752 (Texas 2008 No. Pet.) (grandparents as temporary managing conservators, parental presumption affirmed)**

**In re de Fillippi, No. 04-07-00506, 235 S.W. 3d 319 (Texas 2007) (Children ordered returned to father after mother's death, superior custodial rights compared to grandparents)**

**In re Sanchez, No. 04-06-00809, 228 S.W. 3d 214 (Texas 2007) (trial court failed to apply law properly, in suit by grandparents to modify parent child relationship writ of mandamus is granted.)**

**In re Banta v. Texas DFPS, No. 13- 06-00548 (Texas 2007) (grandparent access denied)**

**In re Baggs v. Becker , No. 03-07-00731 (Texas 2009 pet. denied)**

**In re L.K.W.G., No. 06-06-00073 (Texas 2007 (Pre se grandparent suit motion for visitation frivolous suit finding, sanctions imposed)**

## DETERMINATION OF STANDING

Standing, a necessary component of subject-matter jurisdiction, is a constitutional prerequisite to maintaining a suit under Texas law. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993).

As a necessary component of a court's subject-matter jurisdiction, standing cannot be waived and can be raised for the first time on appeal. Id. at 445-46.

Appellate courts are obligated to review sua sponte issues affecting jurisdiction. M.O. Dental Lab v. Rape, 139 S.W.3d 671, 673 (Tex. 2004). See also Bowles v. Wade, 913 S.W.2d 644, 647 (Tex. App.-Dallas 1995, writ denied); Centurion Planning Corp., Inc. v. Seabrook Venture II, 176 S.W.3d 498, 508 (Tex. App.-Houston [1st Dist.] 2004, no pet.).

Whether a trial court has subject-matter jurisdiction is a question of law that is reviewed de novo. See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998).

To have standing, the pleader bears the burden of alleging facts that affirmatively demonstrate the court's jurisdiction to hear the cause. Tex. Air Control Bd., 852 S.W.2d at 446.

We review the pleadings and the entire record to determine if there is evidence establishing subject-matter jurisdiction. Dallas County Appraisal Dist. v. Funds Recovery,887 S.W.2d 465, 469 (Tex. App.-Dallas 1994, writ denied).

In an appeal from a bench trial, findings of fact carry the same weight as a jury verdict. Walker v. Cotter Prop., Inc., 181 S.W.3d 895, 899 (Tex. App.-Dallas 2006, no pet.).

Unchallenged findings of fact are conclusive on appeal unless the contrary is established as a matter of law or there is no evidence to support the findings. Toles v. Toles, 45 S.W.3d 252, 265 n.6 (Tex. App.-Dallas 2001, pet. denied) (citing McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986)).

Where an appellant attacks the trial court's findings of fact on legal or factual sufficiency grounds, the applicable standard of review is the same as that to be applied in the review of jury findings. Walker, 181 S.W.3d at 899.

In evaluating the legal sufficiency of the evidence to support a finding, we must determine whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. Columbia Med. Ctr. Subsidiary, L.P. v. Meier, 198 S.W.3d 408, 414 (Tex. App.-Dallas 2006, pet. denied) (citing City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005)).

Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. Walker, 181 S.W.3d at 899.

More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of some vital fact. Id.

We review the trial court's conclusions of law de novo to determine whether they are correct. See McIntyre v. Comm'n for Lawyer Discipline, 169 S.W.3d 803, 806 (Tex.App.-Dallas 2005, pet. denied); Travelers Indem. Co. of Rhode Island v. Starkey, 157 S.W.3d 899, 906 (Tex. App.-Dallas 2005, pet. denied). Conclusions of law must be upheld on appeal if any legal theory supported by the evidence sustains the judgment, and will be reversed only if the conclusions are erroneous as a matter of law. See McIntyre, 169 S.W.3d at 807.

## B. Applicable Law

### 1. Standing, Generally

In Texas, the standing doctrine requires that (1) there be "a real controversy between the parties," and (2) that real controversy "will be actually determined by the judicial declaration sought." Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 662 (Tex. 1996) (quoting Tex. Air Control Bd., 852 S.W.2d at 446).

"The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." Austin Nursing Ctr. v. Lovato, 171 S.W.3d 845, 848 (Tex. 2005) (quoting 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1559, 441 (2d ed. 1990)).

"The determination of whether a plaintiff possesses standing to assert a particular claim depends on the facts pleaded and the cause of action asserted." Everett v. TK-Taito, L.L.C., 178 S.W.3d 844, 853 (Tex. App.-Fort Worth 2005, no pet.). See also M.D. Anderson Cancer Ctr. v. Novak, 52 S.W.3d 704, 707-08 (Tex. 2001) (analyzing standing in the context of asserted claim).

When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis. Everett, 178 S.W.3d at 851. The plaintiff must allege and show how he has been injured or wronged within the parameters of the language used in the statute. Id.

# STANDING
# FOR THE NOT-SO-NUCLEAR FAMILY

**ANGELINE BAIN**
abain@gbfamilylaw.com

**AIMEE PINGENOT**
apingenot@gbfamilylaw.com

**Goranson, Bain, Larson, Greenwald, Maultsby & Murphy, PLLC**
8150 North Central Expressway, Suite 1850
Dallas, Texas 75206
(214) 373-7676


**KEVIN FULLER**
kevin@koonsfuller.com

**EMILY MISKEL**
emily@koonsfuller.com

**KoonsFuller, P.C.**
1717 McKinney Avenue, Suite 1500
Dallas, Texas 75202
(214) 871-2727

**Innovations - Breaking Boundaries in Custody Litigation**
The University of Texas School of Law
Houston, Texas
January 19, 2012

# TABLE OF CONTENTS

I.   Scope of Article ...................................................................................................................................1
II.  What is Standing? ..............................................................................................................................1

    A.   Common Law ................................................................................................................................1
    B.   Specific Statutory Authority.........................................................................................................1
    C.   Parental Presumption....................................................................................................................2

III. Standing Provisions, Organized by Client ........................................................................................2

    A.   Grandparents .................................................................................................................................2
        1.   General Standing for Conservatorship Under Texas Family Code §102.003 ...............................2
        2.   Standing Under Texas Family Code §102.004.............................................................................3
        3.   Standing to Intervene ..................................................................................................................4
        4.   Possession and Access by a Grandparent Under the "Grandparent Access Statute" .....................5

    B.   Siblings.........................................................................................................................................6
        1.   Managing Conservatorship ..........................................................................................................6
        2.   Possessory Conservatorship .........................................................................................................6
        3.   Access ..........................................................................................................................................6

    C.   Aunts, Uncles, and Other Relatives within the Third Degree of Consanguinity ...........................7
        1.   Definition of Consanguinity ........................................................................................................7
        2.   Both Parents Deceased .................................................................................................................7
        3.   Living Parent(s) ...........................................................................................................................8
        4.   Possessory Conservatorship .........................................................................................................8

    D.   Stepparents....................................................................................................................................8
        1.   Deceased Parent............................................................................................................................8
        2.   Living Parents ..............................................................................................................................9

    E.   Non-relative..................................................................................................................................9
    F.   Foster parents ...............................................................................................................................11
        1.   Family Code 102.003(a)(12) .......................................................................................................11
        2.   Family Code 102.004(b) ..............................................................................................................11
        3.   Family Code 102.003(c) ..............................................................................................................11

    G.   Prospective Adoptive Parent Standing .........................................................................................12
        1.   Family Code 102.003(a)(14) .......................................................................................................12
        2.   Family Code 102.0035 .................................................................................................................12
        3.   In the Interest of S.S.G. ...............................................................................................................12

    H.   Same Sex couples .........................................................................................................................13
        1.   Family Code 102.003(a)(9) .........................................................................................................13
        2.   Same Sex Adoption .....................................................................................................................16

    I.   Designated Guardian: Connecting the Probate Code to the Family Code ......................................17
    J.   Standing to Adjudicate Parentage ................................................................................................17

IV.  Challenging Standing .......................................................................................................................18
V.   Appendix A, Texas Family Code Standing Provisions......................................................................19

    A.   Chapter 102...................................................................................................................................19
    B.   Chapter 153 ..................................................................................................................................21
    C.   Chapter 156 ..................................................................................................................................22
    D.   Chapter 160...................................................................................................................................23

## I. Scope of Article

Standing is a mandatory requirement, but fitting your case to one of the many options under the Family Code can be complicated. The goal of this paper is to discuss how to apply standing requirements from a client-based perspective. The paper is organized by type of person seeking standing (e.g., grandparent, aunt, foster parent), together with the relevant statutes and caselaw applying to each. The paper was designed to provide useful information, organized by how you're most likely to need to access it.

## II. What is Standing?

Standing is an issue that family law practitioners frequently encounter in a very practical way. While knowing the explicit requirements of the Family Code is key, it can be useful to have an understanding of the abstract legal doctrines underlying the requirement of standing. The Texas Supreme Court opinion in the *Texas Ass'n of Business v. Air Control Bd.*[1] case contains a thorough discussion of the sources of the standing requirement, which is summarized below:

Standing is a feature of subject matter jurisdiction, which is essential to the authority of a court to decide a case. Subject matter jurisdiction is never presumed and cannot be waived. The standing requirement stems from two limitations on subject matter jurisdiction: the separation of powers doctrine and the open courts provision.

The separation of powers doctrine stems from both the United States and Texas constitutions. Under this doctrine, governmental authority vested in one branch of government cannot be exercised by another, unless expressly permitted by the constitution. Thus, courts are prohibited from issuing advisory opinions, because that is the function of the executive branch. The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties. An opinion issued in a case brought by a party without standing is advisory because rather than remedying an actual or imminent harm, the judgment addresses only a hypothetical injury. Texas courts, like federal courts, have no jurisdiction to render such opinions.

Under the Texas Constitution, the standing requirement is also derived from the open courts provision, which contemplates access to the courts only for those litigants suffering an injury. Specifically, the open courts provision provides: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."[2]

Because standing is a component of subject matter jurisdiction, it cannot be waived and may be raised by any party or by the court on its own motion. The issue of standing may even be raised for the first time on appeal.

Standing is determined at the time suit is filed in the trial court.[3] **Standing to sue does not mean a right to win, but merely a right to be heard in court**.[4]

### A. Common Law

The general test for standing in Texas requires that there (a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought.[5] Standing requires the claimant to demonstrate a particularized injury distinct from that suffered by the general public—there must be an actual grievance, not a hypothetical or generalized grievance.[6] This general test incorporates the requirements that courts may only decide real cases or controversies brought by a person who has suffered an actual injury.

### B. Specific Statutory Authority

In family cases, it is usually obvious that there is a real controversy, but the difficult part of the test is determining which groups of people should qualify as persons who have suffered an injury. The Family Code spells out specific categories of people that the Legislature has determined meet this standing requirement.

**Standing for Original Suits.** Tex Fam. Code Chapter 102, §§ 102.003-102.007.

---

[1] 852 S.W.2d 440, 443-48 (Tex. 1993).

[2] TEX. CONST. art. I, § 13.

[3] *In re M.P.B.*, 257 S.W.3d 804, 808 (Tex. App.--Dallas 2008, no pet.)..

[4] *Doncer v. Dickerson*, 81 S.W.3d 349, 356 (Tex.App.--El Paso 2002, no pet.).

[5] *Board of Water Engineers v. City of San Antonio*, 155 Tex. 111, 114, 283 S.W.2d 722, 724 (1955).

[6] *Glover v. Union Pac. R.R.*, 187 S.W.3d 201, 209 (Tex.App.-Texarkana 2006, pet. denied); *see Brown v. Todd*, 53 S.W.3d 297, 302 (Tex.2001); *see also In re H.C.S.*, 219 S.W.3d 33, 34 (Tex. App.-San Antonio 2006, no pet.).

**Standing for Modifications.** Tex. Fam. Code § 156.002(b): "A person or entity who, at the time of filing, has standing to sue under Chapter 102 may file a suit for modification in the court with continuing, exclusive jurisdiction."

The Family Code is more restrictive than the constitutional requirement of a justiciable interest.[7] The common-law criteria regarding standing do not apply when the Texas Legislature has conferred standing through a statute.[8] In statutory standing cases, the analysis is a straight statutory construction of the relevant statute to determine upon whom the Texas Legislature conferred standing and whether the claimant in question falls in that category.[9]

### C. Parental Presumption

In an original suit affecting the parent child relationship, Texas courts apply a "parental presumption." The presumption that the best interest of the child is served by awarding custody to the parent is deeply embedded in Texas law.[10] The parental presumption is codified in the Family Code in § 153.131(a). To prevail in an original suit, a nonparent must rebut the parental presumption by showing that the appointment of the parent would significantly impair the child's health or development, or that the natural parent has voluntarily relinquished the child.[11]

Courts have held that modifications are different from original suits. Since modification suits are governed by Chapter 156, the parental presumption contained in Chapter 153 does not apply.[12] Further, courts have held that the constitution does not require the parental presumption to apply in modification actions, because there are different public policy concerns.[13]

Most importantly for standing, a nonparent **does not** have to overcome the parental presumption merely to have standing to bring suit.[14]

### III. Standing Provisions, Organized by Client

### A. Grandparents

Family law cases have increasingly focused on the rights of grandparents both in seeking conservatorship and seeking visitation with their grandchildren. Many standing issiues experienced by grandparents are examined below through statutes and relevant case law.

### 1. General Standing for Conservatorship Under Texas Family Code §102.003

Grandparents, as non-parents litigants, have limited options to maintain standing to file an original SAPCR seeking custody of a grandchild. If a grandparent can qualify under any of the fourteen categories of the general standing statute as set forth above, a grandparent could potentially have standing to file for custody under § 102.003. The most likely applicable categories under the "general" standing statute, would be under §102.003(13) which gives standing to a relative of the child within the third degree of consanguinity (which includes grandparents), if both parents of the child are deceased at the time of filing or through § 102.003(a)(9) which grants standing to a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition. Tex.Fam.Code § 102.003(a)(9)(13). Under these statutes, a grandparent may file an original suit for custody.

In order to have standing under § 102.003(a)(9), a grandparent must show "actual care, control, and possession" and it must be within the specified time frame. §102.003(a)(9) does not specifically speak to grandparents, but provides means for a grandparent seeking standing to file an original suit. The statute specifically mentions that the time frame need not be continuous and uninterrupted. Tex. Fam. Code §102.003(b). In the case *In the Interest of S.S.J.,* the child's mother had died and a maternal grandmother was seeking appointment as managing conservator.[15] The child at issue had

---

[7] *In re A.M.S.*, 277 S.W.3d 92, 97 (Tex.App.--Texarkana 2009, no pet.).

[8] *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001).

[9] *In re Sullivan*, 157 S.W.3d 911, 915 (Tex.App.--Houston [14th Dist.] 2005, orig. proceeding, [mand. denied]); *see also Tex. Dep't of Protective and Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 859-61 (Tex. 2001).

[10] *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000).

[11] *Id.* at 342.

[12] *Id.*

[13] *See In re M.N.G.*, 113 S.W.3d 27 (Tex.App.--Fort Worth 2003, no pet.).

[14] *In re Vogel*, 261 S.W.3d 917, 921 (Tex.App.—Houston [14th Dist.] 2008, orig. proceeding).

[15] 153 S.W.3d 132, 137 (Tex.App. – San Antonio, 2004, no pet).

lived with the grandparents under their care, custody, and control since birth. The father of the child argued that even if the grandparents proved the requisite time frame required for standing under §102.003(a)(9), they must still overcome the parental presumption. *Id.* The court held that the grandparents had standing under §102.003(a)(9). Nothing in the code or case law requires that a grandparent must go beyond the general requirements of 102.003(a)(9) to obtain standing to allege facts showing that that the appointment of the parent would significantly impair the child's physical health or emotional development in order to have standing. The parental presumption must be overcome during a trial on the merits. *Id.*

Conversely, the court *In the Interest of M.J.G and J.M.J.G.,* denied standing to grandparents under §102.003(a)(9).[16] The grandparents did not establish the requisite six month period of actual care, custody, and control necessary to establish their standing to file an original SAPCR under §102.003(a)(9). Additionally, the evidence at trial showed that the children's parents were also living in the house with the grandparents. There was no evidence that the parents did not also care for the children. *Id.*

## 2. Standing Under Texas Family Code §102.004

While grandparents may obtain standing under the general provisions of Texas Family Code §102.003 as set forth above, they may also obtain standing under additional statutes.

Texas Family Code §102.004 provides as follows:

**102.004:** (a) In addition to the general standing to file suit provided by Section 102.003, a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:

    (1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; or

    (2) both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit.

(b) An original suit requesting possessory conservatorship may not be filed by a grandparent or other person. However, the court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

(c) Possession of or access to a child by a grandparent is governed by the standards established by Chapter 153.

Section 102.004 applies only to SAPCR's filed on or after September 1, 2007. Under §102.004, in the event if a grandparent does not have standing under the general standing statute, the fact that the person is a grandparent may confer standing to file either an original suit or an intervention in a pending suit if the grandparent can show that the child's physical health or emotional stability would be impaired by remaining with the parents or if the parents consent.

Numerous court cases have considered in what circumstances standing may be conferred upon a grandparent under Texas Family Code §102.004.

A suit by a grandparent requesting managing conservatorship may only be filed when the child's present environment presents a serious question concerning the child's physical health or

---

[16] No. 2-07-105-CV, 2008 WL 344473 (Tex. App.--Fort Worth).

welfare.[17] The Texas Supreme Court has held that a child must be in imminent danger of physical or emotional harm for there to be a serious question concerning the child's physical health or welfare.[18] The court cases show that a challenge to a grandparent's standing asserted under Texas Family Code § 102.004(a)(1) requires the grandparent to make a prima facie showing of potential harm. The grandparents must be fully prepared to put on evidence of facts that will demonstrate a serious question or concern about the child's health or welfare. A grandparent seeking custody has an incredibly high burden of proof to meet the standing requirements.

The grandparents in *In the Interest of ALS,* filed suit requesting appointment as managing conservators after the death of their son.[19] The father had filed for divorce from the child's mother months before his death. The child, father and mother sometimes lived at the grandparents' home. The grandparents filed a petition claiming they had standing under 102.004(a)(1). The evidence showed that the mother was bi-polar, had been under psychiatric care on and off, hospitalized, and had threatened suicide. *Id.* The grandparents presented an affidavit from an aunt attesting to specific instances of abuse of the child by the mother. There was also evidence of the mother's inability to parent, including failure to supervise the child, acts of sexual promiscuity and pornography in the home, and unsanitary conditions in the home. The court held that the grandparents did have standing under § 102.004(a).

Conversely, in another case where the grandparents sought standing under §102.004(a)(1), the court held that the maternal grandparents did not have standing to maintain an original suit under §102.004(a)(1).[20] There was no evidence to show that the child's current circumstances presented a significant impairment of the child's physical health or emotional development of violence witnessed by the children. *Id.* The entire premise of the grandparents' argument was that if the court were

to restrict their close relationship with the children, the children would suffer serious physical or emotional harm. This was insufficient evidence that the children would be impaired. *Id.*

At least one appellate case has held that the statute does not require that the grandparent and the child need not have a close bond or a long standing relationship if the "significant impairment" test is met. In *In re M.A.M.*, the court held that the phrase "deemed by the court to have had substantial past contact" refers to "other person" and not "grandparent."[21] As such, the mere fact that an intervenor in a pending suit is a biological grandparent confers standing on the grandparent. *Id.*

### 3. Standing to Intervene

Though grandparents may initiate an original lawsuit seeking appointment as a managing conservator, they may not file an original lawsuit seeking appointment as a possessory conservator. Texas Family Code §102.004(b) provides that grandparents may only seek appointment as a possessory conservator through intervention. While the statute requires that any person besides a grandparent seeking possessory conservatorship have had "substantial past contact with the child," such requirement is not necessary for grandparents.[22] Courts have held that there is a difference between an original suit and an intervention, thus necessitating the difference in requirements for standing between both. In the case *In the Interest of N.L.G., A Child,* the court held that filing a suit may create disruption in a child's relationship with his or her parents, whereas intervening in a pending case, where the relationship between parent and child is already disrupted, does not create such disruption.[23] In the case where a relationship is already disrupted, intervention may enhance the court's ability to adjudicate the cause in the best interest of the child. *Id.*

Despite the court's view that intervention might enhance a court's ability to determine the best interest of a child, grandparents do not have unfettered access to intervene in any and all custody matters. The grandparents must show that

[17] *In re R.D.Y.,* 51 S.W.3d 314, 325 (Tex. App.—Houston [1st Dist.], 2001).
[18] *McElreath v. Stewart,* 545 S.W.2d 955, 958 (Tex. 1977).
[19] No. 09-05-062 CV, 2006 WL 75369 (Tex. App -- Beaumont).
[20] *In the Interest of M.J.G. and J.M.J.G,* No. 2-07-105-CV, 2008 WL 344473 (Tex. App.--Fort Worth).

[21] *In re M.A.M.*, 35 S.W.3d 788, 790 (Tex.App.—Beaumont 2001, no pet.).
[22] *In re M.A.M.*, 35 S.W.3d 788, 790 (Tex.App.—Beaumont 2001, no pet).
[23] 238 S.W.3d 828, 830 (Tex.App.—Fort Worth, 2007).

there is "significant impairment" of the child's physical health or emotional development in order to obtain standing in an intervention.[24]

### 4. Possession and Access by a Grandparent Under the "Grandparent Access Statute"

The Texas Family Code provides a route for grandparents to file suit for possession and access of their grandchildren in sections 153.421 and 153.432 of the Texas Family Code.

**153.431:** If both of the parents of a child are deceased, the court may consider appointment of a parent, sister, or brother of a deceased parent as a managing conservator of the child, but that consideration does not alter or diminish the discretionary power of the court.

**153.432:** (a) A biological or adoptive grandparent may request possession of or access to a grandchild by filing:
(1) an original suit; or
(2) a suit for modification as provided by Chapter 156.
(b) A grandparent may request possession of or access to a grandchild in a suit filed for the sole purpose of requesting the relief, without regard to whether the appointment of a managing conservator is an issue in the suit.

(c) In a suit described by Subsection (a), the person filing the suit must execute and attach an affidavit on knowledge or belief that contains, along with supporting facts, the allegation that denial of possession of or access to the child by the petitioner would significantly impair the child's physical health or emotional well-being. The court shall deny the relief sought and dismiss the suit unless the court determines that the facts stated in the affidavit, if true, would be sufficient to support the

relief authorized under Section 153.433.

Section 153.431 of the Texas Family Code governs suits for access, whether original or modification and applies to grandparents, both biological and adoptive. Texas Family Code §153.432 allows a biological or adoptive grandparent to request possession of or access to a grandchild by filing an original suit or a suit for modification. Courts have held that "significant impairment" is a high threshold for grandparents to overcome.[25] A grandparent may file suit requesting only possession of or access to a grandchild without regard to whether the appointment of a managing conservator is an issue in the lawsuit. Tex.Fam.Code §153.432(b).

However, the third prong of this section presents difficulty in many cases as the person filing the lawsuit must execute and attach an affidavit on knowledge or belief that contains along with supporting facts, the allegation that denial of possession of or access to the child by the petitioner would significantly impair the child's physical health or emotional well-being. Tex.Fam.Code 153.432(c). The court shall deny the relief sought and dismiss the lawsuit unless the court determines that the facts stated in the affidavit, if true, would be sufficient to support the relief authorized under Section 153.433. *Id.* A trial court abuses its discretion if it grants grandparents access to their grandchildren without meeting this standard.[26]

It is important to note that a biological or adoptive grandparent may not request possession of or access to a grandchild if:

(1) each of the biological parents of the grandchild has:
(A) died;
(B) had the person's parental rights terminated; or
(C) executed an affidavit or waiver of interest in child or an affidavit of relinquishment of parental rights under Chapter 161 and the affidavit designates an

---

[24] *In re M.J.G.*, 248 S.W.3d 753, 761 (Tex.App.—Fort Worth, 2008).

[25] *In re Derzaph*, 219 S.W.3d 327, 331 (Tex. 2007).
[26] *Derzaph*, 219 S.W.3d at 333; *In re J.M.T.*, 280 S.W.3d 490, 493 (Tex.App.—Eastland 2009, no pet.).

authorized agency, licensed child-placing agency, or person other than the child's stepparent as the managing conservator for the child' and

(2) the grandchild has been adopted, or is the subject of a pending suit for adoption, by a person other than the child's stepparent.

Tex.Fam.Code §153.434.

## B. Siblings

### 1. Managing Conservatorship

An adult sibling has standing to seek conservatorship if they can meet one of the general standing requirements in Chapter 102. The general standing terms most likely to apply to a sibling are:

**102.003(a)(9):** a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition;

**102.003(a)(11):** a person with whom the child and the child's guardian, managing conservator, or parent have resided for at least six months ending not more than 90 days preceding the date of the filing of the petition if the child's guardian, managing conservator, or parent is deceased at the time of the filing of the petition; or

**102.003(a)(13):** a person who is a relative of the child within the third degree by consanguinity, as determined by Chapter 573, Government Code, if the child's parents are deceased at the time of the filing of the petition.

**102.004(a):** In addition to the general standing to file suit provided by Section 102.003, a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:

(1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; or

(2) both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit.

### 2. Possessory Conservatorship

An adult sibling may obtain possessory conservatorship by intervening in a pending suit:

**102.004(b):** An original suit requesting possessory conservatorship may not be filed by a grandparent or other person. However, the court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

### 3. Access

An adult sibling has standing to file a suit seeking access to siblings who have been separated through DFPS actions:

**102.0045:** (a) The sibling of a child may file an original suit requesting access to the child as provided by Section 153.551 if the sibling is at least 18 years of age.

(b) Access to a child by a sibling of the child is governed by the standards established by Section 153.551.

**153.551:** (a) The sibling of a child who is separated from the child because of an action taken by the Department of Family and Protective Services may request access to the child by filing:

(1) an original suit; or

(2) a suit for modification as provided by Chapter 156.

(b) A sibling described by Subsection (a) may request access to the child in a suit filed for the sole purpose of requesting the relief, without regard to whether the appointment of a managing conservator is an issue in the suit.

(c) The court shall order reasonable access to the child by the child's sibling described by Subsection (a) if the court finds that access is in the best interest of the child.

6

**156.002(c):** The sibling of a child who is separated from the child because of the actions of the Department of Family and Protective Services may file a suit for modification requesting access to the child in the court with continuing, exclusive jurisdiction.

Although only the first section contains an explicit requirement that the sibling be at least 18 years of age, one court has held that minor siblings do not have any standing to seek access: "Although section 153.551 establishes a statutory right to seek sibling access, section 102.0045 requires the sibling requesting access to be at least 18 years of age. Since [the minor child] is not at least eighteen years of age, she does not have standing to seek sibling access."[27]

### C. Aunts, Uncles, and Other Relatives within the Third Degree of Consanguinity

#### 1. Definition of Consanguinity
**Tex. Gov. Code § 573.022. Determination of Consanguinity:**
  (a) Two individuals are related to each other by consanguinity if:
  (1) one is a descendant of the other; or
  (2) they share a common ancestor.
  (b) An adopted child is considered to be a child of the adoptive parent for this purpose.

**Tex. Gov. Code § 573.023. Computation of Degree of Consanguinity:**
  (a) The degree of relationship by consanguinity between an individual and the individual's descendant is determined by the number of generations that separate them. A parent and child are related in the first degree, a grandparent and grandchild in the second degree, a great-grandparent and great-grandchild in the third degree and so on.
  (b) If an individual and the individual's relative are related by consanguinity, but neither is descended from the other, the degree of relationship is determined by adding:
    (1) the number of generations between the individual and the nearest common ancestor of the individual and the individual's relative; and
    (2) the number of generations between the relative and the nearest common ancestor.
  (c) An individual's relatives within the third degree by consanguinity are the individual's:
    (1) parent or child (relatives in the first degree);
    (2) brother, sister, grandparent, or grandchild (relatives in the second degree); and
    (3) great-grandparent, great-grandchild, aunt who is a sister of a parent of the individual, uncle who is a brother of a parent of the individual, nephew who is a child of a brother or sister of the individual, or niece who is a child of a brother or sister of the individual (relatives in the third degree).

Note: A cousin is not a relative within the third degree of consanguinity.[28] A great-aunt or great-uncle is not a relative within the third degree of consanguinity.[29]

Section 102.004 requires the relationship to be within three degrees of consanguinity, not three degrees of affinity.[30] While often used together, consanguinity and affinity are distinct concepts with different definitions.[31] Courts presume the Texas Legislature was familiar with the definitions and chose to permit petitions filed by individuals related within three degrees of consanguinity, but not within three degrees of affinity.[32] Therefore, a person who is related by marriage but who does not share a common ancestor with the child cannot qualify for standing under the sections of the Family Code requiring consanguinity.

#### 2. Both Parents Deceased
If both of a child's parents are deceased, then a relative within the third degree of consanguinity can have standing under the following sections:

**102.003(a)(13):** a person who is a relative of the child within the third degree by consanguinity, as determined by Chapter 573, Government Code, if the child's

---

[27] *In re S.L.M.*, No. 4-07-00566-CV (Tex.App.—San Antonio June 18, 2008) (memo op.).

[28] *Ex parte Fierro*, 79 S.W.3d 54, 56 (Tex.Crim.App. 2002).
[29] *In re N.L.D.*, No. 06-10-00132-CV (Tex.App.—Texarkana 2011).
[30] *In re A.M.S.*, 277 S.W.3d 92, 98 (Tex.App.--Texarkana 2009, no pet.).
[31] *Id.*
[32] *Id.*

parents are deceased at the time of the filing of the petition.

**153.431:** If both of the parents of a child are deceased, the court may consider appointment of a parent, sister, or brother of a deceased parent as a managing conservator of the child, but that consideration does not alter or diminish the discretionary power of the court.

### 3. Living Parent(s)

If a child has a living parent or parents, a relative may be able to have standing, if they can show that the parent(s) consented or that the child's circumstances are harmful:

**102.004(a):** In addition to the general standing to file suit provided by Section 102.003, a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:

(1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; or

(2) both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit.

For standing, there is no requirement that the relative prove an *immediate* danger.[33] That requirement does not appear in the current statute, and it is assumed that the Legislature excluded the immediacy requirement for a purpose.[34] The *Vogel* court found that the father's long-term alcoholism and recent drinking, as well as testimony that it would be harmful for the child to live with the father, were sufficient for the trial court to find that the child's present circumstances, if he were to live with the father, would significantly impair his physical health or emotional development.[35]

### 4. Possessory Conservatorship

A relative within the third degree of consanguinity may file suit seeking possessory conservatorship by intervening in a pending suit, if he or she has had substantial past contact with a child:

**102.004(b):** An original suit requesting possessory conservatorship may not be filed by a grandparent or other person. However, the court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

The *Chavez*[36] case discusses this relaxed standing requirement: Generally, an intervenor must show standing to maintain a suit in his own right in order to intervene.[37] This showing requires that the intervenor have some present justiciable interest in the subject matter of the suit.[38] However, Section 102.004(b) of the Family Code specifically provides that grandparents who have substantial past contact with the child may be granted leave to intervene in a SAPCR. Thus, a grandparent need not have standing sufficient to institute a SAPCR in their own right in order to intervene in a pending SAPCR.[39] This relaxed standing rule promotes the overriding policy in all SAPCR suits, that of protecting the best interest of the child.

### D. Stepparents

#### 1. Deceased Parent

A stepparent who has resided with the child can seek standing upon the death of the child's natural parent:

**102.003(11):** a person with whom the child and the child's guardian, managing conservator, or parent have resided for at least six months ending not more than 90 days preceding the date of the filing of the petition if the child's guardian, managing

---

[33] *In re Vogel*, 261 S.W.3d 917, 921 (Tex.App.—Houston [14th Dist.] 2008, orig. proceeding).

[34] *Id.*

[35] *Id.*

[36] *Chavez v. Chavez*, 148 S.W.3d 449, 457 (Tex.App.--El Paso 2004, no pet.).

[37] *Segovia-Slape v. Paxson*, 893 S.W.2d 694, 696 (Tex.App.-El Paso 1995, orig. proceeding); *McCord v. Watts*, 777 S.W.2d 809, 812 (Tex.App.-Austin 1989, no writ).

[38] *Segovia-Slape*, 893 S.W.2d at 696.

[39] *See Segovia-Slape*, 893 S.W.2d at 696.

conservator, or parent is deceased at the time of the filing of the petition.

Subsection 102.003(a)(11) was designed as a "stepparent" statute, affording standing to, among others, a stepparent who helps raise a child when the stepparent's spouse—one of the child's parents— dies.[40] A traditional application would indicate that upon the death of the mother, as a sole managing conservator of the child, her current husband would have standing.[41]

Note, however, that the statutory language is not limited merely to stepparents; literally it can also include an unmarried cohabitant or even an adult sibling of the child of a deceased parent.[42]

## 2. Living Parents

A stepparent who has resided with the child for six months has standing to bring suit:

**102.003(a)(9):** a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition.

Although the stepparent would not have to overcome the parental presumption to gain standing, in order to prevail in an original suit, the stepparent must overcome the parental presumption. For example, even though a husband finds out that he is not the biological father of the child, he has standing to sue for appointment as managing conservator because he had actual possession and control of the child for six months immediately before the suit was filed.[43] Because of the parental presumption, however, a stepfather or live-in boyfriend of six months does not litigate custody against the mother on equal terms.[44]

The statute does not require that the person asserting standing demonstrate he had exclusive control of the child.[45] However, the person must have some legal right of control over the child or authority to make decisions on behalf of the child.[46] The dissent disagreed with the holding that the biological parent must somehow

relinquish care of the child in order for the other person to have standing, and described facts more similar to the previous *T.W.E.* case.[47]

There is a line of cases that holds that it is very difficult for a person to get standing under this provision if the child's parent(s) were also living with the children. The *M.J.G.* case held that "Even though the children were living in the [grandparents'] home and the [grandparents] performed day-to-day caretaking duties for the children, the children's parents were also living with the children in the home, and there was no evidence that [the parents] did not also care for the children or that [the parents] had abdicated their parental duties and responsibilities to the grandparents."[48] The court in that case found that the grandparents failed to show six months actual care, control, and possession sufficient to establish standing.

There is no bright line rule in the cases showing exactly how much the biological parent must have relinquished control in order for the other resident of the household to have standing to seek conservatorship. However, courts are looking for some actual relinquishment of caregiving duties by the biological parent. It is clear that in order to prevail on the case, the non-parent would have to overcome the parental presumption, but it is unclear how much courts are expecting with regards to merely obtaining standing.

## E. Non-relative

The provisions governing standing for a non-relative are found in §102.003(a) or §102.004(b).

**102.003(a):** An original suit may be filed at any time by:

.......

(2) the child through a representative authorized by the court;

(3) a custodian or person having the right of visitation with or access to the child appointed by an order of a court of another state or country;

(4) a guardian of the person or of the estate of the child;

(5) a governmental entity;

(6) an authorized agency;

(7) a licensed child placing agency;

---

[40] *Id.* at 358.

[41] *Id.*

[42] *Id.* at 356

[43] *T.W.E. v. K.M.E.*, 828 S.W.2d 806, 808 (Tex.App.—San Antonio 1992, no writ).

[44] *Id.* at 809.

[45] *In re K.K.C.*, 292 S.W.3d 788, 793 (Tex.App.--Beaumont 2009, orig. proceeding).

[46] *See Id.*

[47] *Id.* at 794-95.

[48] *In re M.J.G.*, 248 S.W.3d 753, 758-59 (Tex.App.--Fort Worth 2008, no pet.).

(8) a man alleging himself to be the father of a child filing in accordance with Chapter 160, subject to the limitations of that chapter, but not otherwise;

(9) a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition;

(10) a person designated as the managing conservator in a revoked or unrevoked affidavit of relinquishment under Chapter 161 or to whom consent to adoption has been given in writing under Chapter 162;

(11) a person with whom the child and the child's guardian, managing conservator, or parent have resided for at least six months ending not more than 90 days preceding the date of the filing of the petition if the child's guardian, managing conservator, or parent is deceased at the time of the filing of the petition;

(12) a person who is the foster parent of a child placed by the Department of Family and Protective Services in the person's home for at least 12 months ending not more than 90 days preceding the date of the filing of the petition;

(13) a person who is a relative of the child within the third degree by consanguinity, as determined by Chapter 573, Government Code, if the child's parents are deceased at the time of the filing of the petition; or

(14) a person who has been named as a prospective adoptive parent of a child by a pregnant woman or the parent of the child, in a verified written statement to confer standing executed under Section 102.0035, regardless of whether the child has been born.

Section 102.004(b) allows non-parents to intervene in a pending SAPCR.

**102.004(b):** An original suit requesting possessory conservatorship may not be filed by a grandparent or other person. However, the court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

For a non-relative to meet this burden, such individual must show that he or she has had substantial past contact with the child. However, the term "substantial past contact" is not defined by statute or case law.

*In the Interest of H.B.N.S., a Child*, involved the termination of parental rights and adoption proceeding where two unrelated couples were attempting to adopt a child. The court held that the parents of the child's babysitter had standing to intervene based upon their substantial past contacts with the child.[49] In the case, the birth mother allowed the child to go home from the hospital after birth with the Bolton family. While they did not intend to adopt her, the Boltons took her home and cared for her. During that year, they hired a babysitter to care for the child and the babysitter would take the child to her parent's home. Two years later, the birth mother executed an Affidavit of Relinquishment of Parental Rights and designated the Boltons as managing conservators of the child. The Boltons then file a termination and adoption suit. The babysitter's parents, the Shultzes, petitioned for intervention and were ultimately granted standing after showing that they provided ongoing care for extensive periods of time; took the child on family vacations; had the child participate in family celebrations and holidays; provided the child with a room in their home and lake house; and were the ones contacted by the school and had authority to pick up the child from school.[50] Ultimately, the appellate court terminated the birth parents' rights and appointed the Shultzes as the child's sole managing conservator and the Boltons as the possessory conservator based upon their extensive involvement in the child's life.

The case, *In the Interest of N.B.B. and J.B.B.* extending standing to a neighbor of a parent under §102.004(b).[51] The case involved an unmarried mother and father who had two children, one with Downs Syndrome. The parents

[49] 2007 Tex.App. LEXIS 5541 (Tex.App.—Houston [14th Dist.] 2007, pet. denied, Nov. 9, 2007).
[50] *Id.*
[51] 2007 Tex.App. LEXIS 8639 (Tex.App. San Antonio Oct. 31, 2007).

separated and the mother moved away from the father and placed the child with Downs Syndrome in a residential facility and let the other child live with a neighbor when she found out that she was terminally ill. Upon the mother's death, the father came to Texas to take possession of the children, but the neighbor refused to surrender the child in her possession. The father brought a SAPCR action and the neighbor filed a counterpetition. Upon review, the appellate court confirmed the trial court and appointed the father and the neighbor joint managing conservators of the child and granted the neighbor the exclusive right to designate the residence of the children. It is interesting to note that the court found that besides the neighbor having had substantial past contact with the children, that appointing the father as a sole managing conservator would significantly impair the children's health and emotional development.

### F. Foster parents

Foster parents may obtain standing through Texas Family Code §102.003(a)(12), §102.003(c) or §102.004(b). An original suit may be filed as follows:

### 1. Family Code 102.003(a)(12)

A person who is the foster parent of a child placed by the Department of Family and Protective Services in the person's home for at least 12 months ending not more than 90 days preceding the date of the filing of the petition.

### 2. Family Code 102.004(b)

An original suit requesting possessory conservatorship may not be filed by a grandparent or other person. However, the court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

### 3. Family Code 102.003(c)

Notwithstanding the time requirements of Subsection (a)(12), a person who is the foster parent of a child may file a suit to adopt a child for whom the person is providing foster care at any time after the person has been approved to adopt

the child. The standing to file suit under this subsection applies only to the adoption of a child who is eligible to be adopted.

An original suit may be filed at any time by a person who is the foster parent of a child placed by the Department of Protective and Regulatory Services in the person's home for at least 12 months ending not more than 90 days preceding the date of the filing of the petition. Tex. Fam. Code § 102.003(a)(12). In computing the time necessary for standing under subsection (a)(12), "the court may not require that the time be continuous and uninterrupted but shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit." Tex. Fam. Code § 102.003(b). The elements of residency for this section are: (1) a fixed place of abode within the possession of the party; (2) occupied or intended to be occupied consistently over a substantial period of time; (3) which is permanent rather than temporary.[52] Notwithstanding the time requirements of Subsection (a)(12), a person who is the foster parent of a child may file a suit to adopt a child for whom the person is providing foster care at any time after the person has been approved to adopt the child. The standing to file suit under this subsection applies only to the adoption of a child who is eligible to be adopted. Tex. Fam. Code § 102.003(c). The filing of a petition to terminate parental rights by foster parents who have standing under Section 102.003(a)(12) grants a trial court jurisdiction to terminate those rights even after the trial court loses jurisdiction over the petition to terminate filed by the Texas Department of Family and Protective Services.[53] However, if the foster parents' plea in intervention is contingent on upon, and not independent of, the allegations of the Texas Department of Family and Protective Services, and the foster parents have no pending claims for affirmative relief, the foster parents lose standing if the Texas Department of Family and Protective Services nonsuits its claims.[54]

---

[52] *Doncer v. Dickerson*, 81 S.W.3d 349, 356 (Tex.App.--El Paso 2002, no pet.).

[53] *In re C.V.G.,* 112 S.W.3d 180, 184 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding).

[54] *In re Roxsane R.,* 249 S.W.3d 764, 773-74 (Tex. App.—Fort Worth 2008, orig. proceeding).

## G. Prospective Adoptive Parent Standing

### 1. Family Code 102.003(a)(14)

An original suit may be filed at any time by a person who has been named as a prospective adoptive parent of a child by a pregnant woman or the parent of the child, in a verified written statement to confer standing executed under Section 102.0035, regardless of whether the child has been born. Tex. Fam. Code §102.003(a)(14).

### 2. Family Code 102.0035

A pregnant woman or a parent of a child may execute a statement to confer standing to a prospective adoptive parent as provided by Section 102.0035 to assert standing under Section 102.003(a)(14). A statement to confer standing under Section 102.0035 may not be executed in a suit brought by a governmental entity under Chapter 262 or 263. Tex. Fam. Code § 102.0035(a). The statement may not be used for any purpose other than to confer standing in a proceeding for adoption or to terminate the parent-child relationship. Tex. Fam. Code §102.0035(c).

A statement to confer standing is not required in a suit brought by a person who has standing to file a suit affecting the parent-child relationship under Sections 102.003(a)(1)-(13) or any other law under which the person has standing to file a suit. Tex. Fam. Code § 102.0035(e). For a statement to confer standing to be effective, a parent-child relationship must exist and may be as follows. A father-child relationship is established between a man and a child by an unrebutted presumption of paternity; an unrevoked and unchallenged acknowledgment of paternity; an adjudication of paternity; the man's adoption of the child; or his consent to his wife's use of assisted reproduction. Tex. Fam. Code § 160.201(b). An alleged father is a man who alleges himself to be, or is alleged to be, the genetic father or a possible genetic father of the child, but whose paternity has not been determined. Tex. Fam. Code § 101.0015(a). A statement to confer standing executed by a man as an alleged father does not confer standing.[55] A person who executes a statement to confer standing may revoke the statement at any time before the person executes an affidavit for voluntary relinquishment of parental rights. The revocation of the statement must be in writing and must be sent by certified mail, return receipt requested, to the prospective adoptive parent. Tex. Fam. Code §102.0035(f). On filing with the court proof of the delivery of the revocation of a statement to confer standing under Subsection (f), the court shall dismiss any suit affecting the parent-child relationship filed by the prospective adoptive parent named in the statement. Tex. Fam. Code § 102.0035(g).

### 3. In the Interest of S.S.G.

*In the Interest of S.S.G.* considered issues involving prospective adoptive parents that took possession of the child at issue soon after its birth.[56] The prospective adoptive parents filed a SAPCR seeking termination of the parent-child relationship and adoption of the child. *Id.* The trial court terminated the parental rights and appointed the prospective adoptive parents as managing conservators. The Court of Appeals reversed and denied relief to the appellants and appellants filed a petition for review with the Texas Supreme Court which was denied. Appellants, the prospective adoptive parents, had possession of the child during the entire period. Following the denial by the Supreme Court, appellants filed a new SAPCR under §102.003(a)(9), based on the duration of time the child had resided with the parties, thereby affording appellants standing.

The trial court in the second SAPCR pleading noted an exception to §102.003(a)(9), which provides that "if possession is maintained in violation of a valid court order, that possession does not confer standing to bring suit affecting the parent-child relationship." *Id.* The Court held that the prospective adoptive parent's continued possession was not in violation of a court order due to the fact that neither the trial court nor the Court of Appeals entered an order requiring appellants to return the child to the biological parents, and therefore, because they had actual care, custody and possession of the child for six months not ending more than ninety days prior to the filing of the petition, appellants had standing to file the second suit. *Id.*

---

[55] *In re Mata*, 212 S.W.3d 597, 608 (Tex. App.—Austin 2006, orig. proceeding).

[56] 208 S.W.3d 1, 2006 Tex.App. LEXIS 1544 (Tex.App.Amarillo 2006).

## H. Same Sex couples

### 1. Family Code 102.003(a)(9)

Same sex partners most frequently utilize §102.003(a)(9) to attempt to acquire standing. The section states that to establish "actual care, control, and possession" as required by section 102.003(a)(9), the party must demonstrate (i) more than temporary or occasional possession, though it need not by exclusive, and (ii) more than the control "implicit in having care and possession of the child."[57] To establish the six month requirement of "actual care, control, and possession of the child" as required by section 102.003(a)(9), some cases say that the party must demonstrate the child "principally resided" with him, though the residency of the child with the party need not be continuous and uninterrupted.[58] However, visitation in accordance with the Standard Possession Order found in section 153.312 of the family code may satisfy the standing requirement.[59] Whether a party satisfies the standing requirement under section 102.003(a)(9) is necessarily fact specific and determined on a case by case basis.[60] Several cases, as discussed below, have considered standing issues for same sex couples.

### a) In re M.K.S.-V.

*In re M.K.S.-V.*, involved dismissal of a partner's (K.V.) suit for conservatorship or adoption of a child born in 2004 to the ex-partner (T.S.) who became pregnant with the child through artificial insemination by a sperm donor.[61] The partners co-parented the child for over a year when the relationship ended and T.S. moved out with the child. The partners set up an agreed written schedule for the child to visit K.V. overnight once a week, alternate Sunday afternoons, alternate weekends beginning on Friday afternoons during the school year and Thursday afternoons in the summer and certain holidays. The schedule began in August of 2005 and continued until April of 2007 when T.S. discontinued the visits because K.V. had accessed the child's school record without T.S.'s agreement. The following month K.V. filed suit seeking to be appointed joint managing conservator or the child or in the alternative to adopt the child. Since K.V. was not the biological parent of the child, she asserted standing to sue for conservatorship under section 102.003(a)(9) as a person who had "actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." Tex. Fam. Code Ann §102.003(a)(9).

K.V. appealed the trial court's decision that she lacked standing to sue for conservatorship, maintaining that she satisfied the standing requirement by virtue of her weekly overnight possessions of the child and possessions on "some holidays", alternate weekends, and alternate Sundays. Noting that the court in *Doncer* compared the term "principal residence" as used in the determination of the six month possession requirement in §102.003(a)(9) with the term "primary residence" as defined in a joint managing conservatorship in connection with whom the child lives once conservators have been appointed, the Appellate Court concluded the term "principal residence" means a "fixed place of abode, occupied consistently over a substantial period of time, which is permanent rather than temporary." K. V. argued that her home was a principal residence of the child because it was "a fixed place of abode" that the child occupied consistently and in a permanent fashion, in accordance with the possession agreement. The Appellate Court held that an intent that the child occupy K.V.'s home consistently over a substantial period of time alone established only the six month requirement of section 102.003(a)(9), and to establish standing, K.V. also had to establish that she exercised more than the control implicit in having care and possession of the child.

The Appellate Court placed emphasis on the fact that even though the "possession agreement" shared characteristics of a standard possession order, nothing in the record showed that it was accompanied by the rights a parent conservator enjoys "at all times," or that T.S. relinquished or shared any of her rights as a parent. The Appellate Court thus rejected K.V.'s argument that she established standing to sue for

---

[57] See *K.K.C.*, 292 S.W.3d 788 (Tex.App. -Beaumont 2009, orig. proceeding); *In re M.J.G.*, 248 S.W.3d 753, 758-59 (Tex.App.-Fort Worth 2008, no pet.).

[58] *Doncer v. Dickerson*, 81 S.W.3d 349, 361 (Tex.App.- El Paso 2002, no pet.); See Tex. Fam. Code Ann. §102.003(b).

[59] *See Doncer*, 81 S.W.3d at 362.

[60] *In re M.P.B.*, 257 S.W.3d 804, 809 (Tex.App. - Dallas 2008, no pet.).

[61] 301 S.W.3d 460 (Tex.App.—Dallas 2009).

conservatorship by virtue of her possession agreement.

The Dallas Appellate Court, on December 1, 2009, withdrew the August opinion, vacated the judgment of that date, and issued a new opinion finding that the trial court erred in determining that K.V. did not meet the standing requirement.[62] In finding that K.V. did establish the six month period of actual care, custody, and control requisite to establish her standing to file an original SAPCR, the Dallas Court of Appeals focused on the fact that the child had her own room in K.V.'s house where the child kept toys, movies, a television and an aquarium. *Id*. K.V. had modified her house by building a wrap around deck with gates to create a safe environment for the child, would pick up the child from school on occasions when the child was sick and then purchase and administer medication. *Id*. K.V. was listed as a parent on the child's school records, attended school activities and the teachers were aware that K.V. picked up the child during K.V.'s periods of possession. *Id*. Witnesses testified that T.S. had referred to K.V. as the child's mother and treated K.V. as a parent. *Id*. K.V. established a college fund for the child and after the relationship with T.S. ended, the couple still attended church with the child as a family unit. *Id*. The Appellate Court stated that the record did not suggest that the pattern of possession and care giving was intended to be a temporary arrangement. *Id*. "To the contrary, the possession agreement and the parties' actions evidenced intent that the child occupy K.V.'s home consistently over a substantial period of time." *Id*.

**b)  In re Smith**

In *In re Smith*, Charlena Smith gave birth to twins conceived by artificial insemination from an anonymous donor, and when the twins were four months old, Smith and her same sex partner, Sheila Haley, filed a joint SAPCR petition.[63] In October 2002, when the twins were five months old, the trial court signed an Agreed SAPCR Order appointing Smith and Haley as joint managing conservators and gave them equal possession of the children at all times and stating "that no stated provisions for possession and access are necessary in light of the fact that the parties cohabited in the same primary residence."

*Id*. Haley and Smith separated in February 2008, and Smith filed a motion to vacate the agreed order, and Haley filed a petition to modify the order. *Id*. The trial court denied Smith's motion to vacate and she filed for mandamus arguing that the 2002 agreed order naming Haley as joint managing conservator was void because Haley lacked standing. *Id*. The Appellate Court conditionally granted Smith's petition for writ of mandamus and directed the trial court to vacate its orders. In doing so, the appellate court noted that at the temporary hearing in 2008, Haley acknowledged that she did not have standing at the time the original petition was filed pursuant to section 102.003(a)(9), in that she was not "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the original petition." *Id*. at 466. When Haley and Smith filed the joint petition, the twins were four months old so the six month requirement had not been met. *Id*. The Appellate Court also rejected Haley's argument that because she and Smith had a written agreement concerning conservatorship incorporated into the agreed order, that Smith's standing was enough to confer jurisdiction. Haley relied on section 153.007(b) of the Texas Family Code, providing that the court "shall render an order in accordance with the parenting plan." Regardless, the Appellate Court stated that section 153.007(b) presupposes standing, and Haley had not established standing under the Family Code's general standing statute or under a more specific Family Code statute. *Id*. at 466.

Haley then filed an original petition in 2008 seeking to be named as sole managing conservator under Chapter 153 of the Texas Family Code arguing standing to do so pursuant to §102.003(a)(9).[64] The trial court dismissed the petition for lack of standing and made written findings of fact and conclusions of law as set forth as follows:

> "1.  There is no evidence that, during the relevant time period, the parent, Ms. Smith, totally abdicated her parental responsibilities over the children to the non parent, Ms. Haley.

---

[62] *In re M.K.S.-V.*, 05-08-00568-CV (Tex.App.-Dallas 2009).
[63] 262 S.W.3d 463 (Tex.App.-Beaumont 2008)

[64] *In the Interest of C.T.H.S. and C.R.H.S.*, 311 S.W.3d 204 (Tex.Civ.App.—Beaumont 2010).

2. There is no evidence that, during the relevant time period, the parent Ms. Smith did not exercise some care for, some control over or some supervision over the children at the same time that the non parent Ms. Haley exercised some care for, some control over and some supervision over the children.

3. There is no evidence that, during the relevant time period, the non parent Ms. Haley exercised exclusive care for, control over and supervision over the children to the exclusion of the parent Ms. Smith.

4. A parent must totally abdicate their parental responsibilities to another person during the relevant time period before that other person can acquire standing to file an original SAPCR with respect to that parent's child.

5. A parent's allowing of a non parent to have some care for, some control over and some supervision over the parent's child during the relevant time period is insufficient for the non parent to acquire standing to file an original SAPCR with respect to that child.

6. If a parent, to any extent whatsoever, retains or exercises any care for, any control over or any supervision over their child during the relevant time period, then a non-parent cannot as a matter of law acquire standing to file an original SAPCR with respect to that child.

7. During the relevant time period, a non-parent must exercise exclusive care for, control over and supervision over a child (not necessarily continuous for the entire time period, but during the relevant time period) to the exclusion of the child's parent in order to acquire standing to file an original SAPCR with respect to that child." *Id*.

Haley appealed the trial court's dismissal of her petition for lack of standing. *Id*. On appeal, the court in considering if she had standing focused on the specific statutory words "actual care, control, and possession" in §102.003(a)(9) of the Texas Family Code and stated that they would give each "word effect if it is reasonable and possible to do so." *Id* at 208. The appellate court stated that "actual care" must be interpreted in context with the responsibilities and liberty interests of the parent. *Id*. In giving effect to the words "actual care," the appellate court considered §102.003(a)(11) which provides standing for a person with whom the child has resided for six months if the parent is deceased at the time suit is filed. *Id*. The appellate court theorized that a person living with a parent and a child may care for the child over a period of time but would not acquire standing by providing the care normally associated with residing in the same household. *Id*. at 209.

The appellate court compared the case to *In re M.J.G.,*[65] where the Fort Worth court of appeals denied standing to grandparents holding that although the children lived with the grandparents since birth and the grandparents performed day to day care taking duties, the parents also lived with the grandparents and had not "abdicated their parental duties and responsibilities to the grandparents." *Id.* at 209, citing *In re M.J.G*.

Haley argued the *M.J.G.* decision incorrectly construed §102.003(a)(9) and that a parent often lives with others and that the best interest of the children should be the primary consideration. *Id*. The appellate court disagreed with Haley and stated that "standing does not turn on whether a trial court agrees or disagrees with a parent's decision concerning the best interest of her children, or a parent's decision regarding who may associate with her children." *Id*. at 209. Further, that the inquiry of the court for a non-parent claiming standing pursuant to the "actual care" requirement of §102.003(a)(9) focuses on "whether the parent is adequately caring for her children." *Id*., citing Tex. Fam. Code §102.003(a)(9). The appellate court concluded that although Haley lived with the children, Smith also lived in the home with the children and had not "abdicated her parental duties and responsibilities" nor did the record show that Smith failed to adequately care for her children. *Id*. at 209-210. As such, the court affirmed the trial court's ruling that Haley failed to meet her burden and did not have standing to file suit. *Id*.

---

[65] 248 S.W.3d 753 (Tex.App.-Fort Worth 2008, no pet.)

## 2. Same Sex Adoption

The Texas Family Code does not preclude same sex adoption. Section 162.001 sets forth who may adopt and who may be adopted:

**162.001:** (a) Subject to the requirements for standing to sue in Chapter 102, an adult may petition to adopt a child who may be adopted.

(b) A child residing in this state may be adopted if:

(1) the parent-child relationship as to each living parent of the child has been terminated or a suit for termination is joined with the suit for adoption;

(2) the parent whose rights have not been terminated is presently the spouse of the petitioner and the proceeding is for a stepparent adoption;

(3) the child is at least two years old, the parent-child relationship has been terminated with respect to one parent, the person seeking the adoption has been a managing conservator or has had actual care, possession, and control of the child for a period of six months preceding the adoption or is the child's former stepparent, and the nonterminated parent consents to the adoption; or

(4) the child is at least two years old, the parent-child relationship has been terminated with respect to one parent, and the person seeking the adoption is the child's former stepparent and has been a managing conservator or has had actual care, possession, and control of the child for a period of one year preceding the adoption.

(c) If an affidavit of relinquishment of parental rights contains a consent for the Department of Protective and Regulatory Services or a licensed child-placing agency to place the child for adoption and appoints the department or agency managing conservator of the child, further consent by the parent is not required and the adoption order shall terminate all rights of the parent without further termination proceedings.

Additionally, §102.0035 allows a pregnant woman or any parent of a child to sign a statement to confer standing to a prospective adoptive parent and allow that individual to bring a suit for adoption or for termination and adoption under §102.003(a)(14). Several cases have considered the issue of standing in same sex adoptions.

In *Goodson v. Castellanos,*[66] Goodson traveled to Kazakstan to adopt a 3-year old child. After returning, she and her same-sex partner, Castellanos, adopted the child. A year later, when the parents separated, Castellanos filed a SAPCR and after trial, the court appointed Castellanos as sole managing conservator. On appeal, Goodson alleged that the Texas adoption was void because the court lacked subject matter jurisdiction over an adoption of a child by two members of the same sex. She used various definitions of "parent" in Texas Family Code § 101.024 and 101.025 and also cited the Texas Health and Safety Code § 192.008(a) that says amended birth certificates "must be in the names of the adoptive parents, one of whom must be a female . . . and the other of whom must be a male." The court rejected these arguments, saying that the court issuing the adoption order is a court of general jurisdiction that "may hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity." *Id.* at 747. The court also pointed out that the Family Code "specifically authorizes district courts to issue adoption orders. *Id.* at 748. The court held that Goodson could not collaterally attack the adoption decree. *Id.* at 749.

Goodson also argued that the coparent adoption "violates the public interest of the state of Texas that a child have at most one parent of each sex." *Id* at 750. The court again disagreed. The Court held that if a parent wishes to maintain that zone of privacy she cannot invite a third party to function as a parent to her child and cannot cede over to that party parental authority the exercise of which may create a profound bond with the child. *Id.* at 752.

In *Hobbs v. Van Stavern,*[67] Hobbs was the child's biological mother who conceived the child

---

[66] 214 S.W.3d 741 (Tex.App.—Austin 2007).
[67] 249 S.W.3d 1 (Tex.App.—Houston [1st Dist.] 2006).

through donor insemination and Van Stavern adopted the child when the child was 3 years old. A year and a half later, the parents separated and Van Stavern moved out of the home and filed a SAPCR. When Hobbs attacked the validity of the adoption, the court responded that the attack was untimely, and held that the validity of an adoption order is not subject to attack after six months after the date the order was signed. *Id.* Hobbs also claimed that appointing Van Stavern as a joint managing conservator of the child violated public policy because it was "tantamount to a proclamation validating same-sex relationships." *Id.* Noting that Van Stavern had "little substantive argument and no citation to authority," the court found that, because the Code permitted Van Stavern to seek custody, it was "constrained to follow the provisions of the Family Code as enacted" and overruled the public policy argument. *Id.* at 4-5.

## I. Designated Guardian: Connecting the Probate Code to the Family Code

An attorney practicing primarily family law may not have a working familiarity with the Probate Code, nonetheless, it can provide standing in certain instances. Under Tex. Fam. Code 102.003(a)(4), a guardian of the person or of the estate of the child has standing to file an original suit. Such a person also has standing to file a modification suit, pursuant to Tex. Fam. Code § 156.002(b).

In the Probate Code, the term "guardian" is defined to mean a person who is appointed guardian under Section 693 of the Probate Code, or a temporary or successor guardian.[68] The term "guardian" in Section 102.003(a)(4) of the Family Code must be construed in accordance with the Probate Code's definition of "guardian."[69]

Section 676 of the Probate Code allows the surviving parent of a minor, by will or written declaration, to appoint any eligible person to be guardian of the person of the parent's minor children after the death or incapacity of the parent.[70] After the parent's death or a finding of incapacity, the court shall appoint the person designated in the will or declaration to serve as guardian of the person of the parent's minor children.[71] If a parent has engaged in estate planning, and has designated a guardian for a child, then that person, upon being appointed guardian, would have standing to file suit.

## J. Standing to Adjudicate Parentage

Unless a voluntary acknowledgment of paternity has been executed by another man, a prospective father has standing to seek adjudication of paternity.

**102.003(a)(8):** a man alleging himself to be the father of a child filing in accordance with Chapter 160, subject to the limitations of that chapter, but not otherwise.

**160.602(a):** Subject to Subchapter D [voluntary acknowledgment of paternity] and [the time limits in] Sections 160.607 and 160.609 and except as provided by Subsection (b), a proceeding to adjudicate parentage may be maintained by:

(1) the child;

(2) the mother of the child;

(3) a man whose paternity of the child is to be adjudicated;

(4) the support enforcement agency or another government agency authorized by other law;

(5) an authorized adoption agency or licensed child-placing agency;

(6) a representative authorized by law to act for an individual who would otherwise be entitled to maintain a proceeding but who is deceased, is incapacitated, or is a minor;

(7) a person related within the second degree by consanguinity to the mother of the child, if the mother is deceased; or

(8) a person who is an intended parent.

(b) After the date a child having no presumed, acknowledged, or adjudicated father becomes an adult, a proceeding to adjudicate the parentage of the adult child may only be maintained by the adult child.

Prior to 2007, there was debate over whether a sperm donor had standing to adjudicate parentage. *In re Sullivan*[72] held that where a mother and a donor had executed a co-parenting agreement, he

---

[68] Tex. Prob. Code § 601(11).

[69] *In re A.D.P.*, 281 S.W.3d 541, 549 (Tex.App.—El Paso 2008, no pet.).

[70] Tex. Prob. Code § 676(d).

[71] Tex. Prob. Code § 676(e).

[72] *In re Sullivan*, 157 S.W.3d 911 (Tex.App.--Houston [14th Dist.] 2005, orig. proceeding [mand. denied]).

had standing to bring a suit; while *In re H.C.S.*[73] held that a donor did not have standing. In 2007, Tex. Fam. Code § 160.7031 was revised to clarify the issue.

Another interesting case held that, where a man seeking to be adjudicated the father has standing as of the filing of the case, the court does not lose subject matter jurisdiction over the parentage action when the DNA test results determine that he is not the father.[74]

## IV. Challenging Standing

The *Sullivan*[75] case contains a discussion on the proper procedure for challenging standing:

Standing is a prerequisite to subject-matter jurisdiction, which is essential to a court's power to decide a case.[76] A party may challenge the absence of subject-matter jurisdiction by a plea to the jurisdiction and by other procedural vehicles.[77] A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat the alleged claims, without regard to whether they have merit.[78] The purpose of a dilatory plea is not to force a plaintiff to preview its case on the merits, but to establish a reason why the merits of its case should never be reached.[79]

Meeting the burden for standing is different than meeting the burden to prevail on the case. The Texas Supreme Court has emphasized that a court should not decide standing issues based on its views of the merits: "In deciding a plea to the jurisdiction, a court may not weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry. When we consider a trial court's order on a plea to the jurisdiction, we construe the pleadings in the plaintiff's favor and look to the pleader's intent."[80] A trial court accepts the factual allegations in the petition as true, unless the defendant pleads and proves the

allegations were made fraudulently to confer jurisdiction.[81] When reviewing a trial court's order on a plea to the jurisdiction, an appellate court may look to evidence outside of the pleadings: "[T]he issues raised by a dilatory plea are often such that they cannot be resolved without hearing evidence. And because a court must not act without determining that it has subject-matter jurisdiction to do so, it should hear evidence as necessary to determine the issue before proceeding with the case. But the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction….The court should, of course, confine itself to the evidence relevant to the jurisdictional issue."[82]

---

[73] *In re H.C.S.*, 219 S.W.3d 33 (Tex.App.-San Antonio 2006, no pet.).

[74] *In re K.I.A.*, 205 S.W.3d 14 (Tex.App.—Eastland 2006, no pet.).

[75] *In re Sullivan*, 157 S.W.3d 911, 914-15 (Tex.App.--Houston [14th Dist.] 2005, orig. proceeding, [mand. denied]).

[76] *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000).

[77] *Id*. at 554.

[78] *Id.*

[79] *Id.*

[80] *Id*. at 554-55.

[81] *Id*. at 554; *TAC Realty, Inc. v. City of Bryan*, 126 S.W.3d 558, 561 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

[82] *Id*. at 554-55.

## V. Appendix A, Texas Family Code Standing Provisions

### A. Chapter 102

**Tex. Fam. Code § 102.003.**
**GENERAL STANDING TO FILE SUIT.**
(a) An original suit may be filed at any time by:
   (1) a parent of the child;
   (2) the child through a representative authorized by the court;
   (3) a custodian or person having the right of visitation with or access to the child appointed by an order of a court of another state or country;
   (4) a guardian of the person or of the estate of the child;
   (5) a governmental entity;
   (6) an authorized agency;
   (7) a licensed child placing agency;
   (8) a man alleging himself to be the father of a child filing in accordance with Chapter 160, subject to the limitations of that chapter, but not otherwise;
   (9) a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition;
   (10) a person designated as the managing conservator in a revoked or unrevoked affidavit of relinquishment under Chapter 161 or to whom consent to adoption has been given in writing under Chapter 162;
   (11) a person with whom the child and the child's guardian, managing conservator, or parent have resided for at least six months ending not more than 90 days preceding the date of the filing of the petition if the child's guardian, managing conservator, or parent is deceased at the time of the filing of the petition;
   (12) a person who is the foster parent of a child placed by the Department of Family and Protective Services in the person's home for at least 12 months ending not more than 90 days preceding the date of the filing of the petition;
   (13) a person who is a relative of the child within the third degree by consanguinity, as determined by Chapter 573, Government Code, if the child's parents are deceased at the time of the filing of the petition; or
   (14) a person who has been named as a prospective adoptive parent of a child by a pregnant woman or the parent of the child, in a verified written statement to confer standing executed under Section 102.0035, regardless of whether the child has been born.
(b) In computing the time necessary for standing under Subsections (a)(9), (11), and (12), the court may not require that the time be continuous and uninterrupted but shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit.
(c) Notwithstanding the time requirements of Subsection (a)(12), a person who is the foster parent of a child may file a suit to adopt a child for whom the person is providing foster care at any time after the person has been approved to adopt the child. The standing to file suit under this subsection applies only to the adoption of a child who is eligible to be adopted.

**Tex. Fam. Code § 102.0035.**
**STATEMENT TO CONFER STANDING.**
(a) A pregnant woman or a parent of a child may execute a statement to confer standing to a prospective adoptive parent as provided by this section to assert standing under Section 102.003(a)(14). A statement to confer standing under this section may not be executed in a suit brought by a governmental entity under Chapter 262 or 263.
(b) A statement to confer standing must contain:
   (1) the signature, name, age, and address of the person named as a prospective adoptive parent;
   (2) the signature, name, age, and address of the pregnant woman or of the parent of the child who is consenting to the filing of a petition for adoption or to terminate the parent-child relationship as described by Subsection (a);
   (3) the birth date of the child or the anticipated birth date if the child has not been born; and
   (4) the name of the county in which the suit will be filed.

(c) The statement to confer standing must be attached to the petition in a suit affecting the parent-child relationship. The statement may not be used for any purpose other than to confer standing in a proceeding for adoption or to terminate the parent-child relationship.

(d) A statement to confer standing may be signed at any time during the pregnancy of the mother of the unborn child whose parental rights are to be terminated.

(e) A statement to confer standing is not required in a suit brought by a person who has standing to file a suit affecting the parent-child relationship under Sections 102.003(a)(1)-(13) or any other law under which the person has standing to file a suit.

(f) A person who executes a statement to confer standing may revoke the statement at any time before the person executes an affidavit for voluntary relinquishment of parental rights. The revocation of the statement must be in writing and must be sent by certified mail, return receipt requested, to the prospective adoptive parent.

(g) On filing with the court proof of the delivery of the revocation of a statement to confer standing under Subsection (f), the court shall dismiss any suit affecting the parent-child relationship filed by the prospective adoptive parent named in the statement.

**Tex. Fam. Code § 102.004.**
**STANDING FOR GRANDPARENT OR OTHER PERSON.**

(a) In addition to the general standing to file suit provided by Section 102.003, a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:

    (1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; or

    (2) both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit.

(b) An original suit requesting possessory conservatorship may not be filed by a grandparent or other person. However, the court may grant a grandparent or other person

deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

(c) Possession of or access to a child by a grandparent is governed by the standards established by Chapter 153.

**Tex. Fam. Code § 102.0045.**
**STANDING FOR SIBLING.**

(a) The sibling of a child may file an original suit requesting access to the child as provided by Section 153.551 if the sibling is at least 18 years of age.

(b) Access to a child by a sibling of the child is governed by the standards established by Section 153.551.

**Tex. Fam. Code § 102.005.**
**STANDING TO REQUEST TERMINATION AND ADOPTION.**

An original suit requesting only an adoption or for termination of the parent-child relationship joined with a petition for adoption may be filed by:

    (1) a stepparent of the child;

    (2) an adult who, as the result of a placement for adoption, has had actual possession and control of the child at any time during the 30-day period preceding the filing of the petition;

    (3) an adult who has had actual possession and control of the child for not less than two months during the three-month period preceding the filing of the petition;

    (4) an adult who has adopted, or is the foster parent of and has petitioned to adopt, a sibling of the child; or

    (5) another adult whom the court determines to have had substantial past contact with the child sufficient to warrant standing to do so.

**Tex. Fam. Code § 102.006.**
**LIMITATIONS ON STANDING.**

(a) Except as provided by Subsections (b) and (c), if the parent-child relationship between the child and every living parent of the child has

been terminated, an original suit may not be filed by:

(1) a former parent whose parent-child relationship with the child has been terminated by court order;

(2) the father of the child; or

(3) a family member or relative by blood, adoption, or marriage of either a former parent whose parent-child relationship has been terminated or of the father of the child.

(b) The limitations on filing suit imposed by this section do not apply to a person who:

(1) has a continuing right to possession of or access to the child under an existing court order; or

(2) has the consent of the child's managing conservator, guardian, or legal custodian to bring the suit.

(c) The limitations on filing suit imposed by this section do not apply to an adult sibling of the child, a grandparent of the child, an aunt who is a sister of a parent of the child, or an uncle who is a brother of a parent of the child if the adult sibling, grandparent, aunt, or uncle files an original suit or a suit for modification requesting managing conservatorship of the child not later than the 90th day after the date the parent-child relationship between the child and the parent is terminated in a suit filed by the Department of Family and Protective Services requesting the termination of the parent-child relationship.

### Tex. Fam. Code § 102.007.
### STANDING OF TITLE IV-D AGENCY.

In providing services authorized by Chapter 231, the Title IV-D agency or a political subdivision contracting with the attorney general to provide Title IV-D services under this title may file a child support action authorized under this title, including a suit for modification or a motion for enforcement.

### B.   Chapter 153

### Tex. Fam. Code § 153.431.
### APPOINTMENT OF GRANDPARENT, AUNT, OR UNCLE AS MANAGING CONSERVATOR.

If both of the parents of a child are deceased, the court may consider appointment of a parent, sister, or brother of a deceased parent as a managing conservator of the child, but that consideration does not alter or diminish the discretionary power of the court.

### Tex. Fam. Code § 153.432.
### SUIT FOR POSSESSION OR ACCESS BY GRANDPARENT.

(a) A biological or adoptive grandparent may request possession of or access to a grandchild by filing:

(1) an original suit; or

(2) a suit for modification as provided by Chapter 156.

(b) A grandparent may request possession of or access to a grandchild in a suit filed for the sole purpose of requesting the relief, without regard to whether the appointment of a managing conservator is an issue in the suit.

(c) In a suit described by Subsection (a), the person filing the suit must execute and attach an affidavit on knowledge or belief that contains, along with supporting facts, the allegation that denial of possession of or access to the child by the petitioner would significantly impair the child's physical health or emotional well-being. The court shall deny the relief sought and dismiss the suit unless the court determines that the facts stated in the affidavit, if true, would be sufficient to support the relief authorized under Section 153.433.

### Tex. Fam. Code § 153.433.
### POSSESSION OF OR ACCESS TO GRANDCHILD.

(a) The court may order reasonable possession of or access to a grandchild by a grandparent if:

(1) at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated;

(2) the grandparent requesting possession of or access to the child overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being; and

21

(3) the grandparent requesting possession of or access to the child is a parent of a parent of the child and that parent of the child:
  (A) has been incarcerated in jail or prison during the three-month period preceding the filing of the petition;
  (B) has been found by a court to be incompetent;
  (C) is dead; or
  (D) does not have actual or court-ordered possession of or access to the child.
(b) An order granting possession of or access to a child by a grandparent that is rendered over a parent's objections must state, with specificity that:
  (1) at the time the relief was requested, at least one biological or adoptive parent of the child had not had that parent's parental rights terminated;
  (2) the grandparent requesting possession of or access to the child has overcome the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that the denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being; and
  (3) the grandparent requesting possession of or access to the child is a parent of a parent of the child and that parent of the child:
    (A) has been incarcerated in jail or prison during the three-month period preceding the filing of the petition;
    (B) has been found by a court to be incompetent;
    (C) is dead; or
    (D) does not have actual or court-ordered possession of or access to the child.

## Tex. Fam. Code § 153.434.
## LIMITATION ON RIGHT TO REQUEST POSSESSION OR ACCESS.

A biological or adoptive grandparent may not request possession of or access to a grandchild if:
(1) each of the biological parents of the grandchild has:
  (A) died;
  (B) had the person's parental rights terminated; or

  (C) executed an affidavit of waiver of interest in child or an affidavit of relinquishment of parental rights under Chapter 161 and the affidavit designates an authorized agency, licensed child-placing agency, or person other than the child's stepparent as the managing conservator of the child; and
(2) the grandchild has been adopted, or is the subject of a pending suit for adoption, by a person other than the child's stepparent.

## Tex. Fam. Code § 153.551.
## SUIT FOR ACCESS.
(a) The sibling of a child who is separated from the child because of an action taken by the Department of Family and Protective Services may request access to the child by filing:
(1) an original suit; or
(2) a suit for modification as provided by Chapter 156.
(b) A sibling described by Subsection (a) may request access to the child in a suit filed for the sole purpose of requesting the relief, without regard to whether the appointment of a managing conservator is an issue in the suit.
(c) The court shall order reasonable access to the child by the child's sibling described by Subsection (a) if the court finds that access is in the best interest of the child.

## C.  Chapter 156

## Tex. Fam. Code § 156.002.
## WHO CAN FILE.
(a) A party affected by an order may file a suit for modification in the court with continuing, exclusive jurisdiction.
(b) A person or entity who, at the time of filing, has standing to sue under Chapter 102 may file a suit for modification in the court with continuing, exclusive jurisdiction.
(c) The sibling of a child who is separated from the child because of the actions of the Department of Family and Protective Services may file a suit for modification requesting access to the child in the court with continuing, exclusive jurisdiction.

## D. Chapter 160

**Tex. Fam. Code § 160.602.**
**STANDING TO MAINTAIN PROCEEDING.**

(a) Subject to Subchapter D and Sections 160.607 and 160.609 and except as provided by Subsection (b), a proceeding to adjudicate parentage may be maintained by:

(1) the child;

(2) the mother of the child;

(3) a man whose paternity of the child is to be adjudicated;

(4) the support enforcement agency or another government agency authorized by other law;

(5) an authorized adoption agency or licensed child-placing agency;

(6) a representative authorized by law to act for an individual who would otherwise be entitled to maintain a proceeding but who is deceased, is incapacitated, or is a minor;

(7) a person related within the second degree by consanguinity to the mother of the child, if the mother is deceased; or

(8) a person who is an intended parent.

(b) After the date a child having no presumed, acknowledged, or adjudicated father becomes an adult, a proceeding to adjudicate the parentage of the adult child may only be maintained by the adult child.

# APPENDIX B

Certified Document Number: 4563940 - Page 1 of 22

NCP Name: **JOSEPH ANDR DAVIS**
CP Name: **SANDRA LOPEZ**
OAG Number: **0220755141**
LAC: **RPMJ**

## CAUSE NUMBER *9709681*

IN THE INTEREST OF

§ IN THE *245TH JUDICIAL DISTRICT*

JO~~██████~~DAVIS §
JO~~██████~~E DAVIS II §    OF
JO~~██████~~DAVIS §

**MINOR CHILDREN** § *HARRIS* COUNTY, TEXAS

*Abated*

### CHILD SUPPORT REVIEW ORDER
**(ORDER ESTABLISHING AND MODIFYING THE PARENT-CHILD RELATIONSHIP AND CHILD SUPPORT JUDGMENT)**

On the _17_ day of ___November, 2003___ , a negotiation conference was held pursuant to Texas Family Code Chapter 233.

The OFFICE OF THE ATTORNEY GENERAL appeared by a duly authorized representative.

*SANDRA LOPEZ, mother* of the children, social security number ███████ ~~number~~ ███████, hereinafter referred to as Obligee,

[✓] appeared ~~in person (and by attorney~~ _Pro-se_ );

[✓] agreed to the entry of these orders as evidenced by her signature;

[✓] although duly notified, did not appear.

*JOSEPH ANDR DAVIS, father* of the children, social security number ███████ _TXDL Class C_ number ███████, hereinafter referred to as Obligor,

[✓] appeared ~~in person (and by attorney~~ _Pro se_ );

[✓] agreed to the entry of these orders as evidenced by his signature;

[ ] although duly notified, did not appear.

The following agreements and/or findings are the result of the negotiation conference.

The Court in which this order will be filed has jurisdiction of the parties and the subject matter of this suit. The OFFICE OF THE ATTORNEY GENERAL brought this proceeding pursuant to Texas Family Code Chapter 233. The following orders are in the best interest of the children.



AGREED CSRP

## CHILDREN

It is FOUND that the following children are the subject of this suit.

| Name | Sex | DOB | SSN | Birthplace |
|------|-----|-----|-----|------------|
| J██████████ | M | █3█19█ | ██████X | CONROE, TX |
| J██████████ II | M | ███5 | █████7 | CONROE, TX |
| J███████████ | F | █7██2█ | ██2██ | HOUSTON, HARRIS, TX |

## PARENTAGE

It is FOUND and ORDERED that the parent-child relationship is established between J██████ A██████  D████ and *JOSEPH ANDR DAVIS* and that the birth records of said child(ren) be amended to show *JOSEPH ANDR DAVIS* as the Father of the child(ren) and the child(ren)'s surname as ___*Davis*___. It is FOUND that the parent-child relationship exists for the other children.

## DUTY OF SUPPORT

It is FOUND that *JOSEPH ANDR DAVIS*, the FATHER of the children subject of this suit, has a duty of support.

## CONSERVATORS

*SANDRA LOPEZ* and *JOSEPH ANDR DAVIS* are appointed Joint Managing Conservators of the children.

Each parent appointed as a conservator of the children has at all times the following rights and duties of a parent:

a.    to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

b.    to confer with the other parent before making a decision concerning the health, education, and welfare of the children;

c.    of access to medical, dental, psychological and educational records of the children;

d.    to consult with any physician, dentist, or psychologist of the children;

e.    to consult with school officials concerning the children's welfare and educational status, including school activities;

f.    to attend school activities;

g.    to be designated on any records as a person to be notified in case of an emergency;

h.    to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children;

i.    to manage the estate of the children to the extent the estate has been created by the parent or the parent's family; and

j.    the right to inherit from and through the children.

Certified Document Number: 4563940 - Page 2 of 22

# APPENDIX C

## C. Standing Denied - No Actual Care

### In the Interest of C.T.H.S. and C.R.H.S.
311 S.W.3d 204
(Tex. App.—Beaumont 2010, pet. denied)

KREGER, JUSTICE.

Sheila R. Haley appeals the dismissal of her petition to be appointed sole managing conservator with the right to designate the primary residence of the twin children of Charlena Renee Smith. In two issues, Haley contends the trial court erred in determining that Haley lacked standing to pursue an original suit affecting the parent-child relationship ("SAPCR") and in considering affidavits offered by Smith. Because Haley did not establish she has standing, and because we presume the trial court ignored all incompetent evidence in reaching its conclusion, the order of the trial court is affirmed.

Standing is a component of subject matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit under Texas law. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444-44 (Tex. 1993). A person who seeks conservatorship of a child must have standing to file suit. *In re K.K.C.,* 292 S.W.3d 788, 790 (Tex. App.—Beaumont 2009, orig. proceeding). "Whether a trial court has subject-matter jurisdiction is a question of law subject to *de novo* review." *Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 855 (Tex. 2002).

In an original suit affecting the parent-child relationship in which the petitioner seeks managing conservatorship, the question of standing is a threshold issue. *In re M.P.B.,* 257 S.W.3d 804, 808 (Tex. App.—Dallas 2008, no pet.). The Texas Legislature has provided a comprehensive statutory framework for conferring standing in the context of suits involving the parent-child relationship. *See* TEX. FAM.CODE ANN. §§ 102.003, .0035, .004, .0045 (Vernon Supp. 2009), § 102.006 (Vernon 2008). A petitioner seeking managing conservatorship has the burden to prove standing. *In re Smith,* 262 S.W.3d 463, 465 (Tex. App.—Beaumont 2008, orig. proceeding [mand. denied]).

In an earlier mandamus proceeding, this Court held that a 2002 agreed order naming Haley as joint managing conservator of C.T.H.S. and C.R.H.S. was void. *Id.* at 466-67. We identified two reasons why the trial court lacked jurisdiction in 2002. First, the twins were only four months old at the time the suit was commenced, and, therefore, Haley lacked standing. *Id.* at 465; *see* TEX. FAM.CODE ANN. § 102.003(a)(9) (conferring standing on "a person, other than a foster parent, who has had actual care, control, and possession of the child[ren] for at least six months ending not more than 90 days preceding the date of the filing of the petition"). Second, in 2002 there was no real controversy between Haley and Smith to be resolved by the court. *Smith,* 262 S.W.3d at 466. We held that the temporary orders arising out of the motion to modify the void order must be vacated. *Id.* at 467. The trial court vacated its prior orders on August 19, 2008.

Haley's 2008 petition seeking to be named sole managing conservator is an original petition under Chapter 153 of the Texas Family Code. Haley argues she has standing to file suit under section 102.003(a)(9). *See* TEX. FAM.CODE ANN. § 102.003(a)(9). At the request of the trial court, the parties briefed the issue of whether Haley had standing to maintain an original SAPCR action and presented supporting affidavits to the trial court. The trial court conducted a hearing at which it initially stated

that there were outstanding fact issues with regard to the allegations of whether the parent was unfit.[1] However, after consideration of trial counsel's arguments and the parties' affidavits, the trial court dismissed Haley's SAPCR petition for lack of standing. The trial court made written findings of fact and conclusions of law, as follows:

1. There is no evidence that, during the relevant time period, the parent Ms. Smith totally abdicated her parental responsibilities over the children to the non parent Ms. Haley.

2. There is no evidence that, during the relevant time period, the parent Ms. Smith did not exercise some care for, some control over or some supervision over the children at the same time that the non parent Ms. Haley exercised some care for, some control over and some supervision over the children.

3. There is no evidence that, during the relevant time period, the non parent Ms. Haley exercised exclusive care for, control over and supervision over the children to the exclusion of the parent Ms. Smith.

4. A parent must totally abdicate their parental responsibilities to another person during the relevant time period before that other person can acquire standing to file an original SAPCR with respect to that parent's child.

5. A parent's allowing of a non parent to have some care for, some control over and some supervision over the parent's child during the relevant time period is insufficient for the non parent to acquire standing to file an original SAPCR with respect to that child.

6. If a parent, to any extent whatsoever, retains or exercises any care for, any control over or any supervision over their child during the relevant time period, then a non-parent cannot as a matter of law acquire standing to file an original SAPCR with respect to that child.

7. During the relevant time period, a non-parent must exercise exclusive care for, control over and supervision over a child (not necessarily continuous for the entire time period, but during the relevant time period) to the exclusion of the child's parent in order to acquire standing to file an original SAPCR with respect to that child.

On appeal, Haley argues that the trial court's conclusions of law are erroneous. She states she "does not necessarily disagree with the factual findings," but "the factual findings have no effect as applied, because they are based on the erroneous conclusions of law."

We are to consider the findings as a whole and adopt the construction that gives effect to all material findings. *See generally De Llano v. Moran,* 160 Tex. 490, 333 S.W.2d 359, 360 (1960). When the findings are "subject to more than one reasonable construction, they should be given that meaning which will support the action of the court" as expressed in the order. *Id.* We conclude the trial court determined Smith was a fit parent adequately caring for her children. *See* TEX.R. CIV. P. 299.[2] Although Haley challenges the court's conclusions of law, she does not argue on appeal that Smith does not adequately care for her children.

---

[1] Oral statements by the trial judge may not be considered as a substitute for findings of fact or conclusions of law. See In the Interest of W.E.R., 669 S.W.2d 716, 716 (Tex. 1984); Tate v. Tate*,* 55 S.W.3d 1, 7 n. 4 (Tex. App.—El Paso 2000, no pet.). Furthermore, when a trial court issues findings that conflict with an initial finding, the later findings control over the earlier findings. Jefferson County Drainage Dist. No. 6 v. Lower Neches Valley Auth.*,* 876 S.W.2d 940, 960 (Tex. App.—Beaumont 1994, writ denied).

[2] Rule 299. Omitted Findings

When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a

This Court stated as follows in *K.K.C.:*

The interest of parents in the "care, custody, and control" of their children "is perhaps the oldest of the fundamental liberty interests" recognized by the United States Supreme Court. (*Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). Furthermore, this State has long recognized that the "natural right which exists between parents and their children is one of constitutional dimensions." *See Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex. 1976); *see also Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985); *In re Pensom,* 126 S.W.3d 251, 254 (Tex. App.—San Antonio 2003, orig. proceeding).

*In re K.K.C.*, 292 S.W.3d at 792 (footnote omitted). "These parental interests are a fundamental right protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *In re Pensom,* 126 S.W.3d 251, 254 (Tex. App.—San Antonio 2003, orig. proceeding) (citing *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). "Texas statutes are intended by the Legislature to be in compliance with the Constitutions of this State and the United States." *In re K.K.C.,* 292 S.W.3d at 792 (citing TEX. GOV'T CODE ANN. § 311.021(1)(Vernon 2005)) (footnote omitted). "A court construes a statute to give effect to the Legislature's intent as expressed in the actual language used in the statute." *Id.* (citing *Osterberg v. Peca,* 12 S.W.3d 31, 38 (Tex. 2000) and *In re Pensom,* 126 S.W.3d at 255-56).

The power of a trial court to adjudicate disputes between a parent and a non-parent, and to enforce its own orders contrary to a parent's decisions concerning her children, constitutes state involvement that implicates the parent's fundamental liberty interests in the care, custody, and control of her children. *See Troxel,* 530 U.S. at 65-76, 120 S.Ct. 2054. The jurisdictional requirement of standing helps ensure that a parent's constitutional rights are not needlessly interfered with through litigation. *See generally In re Pensom,* 126 S.W.3d at 255 ("[J]urisdictional prerequisite of standing [in grandparent access context] serves to ensure that the statutory scheme is narrowly tailored so that a parent's personal affairs are not needlessly intruded upon or interrupted by the trauma of litigation by any third party seeking access."). As the United States Supreme Court explained in *Troxel,* "[S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel,* 530 U.S. at 68-69, 120 S.Ct. 2054 (citing *Reno v. Flores,* 507 U.S. 292, 304, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)).

The standing statutes should be construed in a manner consistent with the constitutional principles stated in *Troxel. See In re Pensom,* 126 S.W.3d at 255-56. In the provision at issue here, the Legislature chose the words "actual care, control and possession." TEX. FAM.CODE ANN. § 102.003(a)(9). We presume each word was used for a purpose, and give each word effect if it is reasonable and possible to do so. *Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.,* 35 S.W.3d 591, 593 (Tex. 2000). The law recognizes that a parent has the responsibility to care for her children. *See* TEX. FAM.CODE ANN. § 151.001(a)(2) (Vernon 2008). The words "actual care" must be given effect in the context of the responsibilities of the parent and the parent's liberty interests. *See generally In re K.K.C.,* 292 S.W.3d at 792-93 (meaning of "control" in section 102.003(a)(9)).

We note that section 102.003(a)(11) separately provides standing to a person with whom the child and a parent have resided for at least six months if the "parent is deceased at the time of the filing of

---

presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment....

the petition[.]" TEX. FAM.CODE ANN. § 102.003(a)(11). Presumably, a person residing with a parent and child may care for the child over the course of time, yet that person would not have standing simply by the care that would normally be exercised when residing in the same household with the parent and the child. If the same degree of care, control, and possession that would accompany living with the parent and child were sufficient to establish standing under section 102.003(a)(9), the requirement that the parent be deceased in section 102.003(a)(11) would be without effect, because standing would separately exist under section 102.003(a)(9). We should not construe section 102.003(a)(9) so broadly that section 102.003(a)(11) is rendered meaningless. *See Entergy Gulf States, Inc. v. Summers,* 282 S.W.3d 433, 441-42 (Tex. 2009) (noting that a statute should not be interpreted in a manner that renders parts of it meaningless).

The Fort Worth Court of Appeals in the case of *In re M.J.G.,* 248 S.W.3d 753, 757-59 (Tex. App.—Fort Worth 2008, no pet.), considered the "actual care" requirement in section 102.003(a)(9). In *M.J.G.,* the court held that grandparents who alleged "M.J.G. had lived with them since she was born[,] with the exception of one two-week period when she stayed with her parents in another town[,]" nevertheless lacked standing under section 102.003(a)(9). *Id.* at 757, 759. Even though M.J.G. and her brother lived with the grandparents, and the grandparents performed day-to-day caretaking duties for the children, the children's parents were also living with the children in the home, and there was no evidence that the parents did not care for the children or that the parents had abdicated their parental duties and responsibilities to the grandparents. *See id.* at 758-59. Haley argues that "the decision reached in [*M.J.G.*] incorrectly construes TEX. FAM.CODE § 102.003(a)(9)." She argues that a parent often lives with others, and that the best interest of the children should be considered.

The holding in *M.J.G.* appears to be consistent with the meaning of the language used by the Legislature, the constitutional liberty interests retained by a fit parent adequately caring for her children, and the statutory scheme for standing set forth in the Family Code. *See In re K.K.C.,* 292 S.W.3d at 793. Standing does not turn on whether a trial court agrees or disagrees with a parent's decision concerning the best interest of her children, or a parent's decision regarding who may associate with her children. Specifically, when someone other than a parent claims standing under the "actual care" requirement of section 102.003(a)(9), the court considers whether the parent is adequately caring for her children. *See* TEX. FAM.CODE. ANN. § 102.003(a)(9); *In re M.J.G.,* 248 S.W.3d at 757-59; *see also Troxel,* 530 U.S. at 68-69, 120 S.Ct. 2054 (presumption that fit parents act in the best interest of their children); *see generally In re Pensom,* 126 S.W.3d at 255 (considering limitations of intrusion into the parent-child relationship in the grandparent access context). Although Haley lived with the children, Smith also lived with her children in the home, and the record does not establish that Smith failed to adequately care for her children or that she abdicated her parental duties and responsibilities. *See In re M.J.G.,* 248 S.W.3d at 757-59; *see also In re K.K.C.,* 292 S.W.3d at 792-94.

In issue two, Haley complains about the affidavits Smith submitted to the trial court. Haley filed a motion to strike Smith's affidavits. The trial court stated generally that the court was granting proper objections and overruling improper ones. Haley did not request clarification. We presume the trial court disregarded incompetent evidence. *See Gillespie v. Gillespie,* 644 S.W.2d 449, 450 (Tex. 1982).

Haley had the burden to establish standing. *See In re Smith,* 262 S.W.3d at 465. The trial court could reasonably conclude she failed to meet her burden. We overrule issues one and two. The trial court's order is affirmed.

AFFIRMED.

# APPENDIX D

*Certificate Of Disposition*

DATE: 9/8/2014

NAME: DAVIS, JOSEPH ANDRE

DATE OF BIRTH: 3/19/1973

This certificate is issued under seal, certifying that the information contained herein is a true and correct restatement of the summary electronic data of the records filed and/or recorded in the District Clerk's Office, as it appears on this date. A criminal search was conducted from 1976 to present. Records pertaining to federal entities, other Counties', Justices of the Peace or other Municipalities' Class C misdemeanor will NOT be displayed.

**The search results are dependent on identifiers entered by the user.**

The following   1   charges were found :

| | |
|---|---|
| FILING DATE:   1/24/1991 | DEFENDANT NAME:   DAVIS, JOSEPH ANDRE |
| CASE:  910312101010 | COURT:    005 |
| OFFENSE REPORT NO.:   NOT AVAILABLE | |
| OFFENSE:     THEFT $20-$200 | LEVEL/DEGREE: Misdemeanor B |

DISPOSITION:

DEFERRED ADJUDICATION OF GUILT
4/2/1991 : PROBATION  180 DAYS
4/2/1991 : FINE $50
10/4/1991 : DEFERRED ADJUDICATION TERMINATED

The following definitions apply only if cited as a part of the disposition above.

12.44 (b) The court authorized the state to prosecute the case as a misdemeanor under Texas Penal Code section 12.44 (b)

Deferred Adjudication of guilt-the court deferred further proceedings without entering a finding of guilt and placed the defendant on community supervision.

Deferred Adjudication of guilt terminated, defendant charged, case dismissed defendant completed community supervision and a dismissal and discharge may not be deemed a conviction (felony or misdemeanor) for the purposes of disqualification disabilities imposed by law for conviction of an offense.

Witness my official hand and seal of office on    9/8/2014

Chris Daniel

**Chris Daniel**
District Clerk Harris County, Texas

# APPENDIX E

Sandra Lopez Mother
Jenn Davis is Me
Step Mother

Print All

Select a discussion: Me - Sandra ( 8323263522 )

- Me,  17/06/2013 15:33
  Hey sandra we r takn the little kids to six flags this weekend we r leavn thurs ane coming back saturday and I wanted to c if jorda

- Sandra,  17/06/2013 15:36
  She has tournaments this weekend  and every weekend until the end of July

- Me,  06/07/2013 11:05
  Hey sandra I requested a providers list for dentist I'm just waiting on it

- Sandra,  06/07/2013 14:52
  Thanks Jennifer

- Me,  10/07/2013 15:08
  Hey sandra joe said u were suppose to b going out of town in july what weekend are u going cause we r going out of town 4 my bday k

- Sandra,  10/07/2013 15:11
  The 14th to the 21st vacation. With everyone. Then with Jay the 28th through 31st in Denton. Hope that helps.

- Sandra,  10/07/2013 15:16
   I hate to ask again. But, have they sent you a list of dentist the kids could go to yet? Jordan's tooth is really bothering here.

- Sandra,  10/07/2013 15:17
   r just need to get her seen.

- Me,  10/07/2013 15:41
  Ok so they can go back to champions dental now they sent something over there verifying all 3 kids and they can go as soon as tommo

- Sandra,  10/07/2013 15:41
  Thanks

- Sandra,  10/07/2013 15:43
  Thanks, I appreciate your help.

- Me,  03/08/2013 12:58
  Sandra when does jay need this stuff by

- Sandra,  03/08/2013 13:02
  He leaves the 22nd. Just whatever y'all can help with.  Thanks

- Me,  03/08/2013 13:04
  Ok ill get on it

- Sandra,  03/08/2013 13:05
  I told Joe I will let you know when I buy stuff so we can scratch it off the list. Thanks again

- Me,  03/08/2013 13:05
  Ok just let me no cause joe will forget

- Sandra,  03/08/2013 13:06
  Ok I will text you and not him. Lol

- Me,  03/08/2013 13:09
  Ok

- Me,  03/08/2013 13:52
  I just bought the mirror blanket some tide detergent and bounce dryer sheets

- Sandra,  03/08/2013 13:53
  Damn your fast and good. Thanks

- Sandra,  03/08/2013 20:18
  Scratch off the list. Towels, bath rugs, shower caddy, laundry basket, lamps, one storage container and dry erase board.

- Me,  03/08/2013 20:22
  Ok done.

- Me,  03/08/2013 20:23
  Did u get both lamps and did u get a throw rug also or just bath rug

- Sandra,  03/08/2013 20:27
  For both lamps. And bath rugs. Black rugs

- Me,  03/08/2013 20:30
  Ok

- Me,  03/08/2013 20:30
  The blanket we got is black also its a plush one...

- Me,  03/08/2013 20:31
  What color bed sheets does he need to match his comforter

- Sandra,  03/08/2013 20:31
  Great minds think a like. Lol

- Me,  03/08/2013 20:32
  Rt.lol

- Sandra,  03/08/2013 20:33
  Grey or off white. Either would match.

- Me,  03/08/2013 20:33
  Ok

- Me,  05/08/2013 20:24
  Hey sandra u can pick her up the 16th and drop her back off the 21st and pick her back up the 24th....will that work 4 u?

- Sandra,  05/08/2013 20:33
  We leave for Denton on the 22nd. But the rest is fine.

- Me,  05/08/2013 20:58
  Ok we gotta wk that weekend so she will have to stay with granny so if u wanna take her to denton u can or she can stay either way

- Sandra,  05/08/2013 21:26
   I will probably just take her so she can say bye to jay and see the campus.

- Me,  05/08/2013 21:48
  Ok

- Me,  07/08/2013 14:32
  Hey sandra what time u coming to get jordan

- Sandra,  07/08/2013 14:33
  At 4

- Me,  07/08/2013 14:33
  Ok

- Sandra,  10/08/2013 20:43
  Hey Jenn, I got Jay a few more things. Back rest pillow, an area rug, and a can opener.

- Me,  10/08/2013 20:46
  Ok I scratched it off...I haven't had time to go again yet I will go do some more when we get back from six flags

- Sandra,  10/08/2013 20:47
  Your fine, I haven't had much time either.

- Sandra,  17/08/2013 20:33
  Hey Jenn... Went shopping for Jay again.  All bed items are bought and all towels are bought.

- Me,  17/08/2013 20:34
  Ok ill mark it off

- Sandra,  17/08/2013 20:35
  Thanks

- Me,  22/09/2013 13:45
  Be there in 5 minutes

- Me,  04/10/2013 17:02
  Hey sandra can u bring jordan over when she gets done with practice

- Sandra,  04/10/2013 17:07
  I won't be able to because I'm not the one taking her to practice. I will be at Joeys game in Humble.

- Sandra,  01/11/2013 21:03
  Thanks Jenn. She said she had fun.

- Me,  01/11/2013 21:04
  No prob....I wanted to take more but I couldn't get her to smile...glad she had fun...

- Me,  01/11/2013 21:05
  Oh and btw I'm sending all that candy hm...

- Sandra,  01/11/2013 21:06
  Okay... Don't y'all wanna keep it. Lol... Imagine the kids and all that sugar.  The boys use to bounce off the walls.

- Me,  01/11/2013 21:08
  We got plenty they got 2 bags full...they will b doin plenty of bouncing...lol...poor jake got tired so jordan and josh continued c

- Me,  01/11/2013 21:08
  Got 1 more pic for u

- Sandra,  01/11/2013 21:09
  Poor thing.

- Me,  01/11/2013 21:11

Yep...I sent it to jay and joey also

- Sandra,  01/11/2013 21:12
I'm sure they will like it.

- Me,  15/11/2013 18:59
I'm here

- Me,  17/11/2013 15:34
Hey sandra I'm gettn off wrk now and I can have jordan hm around 430 is that ok

- Sandra,  17/11/2013 15:36
That's fine, I'm home already. Thanks

- Me,  27/11/2013 21:10
Jay told me he wanted a 3ds so I just bought him one for xmas....

- Me,  27/11/2013 21:10
Him and josh want same thing so I just got 2

- Sandra,  27/11/2013 21:15
Okay. He told me the same thing. How ironic him Josh wanted the same thing. lol

- Me,  27/11/2013 21:17
And the same damn game....I'm havn a hard time finding it tho....josh couldn't wait for jay to get here so they could talk pokemon.

- Sandra,  27/11/2013 21:21
How stinking funny. Two peas in a pod.

- Me,  27/11/2013 21:22
And jake and Joey r the same way

- Sandra,  27/11/2013 21:23
Yup....

- Me,  28/11/2013 22:41
Hey sandra what size pants does jordan wear

- Sandra,  28/11/2013 22:43
I think a 16

- Me,  28/11/2013 22:43
Ok thx

- Sandra,  28/11/2013 22:44
No problem

- Me,  20/12/2013 17:35
I left my phone in car and I know I don't suppose to have her till December 28 ...do I still pick her up today

- Me,  22/12/2013 17:51
Hey Sandra jordan left her phone and ds here

- Sandra,  22/12/2013 17:52
Can you just put it up for her. She'll get them Tuesday.

- Me,  22/12/2013 17:53
Sure can

- Sandra,  22/12/2013 17:54
Thanks

- Me,  03/01/2014 14:43
Im here

- Sandra,  03/01/2014 14:46
Ok they are coming

- Me,  03/01/2014 14:46
Ok no hurry

- Me,  04/01/2014 16:41
Thx for the tea

- Sandra,  04/01/2014 16:43
No problem

- Me,  17/01/2014 19:02
Hey Sandra the new dental insurance is MetLife and its suppose to be way better. The group id 27747 and the number is 1-888-825-3368

- Me,  19/01/2014 20:45
Hey sandra joey asked if my mom could get him 2 tickets to the rodeo for him and his date and I wanted to c if it needed to b on th
)

- Sandra,  19/01/2014 20:49

Either is fine

- Me,  19/01/2014 20:54
Ok....cause a couple of ones he gave me were during the week...as soon as I find out which night she gets Ill let u no.

- Sandra,  19/01/2014 20:55
Ok thanks

- Me,  31/01/2014 09:22
Hey sandra we left Jordan backpack on porch cause she said she needs more clothes

- Sandra,  31/01/2014 09:25
Thanks

- Me,  27/02/2014 09:52
Hey sandra I am tryin to get everything together for the usher concert next Friday the 7th is all the kids gonna b able to go?

- Sandra,  27/02/2014 09:54
I'm sorry we are going to get Jay that day and were spending the night there.

- Me,  27/02/2014 09:55
Is jordan and joey going with u

- Sandra,  27/02/2014 09:56
Jordan is for sure. I'm not sure about Joey because of Track

- Me,  02/03/2014 15:05
Im out front can u come out

- Sandra,  03/03/2014 11:00
Thank you so much for making the dirty rice. It was very hard keeping Jordan and Joey out of it.  Also, do you know what days in Ap

- Sandra,  03/03/2014 11:00
 the trip? I have to let her coach know.

- Me,  03/03/2014 13:17
You are welcome and we will be gone April 18-21

- Sandra,  03/03/2014 13:19
 Thanks! Anything over Spring Break? Her Coach is trying to see who is going to be in town and when.

- Me,  03/03/2014 13:22
Let me chk on spring break...

- Sandra,  03/03/2014 13:23
Ok thank you

- Me,  03/03/2014 13:23
Can I pick them up around 515 on friday for the rodeo

- Sandra,  03/03/2014 13:24
Yes

- Me,  03/03/2014 13:24
Ok we r gonna leave straight from your house to the rodeo

- Sandra,  03/03/2014 13:27
Ok

- Me,  03/03/2014 14:37
Mar 9-12 is when we gonna do something

- Sandra,  03/03/2014 14:53
Thanks

- Me,  03/03/2014 14:54
No prob

- Sandra,  03/03/2014 14:54
Will y'all be out of town those 4 days are here.

- Me,  03/03/2014 14:55
Out of town

- Sandra,  03/03/2014 14:56
Ok

- Me,  08/03/2014 12:30
Hey sandra joey really wants to go to the rodeo to see easton corbin but with leslie movn out it hurt us rt now...is there anyway u

- Sandra,  08/03/2014 12:33
No problem, I can bring you the money  later today.

- Me,  08/03/2014 12:34
Ok.thx...I no he really wanted them....he even asked my mom...lol...

- Sandra,  08/03/2014 12:36
Thank you. That's joeys favorite

- Me,  08/03/2014 12:37
Well glad we could all come together and make it happen for him....and he loves where the seats are...

- Sandra,  08/03/2014 12:40
Good, he is so excited. He said he is staying the night with y'all tonight. So I will send him with the money and clothes for Jorda

- Me,  08/03/2014 12:41
Ok

- Me,  08/03/2014 20:32
Hey sandra u dnt have to come tonight u can come tommorrow if u want

- Me,  12/03/2014 21:54
Hey sandra I had joe days wrong. He is off friday

- Sandra,  12/03/2014 23:12
Okay I will tell Jay

- Me,  13/03/2014 11:03
Good morning. Is there anyway that anyone of the kids could spend the night tonight and joe could bring them hm early n the morn. I

- Sandra,  13/03/2014 12:52
Jay will do it since he was going to spend time with joe anyway.

- Me,  13/03/2014 14:27
Uncle dana is coming later so jay can wait till morn...thx tho

- Sandra,  13/03/2014 14:28
Are you sure?

- Me,  18/03/2014 19:12
Im sending jordan some dirty rice and ribs

- Sandra,  18/03/2014 21:31
Thank you. She is eating now.

- Me,  18/03/2014 21:40
Sure no problem I new she liked it.

- Me,  20/03/2014 12:38
Hey Sandra I got joeys tix. He said he was gonna come by later and get them will jordan be with him? Just seeing who all I need to

- Sandra,  20/03/2014 14:05
Jordan can come with him.

- Me,  20/03/2014 14:10
Ok

- Me,  05/04/2014 16:21
Hey sandra would jordan be able to leave school early on Thursday when we are goin out of town around 215 if not no problem just tr

- Sandra,  05/04/2014 16:25
That's fine.

- Me,  05/04/2014 16:29
Ok thanks.

- Me,  10/04/2014 18:08
Hey sandra do u have a gallon size baggy u could send with jordan.

- Sandra,  10/04/2014 18:12
Just one?

- Me,  10/04/2014 18:14
Yes Jake has a field trip tommorrow and has to put his lunch n a baggie and I didnt no I was out and he has a program now and dnt w

- Sandra,  10/04/2014 18:15
No problem

- Me,  10/04/2014 18:19
Thanks a bunch

- Me,  15/04/2014 16:01
Hey sandra jordan said she has a bathing suit and plenty of shorts just wanna make sure? She said they were Dom long shorts

- Sandra,  15/04/2014 16:09
I think she does.

- Me,  15/04/2014 16:10
Ok if not just let me no wanna make sure she has everything

- Sandra,  15/04/2014 16:19
I will have her try stuff on when she gets home.

- Me,  15/04/2014 16:29
  Ok thx

- Me,  16/04/2014 16:09
  Hey sandra the new dental insurance is metlife group id 191112 and ph number is 888-825-3368

- Me,  16/04/2014 18:50
  Sandra can u make sure Jordan's 3ds is charged also

- Sandra,  16/04/2014 18:52
  Not sure where it is.

- Me,  16/04/2014 18:54
  Oh ok she told me she was gonna bring it thats y I asked. Can joe pick her suitcase up on his way hm n the morn

- Sandra,  16/04/2014 18:55
  I will look for it. What time? I need to make sure someone is here

- Me,  16/04/2014 18:56
  Prbly 730-8 will that work?

- Sandra,  16/04/2014 18:57
  Yes

- Me,  16/04/2014 18:57
  Ok thx

- Sandra,  16/04/2014 18:57
  What time is Joe picking her up from school?

- Me,  16/04/2014 19:02
  Let me see exactly what time the flt leaves and I will tell u.

- Me,  16/04/2014 19:45
  Is 1 o'clock ok

- Sandra,  16/04/2014 19:46
  Ok

- Sandra,  16/04/2014 21:59
  Sorry to bother you so late. Is Jordan's phone charger there. Haven't seen it since the last time she spent the weekend there.

- Me,  16/04/2014 22:01
  Idk I will look but idk what it looks like if not dnt worry I will buy her another one

- Sandra,  16/04/2014 22:02
   It has an iPhone end and it's black or dark grey.

- Me,  16/04/2014 22:03
  Let me look hold on

- Sandra,  16/04/2014 22:03
  Ok

- Sandra,  16/04/2014 22:09
  Looks like it

- Sandra,  16/04/2014 22:09
  Thanks for checking

- Me,  16/04/2014 22:10
  Ok I put it n my purse

- Me,  16/04/2014 22:10
  No problem

- Sandra,  16/04/2014 22:11
  Thanks again. I found the DS too. Looks like she is ready.

- Me,  16/04/2014 22:12
  Ok. Josh got a bunch of new games for his bday and she wanted to play some

- Sandra,  16/04/2014 22:14
  Ok good. Y'all have fun.

- Me,  24/04/2014 16:43
  Joe doesn't have his ph but he is on the way to get Jordan

- Sandra,  24/04/2014 16:44
  Ok

- Me,  07/05/2014 14:29
  What time should I get jordan tonight?

Joe

- Sandra,  07/05/2014 14:55
   Not sure, in the hospital

- Me,  07/05/2014 14:57
   Ok let me know

- Sandra,  07/05/2014 14:58
   I'm in the hospital for not be able to breath. Northwest

- Me,  07/05/2014 15:23
   Sorry to hear that hope you get better soon. Im available on Friday also if she can come for a little

- Sandra,  07/05/2014 16:57
   They are admitting me to ICU

- Me,  07/05/2014 17:00
   Call me on Jennifer phone. ... im sorry. To hear that

- Sandra,  07/05/2014 17:01
   I can't . That have strong oxygen on me. What's up

- Me,  07/05/2014 17:04
   Just to talk in person more personable.

- Sandra,  07/05/2014 17:19
   Can we talk later

- Me,  07/05/2014 17:20
   I was just wanting to talk about how you are doing

- Sandra,  07/05/2014 17:21
   Ok

Print All

Select a discussion: Me - Sandra ( 8323263522 )

Sanda Lopez and Joe Davis

Text  unchanged
Me on Text is Joe Davis

- Sandra,  11/01/2014 20:21
  Haven't left yet. Jay wanted to come say bye too

- Me,  11/01/2014 20:22
  Ok

- Me,  15/01/2014 17:35
  Call me...I work Thursday and Saturday ...off Friday and Sunday.

- Me,  17/01/2014 16:01
  What's a good time. is Joey driving later?

- Sandra,  17/01/2014 16:50
  Not sure about Joey. Since he has to be at school early.

- Me,  17/01/2014 16:52
  Can't do what ever he need  from here?

- Me,  17/01/2014 16:52
  I took off tomorrow to be here

- Sandra,  17/01/2014 16:53
  You knew already he had practice. I told you

- Me,  17/01/2014 16:55
  Did not think that would stop him from coming.  I don't live that far to make much of a difference.

- Sandra,  17/01/2014 16:56
  I haven't spoke with him so I don't know

- Me,  17/01/2014 16:58
  I'm close...I did not think it would make that much of a difference.

- Sandra,  17/01/2014 16:59
  I will have him call u when he gets home.

- Sandra,  17/01/2014 17:00
  What time on Jordan?

- Me,  17/01/2014 17:05
  I'm ready....I didn't know joey wasn't coming I assumed  he was coming time is important i though what ever he needs to do he can do it

- Sandra,  17/01/2014 17:07
  I'm not saying he's not coming I'm just not sure he's staying the night

- Sandra,  17/01/2014 17:09
  You need to talk to him but he's at school til 7:30

- Me,  17/01/2014 17:11
  This is not  the way things r suppose to be. I expected some time im off this weekend.

- Me,  17/01/2014 17:13
  I don't want to just pay I want more and im just trying to get the time that belongs to me. I have a extra vehicle if that's a problem.

- Sandra,  17/01/2014 17:13
  I'm not saying your not getting time but what is he suppose to do about practice? This is the last two weeks of this. There's tonight an

- Sandra,  17/01/2014 17:14
  g and Sunday

- Sandra,  17/01/2014 17:15
  Your taking this out of content. Not arguing with you. Damn your still going to get time.

- Me,  17/01/2014 17:15
  Same thing he would do from your house. ...no difference if there is let me know.

- Me,  17/01/2014 17:16
  Im on my way got a minute?

- Sandra,  17/01/2014 17:17
  Ok

- Me,  17/01/2014 17:37
  Here

- Sandra,  17/01/2014 17:39
  Give us a few minutes

- Me,  17/01/2014 19:46
  Joey there

- Sandra,  30/01/2014 10:26
  R u getting Jordan tonight

- Me,  30/01/2014 10:26
  Yes

- Sandra,  30/01/2014 10:51
  Don't forget Joey has that play tonight. Tomorrow and Saturday

- Me,  30/01/2014 10:52
  Ok

- Sandra,  30/01/2014 10:52
  When do you want to pick up Jordan

- Me,  30/01/2014 11:07
  Wanted to see if I just keep her tonight I work on Saturday.

- Sandra,  30/01/2014 13:02
  Ok

- Sandra,  30/01/2014 13:03
  But I have to wash her uniform pants for school.

- Me,  30/01/2014 13:04
  I will ...I have a washer and dryer.

- Sandra,  30/01/2014 13:05
  That's fine

- Me,  30/01/2014 13:07
  Just let me know what time

- Sandra,  30/01/2014 13:08
  5 or so. Do you lunch for her too?

- Me,  30/01/2014 13:08
  Yes

- Sandra,  30/01/2014 13:09
  Okay... Will 5 work?

- Me,  30/01/2014 13:11
  Thats good ill be there.

- Sandra,  30/01/2014 13:12
  Ok

- Me,  30/01/2014 16:56
  Here

- Sandra,  30/01/2014 17:00
  Ok

- Me,  30/01/2014 20:13
  Hey sandra do u have the money to get us 3 adult and 3 kids tix to the play tommorrow night and I can give it to u tomorrow

- Sandra,  31/01/2014 16:23
  What time

- Me,  31/01/2014 16:24
  I'm ready

- Sandra,  31/01/2014 16:25
  5 ?

- Me,  31/01/2014 16:25

Ok

- Me,  31/01/2014 16:57
  Here

- Me,  31/01/2014 19:08
  Here

- Sandra,  31/01/2014 19:09
  Where

- Sandra,  31/01/2014 19:10
  At Spring?

- Me,  31/01/2014 19:10
  Yea

- Sandra,  31/01/2014 19:11

Ok. Let me know how it goes

- Me,  31/01/2014 19:11
  Ok.

- Me,  05/02/2014 18:45
  What are the kid doing on Saturday.  Wanted to see they had some free time...I work till 6 tomorrow and josh has something at school tom

- Sandra,  05/02/2014 18:49
  We will be in San Marcus this weekend. Im sorry

- Me,  05/02/2014 18:50
  Ok...thanks

- Me,  10/02/2014 13:37
  Have kids call me later... and I'm off the whole weekend.  So I'm looking foward to it .

- Sandra,  10/02/2014 13:40
  Can I call you in a few?

- Me,  10/02/2014 13:40
  Ok

- Me,  11/02/2014 17:45
  Have kids call... i need to talk to Joey about those tickets. .. need to find out tonight.

- Sandra,  11/02/2014 18:03
  I'm not home will have him call

- Me,  13/02/2014 16:10
  Joey said he was coming tonight will wait on him and Jordan to come.

- Sandra,  13/02/2014 16:15
  Did he say what time?

- Me,  13/02/2014 16:15
  No

- Sandra,  13/02/2014 16:17
  Oh okay. This child does not tell me anything. Didn't know he had track after school.

- Me,  13/02/2014 16:20
  He didn't tell me either that he had practice after school

- Sandra,  13/02/2014 16:22
  Oh I thought he did

- Me,  13/02/2014 17:15
  Hey let's reschedule I feel like complete s*** right now. They probably won't get here till after 7

- Sandra,  13/02/2014 18:07
  Are you sure?

- Me,  13/02/2014 18:10
  Yes got bad heartburn and gonna hop in bed soon.

- Sandra,  13/02/2014 18:11
  Ok hope u feel better

- Me,  22/02/2014 17:30
  Call me

- Me,  22/02/2014 18:21
  I guess call me when you get free I'm off next weekend.

- Me,  22/02/2014 19:29
  Have Joey call me

- Sandra,  22/02/2014 19:33
  Ok

- Me,  25/02/2014 12:36
  Hey just want to know if Jordan was free tomorrow night could I pick her up and bring her back home because I have to work Thursday.

- Sandra,  25/02/2014 13:10
  She has practice from 8 to 9:30 tomorrow

- Me,  25/02/2014 13:11
  Ok I can do 5 to 7:30

- Me,  25/02/2014 13:12
   And off Friday Saturday and Sunday.

- Sandra,  25/02/2014 13:12
  Ok

- Me,  25/02/2014 13:13
  We need a schedule.

- Sandra,  25/02/2014 13:15
  She has practice Fri. 6:30 to 8:30 and game Saturday     She has to be there at 9:45 , game at 10:30. Might have Sun. Practice at 4:30.

- Sandra,  25/02/2014 13:15
  is weekend in San Antonio.

- Sandra,  25/02/2014 13:15
  I've printed their schedules for you.

- Me,  25/02/2014 13:21
  Its no give and take here.. its a bunch of dates that s not being made up. In order for this to work if loose time it has made up somewh

- Me,  25/02/2014 13:24
  My schedule. . Has to work with what they're doing. My schedule has to be taken into consideration.  Because if it stays this way we are

- Sandra,  25/02/2014 13:25
  I warned you about select. You said okay. Not only that you said you would get her where she needs to be. I'm giving you tomorrow. And S

- Sandra,  25/02/2014 13:26
  aybe. I think the coach said every other Sun.. Plus you weren't worried about your last Thursday when you were out of town. Remember you

- Me,  25/02/2014 13:29
  Correct. . I agreed to a plan that allowed me to spend time with her also. So this is 1 of 2 parts ,so what is the rest of the plan.

- Me,  25/02/2014 13:32
  So is she playing for 1 or 2 teams? I thought it was for the 1 in the woodlands.

- Sandra,  25/02/2014 13:32
  Not only that you gave up your weekend because you were supposedly sick. But, yet your daughter see you on face at Jared shopping for a

- Sandra,  25/02/2014 13:32
  n event the next day. Really?

- Me,  25/02/2014 13:33
  One day

- Sandra,  25/02/2014 13:33
  Will explain that later.

- Me,  25/02/2014 13:46
  Ok... I'm. Not fighting with you.  I need  a schedule That work with mine. Joey can do what he wants to. You also told me they were comi

- Sandra,  25/02/2014 13:50
  I'm not fighting with you either and we do u do this when I'm at work. I never bother u at work.

- Me,  25/02/2014 13:51
  This is not working.  We fixed the money your part now I need to fix mine.. sorry I won't bother you again I thought you could text.

- Sandra,  25/02/2014 13:53
  We will talk later.  But, one thing. You never said trade weekends. See your boys activities come before Jordan's and that's not right e

- Sandra,  25/02/2014 13:53
  u later.

- Me,  25/02/2014 14:02
  Really. .. we have nothing else to say don't bother calling.

- Sandra,  25/02/2014 14:17
  Look you keep talking to me like I'm a child and I'm not. talk to me like I'm an adult. Maybe then we could agree on stuff. And I have n

- Sandra,  25/02/2014 14:18
  from seeing her. And I've given up my weekends several times just to make sure you get time. But, yet I'm not trying to work with you. I

- Sandra,  25/02/2014 14:18
  is evening. And explain her schedule.

- Me,  25/02/2014 14:29
  I won't ask you for any favors anymore. I know what time is mine and what not there is a simple way to do things.

- Sandra,  25/02/2014 14:31
  Hard to explain on text will call u. We can figure this out.

- Me,  26/02/2014 14:19
  What time r they coming?

- Sandra,  26/02/2014 14:47
  When Joey gets home. I thinking they are going to cancel practice.

- Me,  26/02/2014 15:00
  Ok

- Me,  27/02/2014 10:00

 Not trying to fight but We already spent over 200 dollars on tickets and I made sure before we did they were free. So it is a must that

- Sandra,  27/02/2014 10:02

Tony trying to fight either. You never asked me if they were free on that day.

- Sandra,  27/02/2014 10:04

Wow.... Stupid auto correct. It's suppose to be not instead of tony

- Me,  27/02/2014 10:09

 I explained it and I also told you Joey wanted tickets for a school night ...
you also explained to me that you don't want to lose money after putting Jordan in 2 sports this issame thing. ..what should I expect beca

- Sandra,  27/02/2014 10:11

 I will see what I can do not promising anything yet. Will let you know tonight. And as for Joey you said school night. Friday is not a s

- Me,  27/02/2014 10:19

 Jennifer also remember me talking to you she wanted to make sure before she spent the money.  Joey said he was free and told me again l

- Me,  27/02/2014 10:23

 I forgot thats Spring break right?

- Sandra,  27/02/2014 10:25

 Can I call you in a few.

- Me,  27/02/2014 10:25

 Yes

- Sandra,  01/03/2014 11:17

 Let your daughter see you. Cause she is mad right now

- Sandra,  03/03/2014 11:57

 Jordan's coach needs the dates Jordan will be on y'all's trip in April. And needs to know if she will be here all week during Spring Bre

- Sandra,  03/03/2014 11:57

 know ASAP

- Me,  07/03/2014 08:38

 Sorry I missed your call .... I feel  asleep early last night.

- Me,  20/03/2014 17:12

 Almost there.

- Me,  27/03/2014 17:53

 Just checking in and seeing what schedule is for weekend I work sat but off Friday and Sunday.  I'm at work today.

- Me,  09/04/2014 16:18

  We still on for this weekend with Jordan.  Remember we switched

- Sandra,  11/04/2014 17:00

 When do u want Jordan back?

- Me,  24/04/2014 10:36

 What time should I pick Jordan up tonight?

- Me,  24/04/2014 20:20

 Any problems. .. you have go thru me....and what they told me was use my firefighters discount not yours then talk about discount not me
You know I will just take my time. . Cause you have my money. Fine I won't ask you for any favors and you don't ask me for any.

P.s im not trying to be a dick
You got what you wanted now its time for me to get what I want because guess what this is not working... as long as im paying my part im d

- Sandra,  24/04/2014 20:23

 We will talk later wasn't trying to fight with you.

- Me,  24/04/2014 20:27

 Im at a loss and im not losing any more.  Im not fighting I should be there with our daughter and in comfort and I put money into it als

- Me,  24/04/2014 20:29

 Time sorry not money

- Sandra,  24/04/2014 20:31

 r plans. Not trying to keep you out of the loop.

- Sandra,  24/04/2014 20:31

 Remember not Jordan's fault

- Sandra,  24/04/2014 20:31

 My dad has paid for all of this. Not me. Again don't want to fight. I have her tournament schedule now. We need to meet up and go over t

- Sandra,  24/04/2014 20:32

She see serves her dad time like you deserve your daughter time.

- Sandra, 24/04/2014 20:32
Opps deserves

- Me, 27/04/2014 12:07
Have Jordan call me later
After her. Practice. ..im also off Thursday. ... and this weekend.

- Me, 27/04/2014 14:46
Is Jordan available?

- Sandra, 27/04/2014 14:47
She not at practice she's at tournament

- Me, 27/04/2014 14:48
Ok ...have her call when over.

- Me, 28/04/2014 18:29
Im home missed ur call  what's
Up

- Me, 30/04/2014 08:36
If Jordan don't have anything on Thursday I'll see if I can keep her on Thursday night.

- Sandra, 30/04/2014 19:12
That's fine

- Me, 01/05/2014 14:39
Thanks ....What  Time?

- Sandra, 01/05/2014 16:15
Not sure, she Has a group project she's working on.

- Me, 01/05/2014 16:16
????

- Me, 01/05/2014 16:17
Details... don't understand

- Sandra, 01/05/2014 16:20
Honestly not sure what time. Will let you know when she gets home.  Her and Savannah have been working on a group project

- Me, 01/05/2014 16:51
Not sure if you called phone died.

- Sandra, 01/05/2014 16:56
30 mins. She needs to finish project at your house.

- Me, 01/05/2014 17:02
Ok

- Me, 02/05/2014 07:17
A little upset with Joey after yesterday....i tried to be fair about our time and work out a plan that he give me one night and that has

- Me, 02/05/2014 07:47

I hate to use our court order but I'm left without a choice.
I thought I was being fair....when was the last time Joey came as he was supposed to?

- Me, 04/05/2014 12:05
Next time ....touch base with me.  I have no idea what happened when I checked on Jordan all I knew is that she already left . All we di

P.s I never received her schedule


- Me, 04/05/2014 12:41
Fine...don't communicate...I don't know how you see this working but ok.
I work Thursday can I have her on Wednesday.

- Me, 09/05/2014 12:53
How r you doing?

- Sandra, 09/05/2014 12:56
Can not believe I have pnuenmonia and congestive heart failure. I will here for a good while

- Me, 09/05/2014 12:57
Im sorry to hear that...what room r you in.

- Sandra, 09/05/2014 13:00
Not even sure I just know ICU

- Me, 09/05/2014 13:01
What r the visitation schedule.

- Me, 09/05/2014 13:03

Is

- Sandra,  09/05/2014 13:05
    Not sure of that either. Call Joey he knows

- Me,  09/05/2014 13:05
    Ok

- Me,  09/05/2014 17:29
   Hope you get better soon. Can't stand to see you in there.
We need you so please get better soon.

- Me,  10/05/2014 12:11
    So ...how r you doing today?

- Sandra,  10/05/2014 12:31
    A little better. Now where close to braking out

- Me,  10/05/2014 12:36
    Well im glad that your feeling better  it was hard seeing you there... we have been apart off each other life for more than half of our
So im good now that ur getting better.



- Sandra,  10/05/2014 16:03
    Thanks... I will be in iICU awhile

- Me,  10/05/2014 16:06
    Well...let me know how I can help. Im off Monday and Tuesday. ..

- Sandra,  10/05/2014 16:08
    I will, thanks

- Sandra,  10/05/2014 16:48
    S

- Sandra,  10/05/2014 16:49
    This shit is scary and real

- Me,  10/05/2014 16:53
    I know....I wanted to stay the other day. I think when everything is said and done you will be better than you have been.
I'll come and sit with you some days.
I know its been awhile since we have really talked but you are still my best friend.

- Sandra,  10/05/2014 17:12
    That would. Be nice

- Me,  10/05/2014 17:12
    Ok

- Me,  11/05/2014 09:32
    Happy mother s day... Hope you have a good day.

- Me,  11/05/2014 12:40
    How r u doing today?

- Sandra,  11/05/2014 15:26
    I'm okay no change

- Me,  11/05/2014 15:28
    Ok...stop by for a little after work. ..How's Jay holding up

- Sandra,  11/05/2014 15:29
    He's good... I think it is scaring them all pretty good.

- Me,  11/05/2014 15:30
    All of us....

- Sandra,  11/05/2014 15:32
    And yea. Especially thinking I could of died

- Me,  11/05/2014 15:35
    No good. ..enough of that talk you should be home enjoying your day.not this


P.s.
With our occasional fight

- Sandra,  11/05/2014 15:36
    Lol...

- Me,  11/05/2014 15:39
    Yeah. ..to bad cause hooters is free for mother's day and I know how y'all like wings.

- Sandra,  11/05/2014 15:40

Lol.... Have you spoke to your mom?

- Me,  11/05/2014 15:41
Not yet... still thinking about it.

- Sandra,  11/05/2014 15:43
You should . Even if it's just for that reason.

- Me,  11/05/2014 15:46

Working up to it..maybe later

- Sandra,  11/05/2014 15:47
Got you maybe the boys could call and break the ice

- Me,  11/05/2014 15:48
She will like that.

- Sandra,  11/05/2014 15:50
Can you send me the number so I can have our boys call?

- Me,  11/05/2014 15:52
(832) 468-1464

- Sandra,  11/05/2014 16:43
They called

- Me,  11/05/2014 16:44
Ok

- Me,  12/05/2014 10:00
On my way...do you want anything

- Me,  14/05/2014 10:26
Just checking in...how are you doing today?
Im at work and hate that I here today. ..so please when ever you can send me a text back.

# APPENDIX F

10/7/2014 11:42:04 AM
Chris Daniel - District Clerk Harris County
Envelope No. 2743873
By: Anais Aguirre
Filed: 10/7/2014 9:58:17 AM

NO. _____

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| J.A.D. AND J.A.D. | § | ____ JUDICIAL DISTRICT |
| | § | |
| CHILDREN | § | HARRIS COUNTY, TEXAS |

## ORIGINAL PETITION IN SUIT AFFECTING THE PARENT-CHILD RELATIONSHIP

1.  *Discovery Level*

Discovery in this case is intended to be conducted under level 2 of rule 190 of the Texas Rules of Civil Procedure.

2.  *Parties*

This suit is brought by FLOYD DANIEL LOPEZ and IRMA OLGA JIMENEZ, Petitioners. The last three numbers of FLOYD DANIEL LOPEZ's driver's license number are 885. The last three numbers of FLOYD DANIEL LOPEZ's Social Security number are 906. The last three numbers of IRMA OLGA JIMENEZ's driver's license number are 363. The last three numbers of IRMA OLGA JIMENEZ's Social Security number are 498.

Respondent is JOSEPH ANDRE DAVIS.

Petitioners are the maternal grandparents of the children the subject of this suit.

Petitioners have standing to bring this suit in that neither parent had their parental rights terminated; both petitioners are the biological maternal grandparents of the children in question and have executed affidavits on knowledge and belief which contain supporting facts that denial of their possession or access to the children would significantly impair the children's physical health or emotional well-being. Further, the maternal grandparents are the parents of the children's mother who died in May of this year.

Original Petition In Suit Affecting The Parent Child Relationship          Page 1

Certified Document Number: 62660436 - Page 1 of 5

3. *Jurisdiction*

No court has continuing jurisdiction of this suit or of the children the subject of this suit.

4. *Children*

The following children are the subject of this suit:

Name: J███████████IS II

Sex: M

Birth date: 10/30/1995

County of Residence: Harris

Name: J██████████████IS

Sex: F

Birth date: 07/26/2002

County of Residence: Harris

5. *Person Entitled to Citation*

The father of the children the subject of this suit is JOSEPH ANDRE DAVIS.

Process should be served at 3323 Rose Trace Dr., Spring, Texas 77386.

There are court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the children the subject of this suit.

Information required by section 152.209 of the Texas Family Code will be provided in an affidavit attached as Exhibit A.

6. *Health Insurance Information*

Information required by section 154.181(b) of the Texas Family Code is provided in the statement attached as Exhibit B.

7. *Property*

No property of consequence is owned or possessed by the children the subject of this suit.

8.   *Conservatorship*

The mother of the children and prior managing conservator with the right to determine the residence of the children has died. The appointment of the father as sole managing conservator would not be in the best interest of the children. It is in the best interest of the children that Petitioners and JOSEPH ANDRE DAVIS be appointed joint managing conservators of the children.

Petitioners should be designated as the conservators who have the exclusive right to designate the primary residence of the children. The residence of the children should be restricted to the existing school district of the children in Harris County.

Petitioner requests the Court to appoint a parenting facilitator. There is good cause for appointment of a parenting facilitator in this is a high conflict case and the appointment would be in the best interest of the children.

9.   Petitioners' Supporting Affidavits:

Petitioner Jimenez affidavit is attached as Exhibit C

Petitioner Lopez affidavits are attached as Exhibits D and Exhibit E

10.   *Support*

JOSEPH ANDRE DAVIS, Respondent, is obligated to support the children and should be ordered by the Court to make payments for the support of the children and to provide medical child support in the manner specified by the Court.

JO██████████████ II, a child the subject of this suit, is enrolled under chapter 25 of the Texas Education Code in an accredited secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements of subchapter

Certified Document Number: 62660436 - Page 3 of 5

C of chapter 25 of the Education Code. The Court is requested to order that payments for the support of this child be continued until the end of the month in which the child graduates from high school.

11.   *Request for Temporary Restraining Order*

Petitioner requests the Court to dispense with the necessity of a bond, and Petitioner requests that Respondent be temporarily restrained immediately, without hearing, and after notice and hearing be temporarily enjoined, pending the further order of this Court, from:

Disturbing the peace of the children or of another party.

Withdrawing the children from enrollment in the school or day-care facility where the children are presently enrolled.

Hiding or secreting the children from Petitioner.

Making disparaging remarks regarding Petitioner or Petitioner's family in the presence or within the hearing of the children.

Consuming alcohol within the 12 hours before or during the period of possession of or access to the children.

Canceling, altering, failing to pay premiums, or in any manner affecting the present level of coverage of any health insurance policy insuring the children.

12.   *Request for Attorney's Fees, Expenses, Costs, and Interest*

It was necessary for Petitioner to secure the services of Norman E. Lester, Jr., a licensed attorney, to preserve and protect the children's rights. Respondent should be ordered to pay reasonable attorney's fees, expenses, and costs through trial and appeal, and a judgment should be rendered in favor of this attorney and against Respondent and be ordered paid directly to Petitioner's attorney, who may enforce the judgment in the attorney's own name. Petitioner

requests postjudgment interest as allowed by law.

*13.    Prayer*

Petitioner prays that citation and notice issue as required by law and that the Court enter its orders in accordance with the allegations contained in this petition.

Petitioner prays that the Court immediately grant a temporary restraining order restraining Respondent, in conformity with the allegations of this petition, from the acts set forth above, and Petitioner prays that, after notice and hearing, this temporary restraining order be made a temporary injunction.

Petitioner prays that, on final hearing, the Court enter a permanent injunction enjoining Respondent, in conformity with the allegations of this petition, from the acts set forth above.

Petitioner prays for attorney's fees, expenses, costs, and interest as requested above.

Petitioner prays for general relief.

Respectfully submitted,

N.E. Lester, Jr.
3730 Kirby Drive, Suite 1200
Houston, Tx 77098
Tel 713-660-6839
Fax 713-664-0395

By: **N. E. Lester, Jr.**
Norman E. Lester, Jr.
State Bar No. 12236650
HouTxLawyer@aol.com
Attorney for Petitioners

Certified Document Number: 62660436 - Page 5 of 5



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   October 8, 2014

Certified Document Number:        62660436

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**



PETITIONER'S
EXHIBIT
B

NO. _____

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| J.A.D. AND J.A.D. | § | _____ JUDICIAL DISTRICT |
| | § | |
| CHILDREN | § | HARRIS COUNTY, TEXAS |

### STATEMENT OF HEALTH INSURANCE AVAILABILITY

This statement is made by FLOYD DANIEL LOPEZ and IRMA OLGA JIMENEZ,

Petitioner, in accordance with section 154.181 of the Texas Family Code.

1. *Children*

   The following children are the subject of this suit:

Name: J███████████████

Birth date: 10/30/1995

Social Security number: xxxxxx

Name: J████████████VIS

Birth date: 07/26/2002

Social Security number: xxxxxxx

2. *Health Insurance Availability*

   Private health insurance is in effect for the children, JOSEPH ANDREW DAVIS II and

J████████████VIS.

Name of insurance company: Unknown

Policy number: Unknown

Party responsible for premium: JO███████████IS

Certified Document Number: 62660439 - Page 1 of 2

Monthly cost of premium: $ unknown

The insurance coverage is provided through a parent's employment.

Date:

LLOYD DANIEL LOPEZ

IRMA OLGA JIMENEZ

SUBSCRIBED AND SWORN BEFORE ME
THIS ____ DAY OF _____ 20___
_____
NOTARY PUBLIC

YOUNG PARK
My Commission Expires
December 19, 2015

Certified Document Number: 62660439 - Page 2 of 2



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this     October 8, 2014

Certified Document Number:        62660439

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

Certified Document Number: 62660442 - Page 1 of 2

PETITIONER'S EXHIBIT

E

NO. _____

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| J.A.D. AND J.A.D. | § | ____ JUDICIAL DISTRICT |
| | § | |
| CHILDREN | § | HARRIS COUNTY, TEXAS |

### PETITIONER'S SUPPORTING AFFIDAVIT

FLOYD DANIEL LOPEZ appeared in person before me today and stated under oath:

"My name is FLOYD DANIEL LOPEZ. I am above the age of eighteen years, and I am fully competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

"I am a Petitioner in this case.

"I am a person, along with my wife, who is seeking to be named a joint managing conservators of the children, the subject of this case, JO███████████████ II and JORDAN A██████████████ and also seeking the exclusive right to designate the primary residence of the aforementioned children. I seek the modification requested in this suit. The modification requested is in the best interest of the children. Specific facts that support the above are as follows."

"The children, ██████████████ II, JO█████████████, and their older broth███████████████ have resided with me and my wife in our residence since the summer of 2004.

"My Daughter, SANDRA LOPEZ, recently deceased, also resided with the children me and my wife, IRMA OLGA JIMENEZ, since the summer of 2004.

"My daughter, SANDRA LOPEZ, died on May 24th, 2014. We buried her on Friday, May 30th, 2014.

" My granddaughter, ████████████████████ removed from my residence right after the funeral by JOSEPH ANDREW DAVIS, who said it was his visitation weekend, and then informed us he was keeping her. He left JO████████████ II in our care.

Petitioner's Supporting Affidavit                                                           Page 1

when she was removed from her home, removed from her siblings, and forced by her father to go to his residence, the same day as her mother's funeral. She was and is still scared and distraught.

■■■ current visitation schedule is disrupting her daily school routine, causing her to leave Thursday after school and return to school on Monday, requiring her to get up four hours early before school starts. The irony is JOHN DAVIS is often not even at home.

■■■ who is 12, continues to express a strong desire to remain in her home with John Davis. She calls us multiple times during day & night begging us to come get her.

■■■ continues to cry at being forced to shuttle back and forth to the residence of

■■■ has a real fear of being removed again from the only home she has ever known, potentially having to change schools, being forced to separate again from her brothers and face the separation of friends and teammates so soon after the death of her mother. It is not right and is damaging to ■■■'S mental state and is clearly not in the child's best interest.

The death of a parent for a child is a tragedy. To remove ■■■ from her home and family right afterward the death of her mother and remove her from her entire support network of friends and family, a dangerous to ■■■ emotional development and to ■■■ safety.

SIGNED under oath before me on

FLOYD DANIEL LOPEZ 1282

Petitioner's Supporting Affidavit    Page 2

Certified Document Number: 62660441 - Page 3 of 3

Notary Public, State of Texas

SUBSCRIBED AND SWORN BEFORE ME
THIS ___ DAY OF October 2014

_____
NOTARY PUBLIC



YOUNG PARK
My Commission Expires
December 19, 2015



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this    October 8, 2014

Certified Document Number:        62660441

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**



PETITIONER'S EXHIBIT
D

NO. _____

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| J.A.D. AND J.A.D. | § | _____ JUDICIAL DISTRICT |
| | § | |
| CHILDREN | § | HARRIS COUNTY, TEXAS |

### PETITIONER'S SUPPORTING AFFIDAVIT

FLOYD DANIEL LOPEZ appeared in person before me today and stated under oath:

"My name is FLOYD DANIEL LOPEZ. I am above the age of eighteen years, and I am fully competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

"I am the Petitioner in this case.

"I have previously filed a Motion To Modify Parent Child Relationship on June 30, 2014 after the death of my daughter , SANDRA LOPEZ, who died on May 24, 2014.

"A hearing for Temporary Orders was held on August 13th, 2014 in the 254th Judicial District Court where my wife and I were appointed as temporary joint managing conservators.

"The decision of the Associate Judge was subsequently appealed and is set for rehearing on October 16th, 2014 at 9:00 AM.

"████████████████████', my granddaughter, mental state improved immediately upon being able to return to the only home she has ever known, and being reunited with her brother.

"████████ was allowed by JOHN DAVIS to read the pleadings in the previous filing and panicked that she might be forced to be removed from the only home she's ever known.

"The death of Jordan's mother was a tragedy for the family, but especially ███████████

Certified Document Number: 62260441 - Page 1 of 3

"Separating my granddaughter from her home of ten years, her brothers, and her immediate family right after her mother's funeral was selfish, not in the child's best interest, represents a significantly impairment to both her physical health and emotional development.

"My granddaughter, still coping and grieving from the loss of her mother, is distraught about being removed from her home, and calls us constantly and continually whenever she is forced to be at her father's residence asking us to intervene and bring her home.

"My grandso̶n̶ ~~████████████~~ ~~████████████~~ are upset their baby sister has been removed from their home.

"JOSEPH ANDRE DAVIS's behavior since the death of my daughter and his actions with regard to J̶ ~~████████████~~ represent a callous indifference to JO~~████~~ emotional stability and development by seeking to have her change schools, remove her from her home, family and friends, and away from her softball team and teammates.

SUBSCRIBED AND SWORN BEFORE ME
THIS 4 DAY OF October 2016

_____
NOTARY PUBLIC

SIGNED under oath before me on

[Notary seal: YOUNG PARK, My Commission Expires December 19, 2015, State of Texas]

_____
FLOYD DANIEL LOPEZ

_____
Notary Public, State of Texas

Certified Document Number: 62660442 - Page 2 of 2



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this    October 8, 2014

Certified Document Number:        62660442

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

10/7/2014 9:58:17 AM
Chris Daniel - District Clerk
Harris County
Envelope No: 2743873
By: AGUIRRE, ANAIS
Filed: 10/7/2014 9:58:17 AM

NO. _____

P.2

CASO

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| J.A.D AND J.A. D. | § | _____ JUDICIAL DISTRICT |
| | § | |
| | § | |
| CHILDREN | § | HARRIS COUNTY, TEXAS |

## NOTICE OF HEARING FOR TEMPORARY ORDERS

Notice is given to Respondent, JOSEPH ANDRE DAVIS, and Respondent is ORDERED to appear in person before this Court in the courthouse at the Civil Courthouse, 201 Caroline, Houston, Texas, on Oct. 16, 2014 at 9:00 A.m. The children the subject of this suit are JO▮▮▮▮▮▮▮▮▮▮▮▮DAVIS and JO▮▮▮▮▮▮▮▮▮▮▮▮ Petitioner is FLOYD DANIEL LOPEZ and IRMA OLGA JIMENEZ.

The purpose of the hearing is to determine whether the temporary injunction prayed for should be granted to enjoin Respondent from the following:

Disturbing the peace of the children or of another party.

Withdrawing the children from enrollment in the school or day-care facility where the children are presently enrolled.

Hiding or secreting the children from Petitioner.

Making disparaging remarks regarding Petitioner or Petitioner's family in the presence or within the hearing of the children.

Consuming alcohol within the 24 hours before or during the period of possession of or access to the children.

Canceling, altering, failing to pay premiums, or in any manner affecting the present level of coverage of any health insurance policy insuring the children.

IT IS FURTHER ORDERED that any authorized person eighteen years of age or older who is not a party to or interested in the outcome of this suit may serve any citation, notice, or process in this case.

SIGNED on _____ OCT − 8 2014 at _____. m.

_____
Associate JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

N.E.Lester, Jr.
3730 Kirby Dr., Suite 1200
Houston, Tx 77098
Tel 713-660-6839
Fax 713-664-0395

By: **Norman E. Lester, Jr.**
    Norman E. Lester, Jr.
    Attorney for Petitioner
    State Bar No. 12236650
    HouTxLawyer@aol.com

2014-58410 / Court: 309

IN THE INTEREST OF

J.A.D. AND J.A.D.

CHILDREN

NO. _____

§
§
§
§
§

IN THE DISTRICT COURT

_____ JUDICIAL DISTRICT

HARRIS COUNTY, TEXAS

**PETITIONER'S SUPPORTING AFFIDAVIT**

IRMA OLGA JIMENEZ appeared in person before me today and stated under oath:

"My name is IRMA OLGA JIMENEZ. I am above the age of eighteen years, and I am fully competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct."

"I am a Petitioner in this case."

"I am a person along with my husband who is seeking to be named a joint managing conservators of the children, the subject of this case, JOSEPH ANDRE DAVIS II and JORDAN ████ and also seeking the exclusive right to designate the primary residence of the aforementioned children. The appointment of us as joint managing conservators of the children is in the best interest of the children. Specific facts that support the above are as follows:"

"The children ████████████████ older brother JOHN DAVIS ████████████ 2014. Ten years."

"My Daughter SANDRA LOPEZ, died recently May 24th 2014. We buried her on Friday May 30th 2014 ████████████████████"

" My granddaughter J ADRIANA DAVIS, was removed from my residence right after the funeral by JOSEPH ANDREW DAVIS who ██ visitation weekend and subsequently informed us it was keeping her. He didn't discuss her emotional needs or ████████ represented his interests."

Petitioner's Supporting Affidavit

Page 1

PETITIONER'S EXHIBIT C

Certified Document Number: 62660440 - Page 2 of 2

"Separating my granddaughter from her home of ten years, her brothers, and her immediate family right after her mother's funeral was selfish, not in the child's best interest, represents a significantly impairment to both her physical health and emotional development.

"My granddaughter, still coping and grieving from the loss of her mother, is distraught about being removed from her home, and calls us constantly and continually whenever she is forced to be at her father's residence asking us to intervene and bring her home.

"My grandsons, JO████████████ and ████████████████ are upset their baby sister has been removed from their home.

"JO████████ constantly – sometimes 20 times a day – when she is forced to stay at her father's and with his family. She calls sobbing and crying. She just lost her mother and her removal from her home is damaging her emotional stability and threatens her emotional development.

"JOSEPH ANDRE DAVIS's behavior since the death of my daughter and his actions with regard to ████████████ DAVIS represent a callous indifference to JORDAN's emotional stability and physical health by seeking to have her change schools, remove her from her home, family and friends, and away from her softball team and teammates.

SUBSCRIBED AND SWORN BEFORE ME

THIS 4 DAY OF October 2016

_____
NOTARY PUBLIC

_____
IRMA OLGA JIMENEZ

SIGNED under oath before me on

YOUNG PARK
My Commission Expires
December 18, 2015

_____
Notary Public, State of Texas



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this    October 8, 2014

Certified Document Number:        62660440

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

CAUSE NO. 201458410

RECEIPT NO.                           0.00        ATY
            *********                TR # 82367674

PLAINTIFF: LOPEZ, FLOYD DANIEL                    In The   245th
    vs.                                           Judicial District Court
DEFENDANT: DAVIS, JOSEPH ANDRE                    of Harris County, Texas
                                                  245TH DISTRICT COURT
                                                  Houston, TX

                              PRECEPT

THE STATE OF TEXAS
County of Harris

TO ANY SHERIFF OR CONSTABLE OF TEXAS
Or Other Authorized Person


        YOU ARE HEREBY COMMANDED to serve,
        DAVIS, JOSEPH ANDRE



with the accompanying certified copy of ORDER SETTING HEARING and copy of
NOTICE OF HEARING FOR TEMPORARY ORDERS

        HEREIN FAIL NOT, but of this notice make due return as the law directs.

        ISSUED AND GIVEN UNDER MY HAND AND THE SEAL OF SAID COURT , at Houston, Texas, this
8th day of October, 2014.

Issued at request of:                   CHRIS DANIEL, District Clerk
LESTER, NORMAN EUGENE JR.               Harris County, Texas
3730 KIRBY DR SUITE 1200                201 Caroline    Houston, Texas 77002
HOUSTON, TX 77098                       (P.O. Box 4651, Houston, Texas 77210)
Tel: (713) 660-6839
Bar No.: 12236650                       GENERATED BY: ROQUEMORE, AUDREY MA   73Z//9941839

                    OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock _____ .M., on the _____ day of _____, _____.

Executed at (address) _____ in

_____ County at 9:00 o'clock A .M., on the 10th day of October,

2014, by delivery to the within named_____

THE ACCOMPANYING _____

To certify which I affix my hand officially the _____ day of _____, _____.

Fee: $_____                         _____

                                        _____ of _____ County, Texas


_____ 73CH #1259    By _____
        Affiant                             Deputy

On this day, _____, known to me to be the person whose
signature appears on the foregoing return, personally appeared . After being by me duly sworn,
he/she stated that this notice was executed by him/her in the exact manner recited on the
return.

SWORN TO AND SUBSCRIBED BEFORE ME, on this _____ day of _____, _____.


                                        _____
                                        Notary Public


N.INT.PRER.P

No. 2014-58410

IN THE INTEREST OF                                    IN THE DISTRICT COURT
OF

J. A. D.                                              HARRIS COUNTY, TEXAS

A CHILD                                              245TH JUDICIAL DISTRICT


## Respondents affidavit


On July 18, 2014,1 was served with a Citation and a Restraining Order issued by Chris Daniel-District Clerk, Harris County at the request of Lester, Norman Eugene Jr. an attorney for the parents of my two children, Jos███████████ D.O.B. October 30,1995 (18) and Jordan Adrianna Davis D.O.B. July 26, 2002 who was 11 year of age at the time the Citation and Restraining Order were signed) deceased mother, Sandra Lopez. They were both signed on July 3, 2014 by Associate Judge Cooper.Both the Citation and the Restraining Order name Sandra Lopez deceased as the plaintiff and myself (Joseph Andre Davis) as the defendant. The Citation was claimed to have been filed on June 30,2014 by Sandra Lopez whose death occurred on May 24, 2014 which is more than one month prior to the date of June 30, 2014.

The instruments attached to the citation the deceased Sandra Lopez was alleged to have filed in the 245th Judicial District Court requesting Modification of Child-Parent Relationship consist of a copy of a Child Support Review Order dated November 17, 2003 where a routine negotiation conference was held pursuant to Texas Family Code Chapter 233 and Temporary Restraining Order, and Order Setting Hearing for Temporary orders.

The Citation served to me on Friday, July 18, 2014 included in it the statement "YOU HAVE BEEN SUED, you may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a. m. on the Monday next following the expiration of 20 days AFTER you were served this citation and petition a default judgment may be taken against you".

I spent almost the whole night and most of the following morning trying to find an attorney. Every attorney I contacted said that they could not represent me on such short notice, but I returned back to his court regardless on Thursday, July 24, 2014. Without batting an eye lid the judge immediately stripped me of the Managing Conservatorship of my 11 year old child ~~Jordan Adrianna Davis~~. He gave me and her maternal grandparents, Floyd Daniel Lopez and Irma Olga Jimenez rotating equal visitation.

After that he rescheduled me to come back at 1:30 p.m. on Wednesday, August 13 which just happened to be the grandparents' rotation turn. At the end of the legal hearing which had previously been presented to me as "mediation", I had been stripped of my parental assumption. No legally documented evidence or legal proof such as police reports or CPS reports or any other legal reports or documents from anywhere or any persons at all were ever presented. Floyd Daniel Lopez, Irma Olga Jimenez, my two sons whom they had somehow managed to entice or coerce to make false accusations of abuse that were false and erroneous..

Floyd Daniel Lopez and Irma Olga Jimenez also coerced and enticed my son ~~Jordan Adrianna~~ to illegally falsify documents claiming to be the legal guardian of Jordan Adrianna Davis in order to gain access to her share of Sandra's life insurance and to claim money from the Teachers Retirement Association, and MetLife designated to contribute towards her support.

There has never been any documented legal evidence to show or prove that Managing Conservatorship of my child should have been revoked from me or that JAD should have been removed from my home or that her maternal grandparents should have been given Temporary Managing Conservatorship because she was in imminent emotional or physical danger.

The unambiguous mandate of the Texas Family Codes is that a non-parent cannot be awarded Managing Conservatorship of a child in lieu of a parent unless a preponderance of clear and convincing evidence demonstrate that the parent as a Managing Conservator would significantly harm the child physically or significantly harm the child emotionally. Even if Irma Olga Jimenez and Floyd Daniel Lopez did have standing to sue for Temporary Managing Conservatorship (which they did not) they still would fail to meet the burden of proof in a fair and just court decision (which it was not).

The Family Code mandates that in the absence of a history of domestic violence, a parent "shall" be appointed sole Managing Conservator. l reiterate, I do not have a history of any type of violence,

When Sandra first found out just how ill she was, by mutual agreement, we decided that it was in the best interest of Jordan that I take her into my home until she was able to care for her again. I drove Jordan to and from school during that time. Sandra died while Jordan was in my care and possession. I immediately informed Irma Olga Lopez that ~~she would~~ be living in my home on a permanent basis. I allowed Jordan to return back to the grandparents' home and stay for a week or more after the death of Sandra to finish out the rest of her school year and to be with the grandparents some because all had been recently bereaved by Sandra's death. (They didn't send her to school at all)

The attorney for the grandparents reminded the judge that he had forgotten to schedule me for mediation with the case no. 199709681 grandparents. The judge then told me that I would be scheduled for mediation. To add insult to injury, after the fact that he had already removed my child from my home he said that he was also sending an attorney and an investigator he had already chosen beforehand to inspect my home and interview my other children.

The Citation lists Sandra Lopez as the plaintiff, the attached instrument list Floyd Daniel Lopez and Irma Olga Jimenez as the petitioners that fact is not listed on the citation. At the time of Sandra Lopez's death on May 24, 2014 she did not have a pending suit for Modification of Parent-Child Relationship for them to intervene in. In actuality, Irma Olga Jimenez and Floyd Daniel Lopez never petitioned the court at all for Temporary Managing Conservatorship. their attorney and bogusly claimed that Sandra had sued and are using her child support case's cause No. 9709681 then they attached their alleged petition to it. I have exhibit's of all of this information and will provide it for the court.

Floyd Daniel Lopez and Irma Olga Jimenez had no legal standing to petition the court for temporary Managing Conservatorship yet the Associate Judge knowing allowed them to do so by alleging that they were intervening in a pending suit Sandra Lopez filed prior to her demise and then attaching their information onto it.

While they did not provide any proof or evidence to the court to support the allegations in the petition and affidavits they filed because there was none, the Associate Judge allowed Floyd Daniel Lopez, Irma Olga Jimenez and my own sons ~~Jordan Lopez~~ and ~~Jordan Lopez~~ II whom they had somehow persuaded or coerced to be their witnesses to take oaths to tell the truth to get on the witness stand and purger themselves with their character assassinations of me by making unsubstantiated allegations and obvious lies of child abuse and family violence against me.

This travesty did jeopardize my job and my chance for the promotion. I, too, am a public servant, false documentation of domestic abuse leading to the removal on August 13, 2014 of my child from my

home was very harmful to me. the grandparents were awarded joint managing conservator ship base upon those false allegations of abuse. the 245th district court determined I had a history of family violence and removed my child from my home for a month and a half and she returned back to me on October 16,2014 when if was informed that case no. 199709681 was dismissed. JAD was already adjusted into her life in her new household. JAD and I were always close, but during the time she was living with me our bond grew closer. .

Floyd Lopez stated in the Associate Judge's court how much he dislikes me and has proven to be bitter and vindictive because I never married his daughter.

I already knew how much he vehemently disliked me because he has spent almost all of his spare time in an effort to turn my children against me and to stir up as much conflict as he possible can between us.

Their attorney did not share any information as to the charges he planned to claim against me until we were in the court room and the false allegations begun.

I have no history of family violence or violence of any kind against anyone. I have no police record for any type of violence. Floyd Lopez or someone in the Lopez family has already filed a report of child abuse against me once in 2006 which was determined to be false and unfounded by the investigator and the case was closed.

A New suit which was alleged to have been filed on October 7, 2014, the

Notice of Hearing for Temporary Orders was signed by Judge Moore's Associate Judge Cooper on October 8, 2014. Petitioner's sworn affidavits are dated October 4, 2014 was scheduled a hearing date of October 16, 2014 9:00 A.M. on the same date and time Judge Moore had reset Petitioner's de novo hearing to be heard. There was not a notice of a non- suit dismissal of the previous case served with the citation accompanying the new suit filed. No where on the docket for that time and date shows the Petitioners as having a temporary orders hearing scheduled on that date.

I was served a citation with the Petitioner's NOTICE OF HEARING.

Texas Rules of Civil Procedures Rule 162 Dismissal or Non-Suit "At any time before the Plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case or take a non- suit. However, once a judge announces a decision that adjudicates a claim. That claim is no longer subject to the plaintiffs right to non-suit. The Plaintiffs, Floyd Daniel Lopez and Irma Olga Jimenez petition Cause No. 9709681 had already been fully tried

and decided. According to the rule of law that case cannot be non-suited and dismissed without prejudice.

Texas Family Code 107.021 Discretionary Appointments, (a-1) (b) "In determining to make an appointment under this section, the court (1) shall (A) give consideration to the ability of the parties to pay reasonable fees to the appointee; and balance (B) the child's interest against the cost to the parties that would result from an appointment by taking into consideration the cost of available alternatives for making an appointment. (2) may make an appointment only if the court finds that the appointment is necessary to ensure the determination of the best interest of the child unless the appointment is otherwise required by this code. Section 107.022 "

I Objected because I cannot afford to pay attorney's fees for an amicus attorney/guardian ad litem especially one where there is no proof that her services are even needed or required. No hearing has been held in support of the allegation that she is required but the trial court abused its discretion and appointed only because Plaintiffs attorney requested one because it would be in the "Best Interest" of the Plaintiffs Floyd D. Lopez and Irma O. Jimenez.

See TEX. FAM.CODE. ANN. § 102.003(a)(9); In re M.J.G., 248 S.W.3d at 757-59; see also Troxel, 530 U.S. at 68-69, 120 S.Ct. 2054 (presumption that fit parents act in the best interest of their children); see generally In re Pensom, 126 S.W.3d at 255 (considering limitations of intrusion into the parent-child relationship in the "These parental interests are a fundamental right protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

This matter was mediated by the HA RRIS COUNTY DOMESTIC RELATIONS OFFICE, ALTERNATIVE DISPUTE RESOLUTION DIVISION on November 25,2014, by mediator Kathleen A. Gasner. The parties intend this agreement to be for final orders and this agreement resolves all temporary issues. **This is the actual agreement signed by myself and grandparents.**

My Prayer is that all relief prayed for by Petitioners, Floyd Daniel Lopez and Irma Olga Jimenez be denied and that I, Joseph Andre Davis, be granted all relief requested.

Respondent prays for attorney's fees, expenses and costs as requested above.

Respondent prays for general relief.

I certify that I have this day served copies of this petition on the respondent judge and all other parties to the action in the trial court.

JOSEPH ANDRE DAVIS

3323 Rose Trace Drive

Spring, Texas 77386

TEL: 832-660-7207

By:___joseph andre Davis_____ _Joseph A Davis_____

JOSEPH ANDRE DAVIS, PRO SE jdavis1103@hotmail.com

# APPENDIX G

CRT - 245   CASE - 201456410   *
LOPEZ, FLOYD DANIEL               *
                VS                *
DAVIS, JOSEPH ANDRE               *
BE ADVISED ON 12/19/2014 THE      *
FOLLOWING ACTIVITY OCCURRED.      *
ORDER APPOINTING CONSERVATOR      *
SIGNED                            *

RETURN SERVICE
REQUESTED

FIRST CLASS
PRESORTED
U.S. POSTAGE
PAID
QIM

*JOSEPH ANDRE DAVIS
*3323 ROSE TRACE DRIVE
*SPRING TX
*77386

CHRIS DANIEL
DISTRICT CLERK, HARRIS COUNTY*

1/3/2014 2:17:18 PM
Chris Daniel - District Clerk Harris County
Envelope No. 128956
By: Tiffany Dela Rosa

Exhibit

Joint Managing Conservator

CSRO X
P-13

**NOTICE: THIS DOCUMENT CONTAINS SENSITIVE DATA**
NCP Name:   *JOSEPH ANDREW DAVIS*
CP Name:    *SANDRA LOPEZ*
OAG Number: 0220755141
LAC:   RPMM

### CAUSE NUMBER *9709681*

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE *245TH JUDICIAL DISTRICT* |
| ██████████████ | § | |
| JO██████████ | § | COURT OF |
| CHILDREN | § | *HARRIS* COUNTY, TEXAS |

### CHILD SUPPORT REVIEW ORDER
(Confirmation of Arrears and Modification)

On the *20ᵗʰ* day of *December, 2013,* a negotiation conference was held pursuant to Texas Family Code Chapter 233.

The OFFICE OF THE ATTORNEY GENERAL appeared by a duly authorized representative.

*SANDRA LOPEZ, mother* of the children, hereinafter referred to as Obligee,

[✓]   appeared in person (and <u>Pro Se</u>);

[✓]   agreed to the entry of these orders as evidenced by her signature;

*JOSEPH ANDREW DAVIS, father* of the children, hereinafter referred to as Obligor,

[✓]   appeared in person (and <u>Pro Se</u>);

[✓]   agreed to the entry of these orders as evidenced by his signature;

The following agreements and/or findings are the result of the negotiation conference.

It is FOUND that the Court has jurisdiction of the parties and the subject matter of this suit, and that the following orders are in the best interest of the children.

Unofficial Copy Office of Chris Daniel District Clerk

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

CHILD SUPPORT REVIEW ORDER (CONFIRMATION OF ARREARS AND MODIFICATION)     PAGE 1 OF 13

## CHILDREN

The following children are the subject of this child support review order:

| Name | Sex | DOB | SSN | Birthplace |
|------|-----|-----|-----|------------|
| JO██████████ | M | 10/30/1995 | 637-50-xxxx | CONROE, TX |
| ██████████ | F | 7/26/2002 | 638-82-xxxx | HOUSTON, HARRIS, TX |

## PRIOR ORDER

On *3/28/2007* the Court ordered *JOSEPH ANDREW DAVIS* to pay current child support of *$465.00 monthly*, beginning *5/1/2007* and *monthly* thereafter.

## JUDGMENT ON ARREARS

It is FOUND and CONFIRMED that *JOSEPH ANDREW DAVIS* is in arrears in the amount of *$0.00* as of *November, 30th, 2013*. This includes all unpaid child support and any balance owed on previously confirmed child support arrearages or retroactive support judgments as of the specified date. The judgment for this amount is a cumulative judgment.

A judgment is granted against *JOSEPH ANDREW DAVIS* and in favor of the OFFICE OF THE ATTORNEY GENERAL in the amount of *$0.00*, with interest as provided by the law of: the State of Texas, at the rate of 6% per annum; for collection and distribution according to law.

## NOTICE TO OBLIGOR

Any judgment(s) rendered herein is not an installment debt and the entire judgment is now due and owing. The OFFICE OF THE ATTORNEY GENERAL may take whatever enforcement remedies deemed necessary including any remedies required by federal or state laws to collect this judgment, even if regular periodic payments on this judgment are being made.

*JOSEPH ANDREW DAVIS* is placed on notice that should he fail to pay current child and medical support, or toward the arrearage as ordered herein, the OFFICE OF THE ATTORNEY GENERAL may pursue an action to suspend any or all licenses he may have.

Pursuant to Texas Family Code § 157.269, the Court retains jurisdiction over this matter until all current support and all support arrearages, including interest and any applicable fees and costs, have been paid.

Unofficial copy Office of Chris Daniel District Clerk

## MODIFICATION OF SUPPORT ORDER

It is FOUND that since rendition of the support and health care coverage order entitled *AGREED ORDER IN SUIT FOR MODIFICATION OF CHILD SUPPORT OBLIGATION* signed on *3/28/2007* there has been a material and substantial change in the circumstances of the children or parties, or it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines, or the existing order for child support does not include health coverage for the child as required under TFC §154.182, which warrants the following modification of the existing support order.

### FINDINGS REGARDING MEDICAL SUPPORT AND CHILD SUPPORT OBLIGATIONS

It is FOUND:

*JOSEPH ANDREW DAVIS's* gross monthly resources are *$4,166.46* .
Reasonable cost, based upon 9% of *JOSEPH ANDREW DAVIS's* gross monthly resources is *$374.98*.
*JOSEPH ANDREW DAVIS* is obligated to provide support for the following:

(A)     The number of children before the court is - *2* -.
(B)     The number of minor children not before the court residing in the same household with *JOSEPH ANDREW DAVIS* is - *2* -.
(C)     The number of children not before the court for whom *JOSEPH ANDREW DAVIS* is obligated by a court order to provide **medical support**, and who are not counted under Paragraph (A) or (B) is - *1* -
(D)     The number of children not before the court for whom *JOSEPH ANDREW DAVIS* is obligated by a court order to provide **child support**, including those counted in (C) above, and who are not counted under Paragraph (A) or (B) is - *1* -.

*SANDRA LOPEZ* provides health insurance coverage for - *0* - other minor children.

Unofficial Copy Office of Chris Daniel District Clerk

## MEDICAL SUPPORT
(MORE THAN ONE OPTION MAY BE APPROPRIATE)

☐ 1. Health insurance is available or is in effect for the children through the following parent's employment or membership in a union, trade association, or other organization at a reasonable cost to *JOSEPH ANDREW DAVIS*:
☐ *SANDRA LOPEZ* at an actual cost of $ _____ per month.
☐ *JOSEPH ANDREW DAVIS* at an actual cost of $ _____ per month.

**X** 2. Health insurance is not available under option #1, or good cause exists to vary from #1, and health insurance is available to the following parent from another source at a reasonable cost to *JOSEPH ANDREW DAVIS*:
☐ *SANDRA LOPEZ* at an actual cost of $ _____ per month.
**X** *JOSEPH ANDREW DAVIS* at an actual cost of *$140.00* per month.

☐ 3. No parent has access to private health insurance at a reasonable cost or good cause exists to vary from #1 or #2.

☐ 4. Notwithstanding the findings made above, it is FOUND that good cause exists to deviate from the statutory priorities in ordering health insurance for the following reason(s):

_____
_____
_____
_____

It is further FOUND that the following orders regarding health insurance are in the best interest of the children.

## CHILD SUPPORT FINDINGS

It is FOUND:

(1)    the net resources of *JOSEPH ANDREW DAVIS* per month are *$3,213.72*;

(2)    the percentage applied to *JOSEPH ANDREW DAVIS's* net resources for child support is *19%*.

Unofficial Copy Office of Chris Daniel District Clerk

## HEALTH INSURANCE TO BE PROVIDED BY OBLIGOR
### *JOSEPH ANDREW DAVIS*

As additional child support, *JOSEPH ANDREW DAVIS* is ORDERED to obtain, within 15 days after entry of this order, health insurance for each child subject of this suit that covers basic health care services, including usual physician services, office visits, hospitalization, laboratory, x-ray, and emergency services through:

_____ *JOSEPH ANDREW DAVIS's* employment or membership in a union, trade association, or other organization.

*X*      Another source.

*JOSEPH ANDREW DAVIS* is ORDERED to maintain such health insurance in full force and effect for any child, subject of this suit, until the first of the following events occurs for the child:

1. the child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2. the child marries;

3. the child dies;

4. the child enlists in the armed forces of the United States and begins active service as defined by section 101 of title 10 of the United States Code; or

5. the child's disabilities are otherwise removed for general purposes.

If the child is eighteen years of age and has not graduated from high school, IT IS ORDERED that this obligation shall not terminate but shall continue for as long as the child is enrolled

1. under chapter 25 of the Texas Education Code in an accredited secondary school in a program leading toward a high school diploma or under section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of subchapter C of chapter 25 of the Education Code or

2. on a full-time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school.

*JOSEPH ANDREW DAVIS* is ORDERED to convert any group insurance to individual coverage for each child within 15 days of termination of his employment or other disqualification of him from the group insurance. *JOSEPH ANDREW DAVIS* is ORDERED to exercise any conversion options in such a manner that the resulting insurance equals or exceeds that immediately before the conversion.

*JOSEPH ANDREW DAVIS* is ORDERED to furnish *SANDRA LOPEZ* and the Office of the Attorney General Child Support Division a true and correct copy of the health insurance policy or certification and a schedule of benefits within 30 days of the signing of this order. *JOSEPH ANDREW DAVIS* is ORDERED to furnish *SANDRA LOPEZ* the insurance cards and any other forms necessary for use of the insurance within 30 days of the signing of this order.

*JOSEPH ANDREW DAVIS* is ORDERED to provide, within three days of receipt by him, to *SANDRA LOPEZ* any insurance checks, other payments, or explanations of benefits relating to any medical expenses for the children that *SANDRA LOPEZ* paid or incurred.

Pursuant to Texas Insurance Code §1504.051, it is ORDERED that if *JOSEPH ANDREW DAVIS* is eligible for dependant health coverage, but fails to apply to obtain coverage for the children, the insurer shall enroll the children on application of *SANDRA LOPEZ* or others as authorized by law.

In accordance with Texas Insurance Code §§1204.251, 1204.252, and 1504.055(a), it is ORDERED that *SANDRA LOPEZ*, at her option, or others as authorized by law, may file claims for health-care expenses directly with the insurance carrier, and receive payments from the insurer, with and from whom coverage is provided for the benefit of the children. Further, for the sole purpose of §§1204.251 and 1204.252 of the Texas Insurance Code, the party who is not carrying the health insurance policy is designated the managing conservator or possessory conservator of the children.

## ADDITIONAL HEALTH CARE EXPENSES

Pursuant to Texas Family Code §154.183(c), additional healthcare expenses to be allocated between the parties include the following:

(1) any reasonable and necessary health care expenses of the children, including vision and dental expenses, that are not reimbursed by insurance; and

(2) any amounts paid by either party as deductibles or copayments for health care services for the children.

Additional health care expenses of the children are allocated as follows:

*SANDRA LOPEZ* is ORDERED to pay __50__% and *JOSEPH ANDREW DAVIS* is ORDERED to pay __50__% of all additional health care expenses if, at the time the expenses are incurred, the party ordered to provide health insurance for the children is providing health insurance as ordered.

The party who incurs a health care expense on behalf of the children is ORDERED to submit to the non-incurring party(ies) all forms, receipts, bills, and statements reflecting the health care expenses within 30 days after he or she receives them. The party shall itemize those expenses for which payment or reimbursement is sought. Each non-incurring party who is also a parent is ORDERED to pay his or her share or percentage of the health care expenses either by paying the health care provider directly or by reimbursing the incurring party within 30 days after the non-incurring party receives the forms, receipts, bills, or statements.

## WARNING

**A parent ordered to provide health insurance, or to pay additional child support for the cost of health insurance who fails to do so is liable for 100% of necessary medical expenses of the children, without regard to whether the expenses would have been paid if health insurance had been provided, and the cost of health insurance premiums or contributions, if any, paid on behalf of the children.**

## CURRENT CHILD SUPPORT

*JOSEPH ANDREW DAVIS* is ORDERED to pay *SANDRA LOPEZ* current child support of *$610.00* each month beginning the *1ST* day of *January, 2014*, payable on or before that date and on or before the same day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1.  any child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;
2.  any child marries;
3.  any child dies;
4.  any child enlists in the armed forces of the United States and begins active service as defined by sections 101 of title 10 of the United States Code; or
5.  any child's disabilities are otherwise removed for general purposes.

Thereafter, *JOSEPH ANDREW DAVIS* is ORDERED to pay *SANDRA LOPEZ* child support of *$475.00* each month beginning the same day of the first month following the last month in which support was payable according to the preceding paragraph, payable on or before that date and on or before the same day of each month thereafter until the next occurrence of one of the events specified above for the other/another child.

If a child is eighteen years of age and has not graduated from highschool, IT IS ORDERED that the obligation to pay child support for that child shall not terminate but shall continue for as long as the child is enrolled:

1.  under chapter 25 of the Texas Education Code in an accredited secondary school in a program leading toward a high school diploma or under section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of subchapter C of chapter 25 of the Education Code, or

2.  on a full-time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school.

## NO CREDIT FOR INFORMAL PAYMENTS

*JOSEPH ANDREW DAVIS* is ORDERED to pay all child support through the registry prescribed in this decree, and any direct payments by him or any expenditures incurred during his periods of possession shall be deemed in addition to and not in lieu of the child support ordered herein.

## PAYMENT OF SUPPORT AND COSTS

*JOSEPH ANDREW DAVIS* is ORDERED to pay all support through the registry of the court:

Texas Child Support Disbursement Unit
P O Box 659791
San Antonio, TX 78265-9791

for distribution according to law. All payments shall be identified by:

Obligor name *JOSEPH ANDREW DAVIS*,
Obligee name *SANDRA LOPEZ*,
OFFICE OF THE ATTORNEY GENERAL case number *0220755141*,
cause number *9709681*, and
the date on which the withholding occurred.

*JOSEPH ANDREW DAVIS* is ORDERED to pay court costs of *As Billed* to the District Clerk of *HARRIS*

County, Texas on or before the *31ˢᵗ* day of *May, 2014* directly to:

CHRIS DANIEL
P O BOX 4651
HOUSTON, TX 77210-4651

### INCOME WITHHOLDING

Pursuant to Texas Family Code Chapter 158, any employer of *JOSEPH ANDREW DAVIS*, current or subsequent, is ORDERED to withhold income from the disposable earnings of *JOSEPH ANDREW DAVIS* for the children's support as set out in the ORDER/NOTICE TO WITHHOLD INCOME FOR CHILD SUPPORT. Any income withheld from *JOSEPH ANDREW DAVIS*'s disposable earnings for child support and paid according to this order shall be credited against his child support obligation, but shall not discharge any of his child support obligation that exceeds the amount so credited.

It is FOUND *JOSEPH ANDREW DAVIS* is liable for all court ordered child support, regardless of the amounts withheld by any employer or entity, and *JOSEPH ANDREW DAVIS* is ORDERED to pay any court ordered child support not withheld by any employer or entity directly to the Texas Child Support Disbursement Unit as ordered.

The Clerk of the Court is ORDERED, upon request, to cause a certified copy of the ORDER/NOTICE TO WITHHOLD INCOME FOR CHILD SUPPORT, with a copy of Texas Family Code Chapter 158 attached, to be delivered to *JOSEPH ANDREW DAVIS*'s employer.

*JOSEPH ANDREW DAVIS* is ORDERED to provide any subsequent employer with a copy of the ORDER/NOTICE TO WITHHOLD INCOME FOR CHILD SUPPORT.

## STATUTORY WARNINGS

FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT AND, THE STATE CASE REGISTRY WITH CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Unofficial Copy Official Records Dallas District Clerk

## NOTICE TO THE STATE CASE REGISTRY

As is required by the preceding section, any change of a party's residential address, mailing address, home telephone number, name of employer, address of employment, driver's license number, and work telephone number are to be reported by mail to the:

State Case Registry
Contract Services Section
MC 046S
P.O. Box 12017
Austin, TX 78711-2017

in addition to reporting the change(s) to the other parties and the Court.

## REVIEW

Pursuant to 42 USC 666(a)(10), a parent subject to a child support order, at least every three years, has the right to request a review of the ordered child support amounts by contacting the CHILD SUPPORT DIVISION of the OFFICE OF THE ATTORNEY GENERAL.

## AGREED ORDER REQUIREMENTS

For all parties agreeing to this order, an APPROVAL OF CHILD SUPPORT REVIEW ORDER and WAIVER OF SERVICE AND HEARING is included in this order.

## INFORMATION PURSUANT TO TEXAS FAMILY CODE § 105.006

Court:                 *245TH JUDICIAL DISTRICT HARRIS* County, Texas

Cause Number:      *9709681*

### PRIMARY JOINT MANAGING or MANAGING CONSERVATOR / OBLIGEE INFORMATION:

Name:                    *SANDRA LOPEZ*

Residence Address:     *23918 SPRING TOWNE DR*
*SPRING TX 77373-6362-18*

Mailing Address (if different):

Social Security Number:

Driver License Number:

Home Phone:

Employer:              *SPRING ISD*

Employment Address:   *16717 ELLA BLVD*
*HOUSTON TX 77090-4213-17*

Work Phone:

### JOINT MANAGING or POSSESSORY CONSERVATOR / OBLIGOR INFORMATION:

Name:                    *JOSEPH ANDREW DAVIS*

Residence Address:     *3323 ROSE TRACE DR*
*SPRING TX 77386-4000-23*

Mailing Address (if different):

Social Security Number:

Driver License Number:  *05233*

Home Phone:

Employer:              *HOUSTON - CITY OF*

Employment Address:   *901 BAGBY ST*
*HOUSTON TX 77002-2526-01*

Work Phone:

Expected termination date of obligation to pay child support and of orders for possession of, or access to, a child (date of expected emancipation of all minors):

The Court:
[ ] has
[✓] has not
ordered that special restrictions be placed on the distribution of this information pursuant to Texas Family Code § 105.006(c), to wit:

Unofficial Copy Office of Chris Daniel District Clerk

Issued on the 20th day of December, 2013.

_____
CARLA D GROVER
Child Support Review Officer
CHILD SUPPORT DIVISION

x _____
SANDRA LOPEZ, Obligee

x _____
JOSEPH ANDREW DAVIS, Obligor

Approved:

_____
NATHENE W CALDWELL - SBN: 22050800
ROBERT D. HALL - SBN: 24057882
THOMAS W. SINGLETON - SBN: 18438400
LLOYD C. SAUNDERS IV - SBN: 24076673
YOLANDA MARTIN RANDOLPH - SBN: 13124420
ATTORNEY OF RECORD
CHILD SUPPORT DIVISION
CHILD SUPPORT - 0608E
450 N SAM HOUSTON STE 190
HOUSTON, TX 77060
Telephone No. (800)252-8014
Toll Free 1(800)252-8014
FAX No. (281)445-3301

Signed this _____ day of _____ MAR 1 2 2014 .

_____
ASSOCIATE JUDGE PRESIDING

Unofficial Copy Office of Chris Daniel District Clerk

VIII. CONSTITUTIONAL RIGHTS OF PARTIES TO CHILD

CUSTODY LITIGATION

A. Due process of law

1. The right to conceive and rear a child is a basic civil right,

an essential constitutional right far more precious than

property rights

Stanley v. Illinois (1972) 405 U.S. 645

2. The state has no authority to dictate to parents the manner

in which they should rear their children

Troxel v. Granville (2000) 530 U.S. 57, 120 S.Ct. 2054,

147 L.Ed.2d 49

Rich v. Thatcher (2011) 200 Cal.App.4th 1176, 132

Cal.Rptr.3d 897 (to overcome presumption that a fit

parent will act in the best interest of grandchild,

grandparent has burden of proof, and must show by clear

and convincing evidence that denial of visitation would

not be in the grandchild¶s best interest, i.e., would be

detrimental to grandchild. Preponderance of evidence

standard is not sufficient to adequately protect a fit sole

surviving parent¶s federal due process right to raise a

child)

Clear and Convincing Proof

A standard applied by a jury or by a judge in a nonjury trial to measure the probability of the truthfulness of particular facts alleged during a civil lawsuit.

Clear and convincing proof means that the evidence presented by a party during the trial is more highly probable to be true than not and the jury or judge has a firm belief or conviction in it. A greater degree of believability must be met than the common standard of proof in civil actions, preponderance of the evidence, which requires that the facts more likely than not prove the issue for which they are asserted.

The standard of clear and convincing proof—also known as "clear and convincing evidence"; "clear, convincing, and satisfactory"; "clear, cognizant, and convincing"; and "clear, unequivocal, satisfactory, and convincing"—is applied only in particular cases, primarily those involving an equitable remedy,

The Constitutional Right to Be a Parent

The United States Supreme Court has stated: "There is a presumption that fit parents act in their children's best interests, Parham v. J. R., 442 U. S. 584, 602; there is normally no reason or compelling interest for the State to inject itself into the private realm of the family to further question fit parents' ability to make the best decisions regarding their children. Reno v. Flores, 507 U. S. 292, 304. The state may not interfere in child rearing decisions when a fit parent is available. Troxel v. Granville, 530 U.S. 57 (2000)

Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." --Troxel v. Granville (530 U.S. 2000, or 120 S.Ct. 2054, or also, 147 L.Ed.2d 49)—

| | |
|---|---|
| **IN THE INTEREST OF** | **IN THE DISTRICT COURT** |
| **JOSEPH A. DAVIS AND** | |
| **JORDAN A. DAVIS** | **HARRIS COUNTY, TEXAS** |
| **CHILDREN** | **245th JUDICIAL DISTRICT** |

## MEDIATED SETTLEMENT AGREEMENT
## FOR TEMPORARY ORDERS

This matter was mediated by the HARRIS COUNTY DOMESTIC RELATIONS OFFICE, ALTERNATIVE

DISPUTE RESOLUTION DIVISION on November 25, 2014, by mediator Kathleen A. Gasner.  The parties

intend this agreement to be for final orders and this agreement resolves all temporary issues.

The parties to this agreement are the following:

**FATHER:** Joseph A Davis

Address 3333 Rose TRace Spring TX 77386

Telephone Numbers: Home: 832 660 7007 Cell: Same

Email address: Jdavis1103@hotmail.com

**MATERNAL GRANDPARENTS:** Floyd D. López & Irma O. Jimenez

Address: 23918 Spring Towne DR, Spring, TX 77373

Telephone Numbers: 832-567-7788    Cell: 832-368-5703

Email Address: Floyd.lopez26@gmail.com

**CHILDREN:**

Name: ▓▓▓▓▓▓
Date of Birth: October 30, 1995

Name: J▓▓▓▓▓▓is
Date of Birth: July 26, 2002

The parties have agreed to the following:

## POSSESSION

Possession shall be as agreed upon by the parties, and, in the absence of mutual agreement, shall be as follows:

Maternal grandparents shall pick up Jordan from the Father's residence at 7 a.m. on the first day of Father's work week and take the child to school when school is in session. Father shall take the child to the maternal grandparents' residence at 5:30 a.m. on the second day of his work week and the grandparents shall then take Jordan to school. Each work week alternates as follows: Monday and Wednesday; Tuesday and Thursday; Wednesday and Friday; Thursday and Saturday and Friday and Sunday. On the date of this agreement, Father's work week is in the Monday and Wednesday work week cycle. Further, on the work week wherein the maternal grandparents take Jordan to school on Thursday, the grandparents shall have possession of the child at the time school recesses on Thursday and take Jordan to school on Friday and pick up the child from school when school recesses on that Friday and return Jordan to the Father's residence at 6 p.m. on the Sunday immediately following.

Father shall forward his work week calendar to Petitioner's attorney and the amicus attorney by December 1, 2014.

For Thanksgiving, 2014 the maternal grandparents shall have possession of Jordan beginning at 6 p.m. on November 27, 2014 and ending at 6 p.m. on the Sunday, immediately following, November 30, 2014.

For Christmas 2014, the maternal grandparents shall have Jordan beginning at 6 p.m. on December 25, 2014 and ending at 6 p.m. on December 28, 2014.

For Thanksgiving and Christmas, the maternal grandparents shall pick up and return the child to the Father's residence.

The possession schedule outlined above shall be in effect for the 2014-2015 school calendar year.

## OTHER AGREEMENTS

The maternal grandparents may transport Jordan to her softball practices and games as long as Jordan has passing grades and passes STARS. If Jordan is not passing then she cannot participate in softball.

Father shall contact Dr. Sam J. Beser on or before December 6, 2014 and follow any and all recommendations made by Dr. Beser. The Father and maternal grandparents shall cooperate with the therapist by attending any appointments and following the therapist's recommendations.

Petitioners' attorney shall draft the Temporary Orders. Petitioner's attorney shall pass the Temporary Orders hearing set for December 3, 2014.

Petitioner's attorney shall send the proposed Order to Father via email. If Father does not approve same, Petitioner's attorney shall notify Father of the entry date.

## NO. 2014-58410

IN THE INTEREST OF                                        IN THE DISTRICT COURT

J.A.D. AND J.A.D.II                                              245TH DISTRICT

CHILDREN                                                    HARRIS COUNTY, TEXAS


## RESPONDENT'S ORIGINAL ANSWER AND MOTION TO DENY RELIEF IN ORIGINAL PETITION IN SUIT AFFECTING PARENT-CHILD RELATIONSHIP


Now comes JOSEPH ANDRE DAVIS, Respondent, who files this original answer and motion to deny relief in Petitioners' ORIGINAL PETITION IN SUIT AFFECTING PARENT-CHILD RELATIONSHIP. The last three numbers of respondent's driver's license number are 056 . The last three numbers of Respondent's Social Security number are 397.

I.    Parties

JOSEPH ANDRE DAVIS, Respondent, is the biological father of the child the subject of this suit, and Joint Managing Conservator. The biological mother of the child, SANDRA LOPEZ is now deceased.

Petitioners FLOYD DANIEL LOPEZ and IRMA OLGA JIMENEZ, are the maternal grandparents of the child.

J. A. D. is a minor child who was 12 years old at the time the suit was filed.

J.A.D. II has reached the age of majority, but has not graduated from high school.

**2. Denial of allegations**

Respondent denies Petitioners' allegations in the petition to modify parent-child relationship.

**3. Motion to Deny Relief**

a. Respondent is the biological father of the children the subjects of this suit, and a Joint Managing Conservator. The biological mother of the children, SANDRA LOPEZ, is now deceased. This ORIGINAL PETITION IN SUIT AFFECTING THE PARENT-CHILD RELATIONSHIP was brought by Petitioners FLOYD DANIEL LOPEZ and IRMA OLGA JIMENEZ as a request to be appointed Custodial Joint Managing Conservators of Respondent's minor child J. A. D. having the exclusive right to designate the primary residence of the child. J.A.D. II has reached the age of majority, he has a room in and has been given a key to Respondent's home. He has been asked and made welcome to live there, also.

b. Neither the petition nor any attachments provide the court with adequate or any facts to support (a) an allegation that if the child J. A. D. was in the sole custody of her father it would endanger her physical health or significantly impair her emotional development, (b) the allegation that appointing the Petitioners as Custodial Joint Managing Conservators is in the best interest of the child; or (c ) the allegation that the Petitioners have standing to bring this suit.

c. Joseph Andre Davis, Respondent requests that the Court deny Petitioners request to change the designation of the person having the exclusive right to designate the primary residence of the child sought in the ORIGINAL PETITION IN SUIT AFFECTING THE PARENT CHILD RELATIONSHIP, and refuse to schedule a hearing on that issue.

II. *Request for Temporary Restraining Order*

*Joseph Andre Davis, requests that the Court deny Petitioners' request for Emergency Temporary Restraining Order issued against Respondent. Neither the petition nor any attachments provide the court with adequate or any facts at all that support the requirements for the issuance of a temporary restraining order or any restraining order at all Under Title 4. PROTECTIVE ORDERS AND FAMILY VIOLENCE; SUBTITLE B. PROTECTIVE ORDERS and TEXAS RULES OF CIVIL PROCEDURES, RULE 680.*

*Texas Rules of Civil Procedures, Rule 680, " No restraining order shall be granted without notice to the adverse party unless it* clearly *appears from specific facts or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be* **served and a hearing held thereon. Every temporary order issued without notice shall be endorsed with the date of issuance, shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice.**

**Texas Family Code Sec. 82.009. APPLICATION FOR TEMPORARY EX PARTE ORDER. (a) an application that requests the issuance of a temporary ex parte order under Chapter 83 must:**

> **(1) contains a detailed description of the facts and circumstances concerning the alleged family violence and the need for the immediate protective order; and**

> **(2) be signed by each applicant under an oath that the facts and circumstances contained in the application are true to the best knowledge and belief of each applicant.**

**Texas Family Code 83.001. REQUIREMENTS FOR TEMPORARY EX PARTE ORDER. (a) If the court finds from the information contained in an application for a protective order that there is a clear and present danger of family violence, the court, without further notice to the individual alleged to have**

committed family violence and without a hearing, may enter a temporary ex parte order for the protection of the applicant or any other member of the family or household of the applicant.

Joseph Andre Davis, Respondent requests the court to deny Petitioners request to appoint a parenting facilitator. Jurisdictional requirement of prerequisites of standing in grandparent access context serves to ensure that the statutory scheme is narrowly tailored so that a parent's personal affairs are not needlessly intruded upon or interrupted by the trauma of litigation by any third party seeking access . The supreme Court explains in Troxel v. Granville " So long as a parent adequately cares for his or her children (i.e., fit parents) there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children. Petitioners' have not provided any evidence at all that either J. A. D. or Respondent is in need of a parenting facilitator, nor have Petitioners provided any evidence at all that proves Respondent, Joseph Andre Davis unfit as a parent and in need of a parenting facilitator.

Joseph Andre Davis, Respondent, requests that the trial court dismiss the Petitioners' ORIGINAL PETITION IN SUIT AFFECTING THE PARENT - CHILD RELATIONSHIP. Petitioners do not acquire standing under Texas Family Code Sec. 102.003 (a) (9) "a person other than a foster parent who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition. There is no evidence that during the relevant period or before that the Respondent or the deceased parent, SANDRA LOPEZ ever totally abdicated their parental responsibilities to the petitioners at any time at all.

(a) (11) "a person with whom the child and the child's guardian, managing conservator , or parent have resided for at least six months ending not more than 90 days preceding the date of the filing of the petition if the child's guardian, managing conservator or parent is deceased at the time of

the filing of the petition." Legislative law states "presumably, a person residing with a parent and child may care for the child over the course of time, yet that person would not have standing simply by the care that would normally be exercised when residing in the same household with the parent and child.

If the same degree of care and control and possession that would accompany living with the parents were sufficient to establish standing under 102.003 (a) (9), the requirement that the parent be deceased in section 102.003 (a) (11) would be without effect because standing would separately exist under 102.003 (a) (9). We should not construe section 102.003 (a) (9) so broadly that section 102.003 (a) (11) is rendered meaningless."

Petitioners do not acquire standing under Texas Family Code Section 102.004 (a). In addition to the general standing provided by section 102.003, a grandparent or another relative of the child may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that: (1) the suit is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; or (2) both parents, the surviving parent, or custodian either filed the suit or consented to the suit. The Petitioners have not provided any proof at. all, satisfactory or otherwise in support of their allegations that the child being in the sole custody of her surviving parent had or would impair her physical health or emotional development nor does Petitioners' suit have Respondent's consent nor had Petitioners obtained SANDRA LOPEZ'S consent prior to her demise..

(b) "An original suit may not be filed by a grandparent or other person. However, the court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as sole managing

conservator would significantly impair the child's physical health or emotional development." As Respondent has previously stated, the Petitioners have not provided any proof at all in support of this allegation and also, there was no pending suit for the Petitioners to intervene in.

Joseph Andre Davis, Respondent, requests that the Court deny Petitioners ORIGINAL PETITION IN SUIT AFFECTING PARENT-CHILD RELATIONSHIP, and refuse to schedule a hearing on that issue. Respondent requests that the Court deny Petitioners' request for a Temporary Restraining Order and the hearing on temporary orders. Joseph Andre Davis, Respondent, request that the discovery of this suit is in compliance with Texas Rules of Civil Procedure, Rule 190.3, Level 2, (b) (1).

JOSEPH ANDRE DAVIS requests attorney's fees, all expenses, and all costs attributed to both petitions brought by Petitioners' FLOYD DANIEL LOPEZ and IRMA OLGA JIMENEZ . Respondent JOSEPH ANDRE DAVIS prays the Court grant this motion.

### Attorney's Fees, Expenses, Costs, and Interest

It was necessary for Respondent JOSEPH ANDRE DAVIS to secure the services of KAREN TOUPARD ALEXANDER, a licensed attorney to prepare and defend the previous suit brought by Petitioners both of which were filed frivolously or designed to harass Respondent, JOSEPH ANDRE DAVIS.

If the parties are unable to reach an agreement on all issues, Petitioners FLOYD DANIEL LOPEZ and IRMA OLGA JIMENEZ, should be ordered to pay reasonable attorney's fees, costs, expenses, through trial and appeal be taxed as costs and be ordered paid directly to Respondent, who may enforce the order in Respondent's own name as Attorney, Karen Toupard Alexander has already been reimbursed for her services rendered. Respondent requests post judgment interest as allowed by law.

### Prayer

Respondent  JOSEPH ANDRE DAVIS, prays that all relief prayed for by Petitioners FLOYD

DANIEL LOPEZ and IRMA OLGA JIMENEZ be denied, and that Respondent be granted all relief

requested in this answer.


Respondent prays for attorney's fees, all expenses and all costs attributed to both suits
      brought by Petitioners as requested above.


      Respondent prays for general relief.




                                            JOSEPH ANDRE DAVIS
                                            3323  ROSE TRACE DRIVE
                                            SPRING, TEXAS  77386
                                            TEL:  832-660-7207



                                            By:_____

                                            JOSEPH ANDRE DAVIS, Pro Se
                                            firsttank1@gmail.com

# APPENDIX H

**In re deFilippi,** No. 04-07-00506-CV, 235 S.W.3d 319 (Tex.App.- San Antonio, August 30, 2007)(children ordered returned to father after mother's death)
---> Grandparent and nonparent child custody, visitation & access cases

Per Curiam Opinion Delivered and Filed: August 30, 2007

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

In this original proceeding, relator Christopher R. deFilippi seeks a writ of mandamus to obtain possession of his three children after the unexpected death of their mother. The Honorable Oscar J. Hale, Jr., Judge of the 406th Judicial District Court of Webb County, denied relator's habeas corpus petition. We conclude that the trial judge had a ministerial duty to return the children to their father and therefore conditionally grant mandamus relief.

**Factual and Procedural Background**

Christopher is the father of three school-age children, D.F, M.F., and A.F. Christopher was married to Marissa Keene, the children's mother and custodial parent. The couple divorced in Maryland in 2005 after a contentious custody dispute. Christopher was awarded regular, unsupervised visitation with the children. The Maryland court concluded that both parents were of good moral character and loved their children, but declined to order joint custody based on the couple's inability to communicate with each other.

In 2006, after additional contested proceedings in Maryland, Marissa and the children moved to Laredo, Texas. Although Christopher continued to live in Maryland, he visited the children in Laredo approximately one week per month. Christopher did not have a home in Laredo so he and the children stayed in a hotel suite during these visits. Also, during the year the children lived in Laredo, they returned to visit their father in Maryland on several occasions.

Tragically, Marissa was found dead in her swimming pool on June 3, 2007. The children's grandparents, Gladys Cronfel Keene and Roger Keene ("the Keenes"), assumed immediate care of the children while Christopher traveled to Laredo. Three days after Marissa's death, on June 6, 2007, the Keenes filed a suit affecting parent-child relationship in the district court in Webb County, Texas. The Keenes also obtained a temporary restraining order prohibiting Christopher from removing the children from Webb County. On June 13, 2007, Christopher filed a petition for a writ of habeas corpus in the same court seeking the immediate return of the children to him. (2) Judge Hale held a hearing on Christopher's petition for a writ of habeas corpus on June 20, 2007. Numerous witnesses testified, including two child psychologists. Concluding the evidence raised a serious immediate question concerning the children's emotional welfare, Judge Hale denied Christopher's habeas corpus petition. Instead, Judge Hale entered temporary orders appointing the Keenes temporary sole managing conservators of the children and providing Christopher with visitation. These temporary orders prohibited Christopher from removing the children from Webb County. (3)

On July 26, 2007, Christopher petitioned this court for a writ of mandamus to compel Judge Hale to vacate his order denying habeas corpus relief. In his petition, Christopher emphasizes that he has a constitutional right to possession of his children and the trial court had a ministerial duty to return the children to him under the circumstances presented. Christopher contends that the trial court could have refused to return the children only if the evidence raised a serious and immediate question concerning the children's welfare. Christopher argues there was no such evidence presented in the trial court.

On July 27, 2007, we issued an order asking the trial judge and the Keenes to respond to the mandamus petition and set the case for oral argument. Oral argument took place on August 22, 2007, and we issued an order conditionally granting mandamus relief the same day. We now explain our reasons for granting mandamus relief.Habeas Corpus Under the Texas Family Code

Subchapter H of the Texas Family Code governs habeas corpus proceedings for the return of a child. Tex. Fam. Code Ann. §§157.371-.376 (Vernon 2002). This subchapter provides that if the right to possession of a

child is governed by a court order, the court shall compel the return of a child if it finds that the party seeking relief is entitled to possession of a child under a court order. Tex. Fam. Code Ann. §157.372 (Vernon 2002). It further provides that if the right to possession of a child is not governed by an existing order, the court may compel return of the child or issue temporary orders under Chapter 105 if a suit affecting the parent child relationship is pending and the parties have received notice of a hearing on temporary orders set for the same time as the habeas corpus proceeding. (4) Tex. Fam. Code Ann. §157.376 (Vernon 2002). Nevertheless, "[n]otwithstanding any other provision of [Subchapter H], the court may render an appropriate temporary order if there is a serious immediate question concerning the welfare of the child." Tex. Fam. Code Ann. §157.374 (Vernon 2002).

Upon proof of the bare legal right of possession, the grant of the writ of habeas corpus should be automatic, immediate, and ministerial. Schoenfeld v. Onion, 647 S.W.2d 954, 955 (Tex. 1983) (orig. proceeding); Strobel v. Thurman, 565 S.W.2d 238, 239 (Tex. 1978) (orig. proceeding). The trial court is not permitted to consider the child's best interest, nor go beyond the immediate welfare of the child, in a habeas corpus proceeding. Grimes v. Flores, 717 S.W.2d 949, 952 (Tex. App. --San Antonio 1986, orig. proceeding). Mandamus may issue to correct the erroneous denial of habeas corpus relief under the Texas Family Code. Schoenfeld, 647 S.W.2d at 956; In re Lau, 89 S.W.3d 757, 759 (Tex. App.--Houston [1st Dist.] 2002, orig. proceeding)

**Discussion**

In the proceedings below, Christopher clearly established a superior right over the grandparents to possession of his children. See Greene v. Schuble, 654 S.W.2d 436, 438 (Tex. 1983) (orig. proceeding) (in the event of the death of the managing conservator the surviving parent has a right to possession of the children and a court may enforce this right by issuance of a writ of habeas corpus); Klein v. Cain, 676 S.W.2d 165, 172 (Tex. App.--Amarillo 1984, orig. proceeding) (upon managing conservator's death, surviving parent and possessory conservator who had exercised regular visitation was entitled to possession of the children). In fact, as the children's father, Christopher possesses a fundamental, constitutional right to the care, custody, and control of his children. Troxel v. Granville, 530 U.S. 57, 65 (2000) (plurality opinion) ("It is cardinal ... that the custody, care and nurture of the child reside first in the parents ...."). The interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by the Supreme Court of the United States. In re Derzapf, 219 S.W.3d 327, 334 (Tex. 2007) (orig. proceeding) (citing Troxel, 530 U.S. at 65). (5)

When a party such as Christopher establishes his or her legal right to possession of a child, the trial court's authority to refuse habeas corpus relief is very limited. In re Lau, 89 S.W.3d at 759 ("[o]nce the prior order governing the right of possession is established, the only exception [to return of the child] ... is whether it is shown there is a 'serious and immediate question concerning the welfare of the child'") (citing Rocha v. Schuble, 809 S.W.2d 681, 682-83 (Tex. App.--Houston [14th Dist.] 1991, orig. proceeding)). Evidence raising a serious immediate question concerning a child's welfare must be presented before the trial court has any discretion to deny the writ. Grimes, 717 S.W.2d at 952. A serious immediate question requires a situation that, without the court's immediate action, would subject the child to imminent danger of physical or emotional harm. Forbes v. Wettman, 598 S.W.2d 231, 232 (Tex. 1980) (orig. proceeding). Thus, the key issue before us is whether the evidence raises a serious immediate question concerning the children's welfare. The Keenes argue there is ample evidence to support such a finding.

Before examining the evidence in this record, we do note the Keenes argue that under the current Texas Family
Code the trial judge has varying degrees of discretion to deny habeas corpus relief depending upon whether the right to possession is governed by an existing order and whether a suit affecting parent-child relationship is pending at the time of the habeas corpus hearing. See Tex. Fam. Code Ann. §§157.372, 157.376 (Vernon 2002). Thus, according to the Keenes, the fact that a suit affecting parent-child relationship was pending and temporary orders were set for hearing enlarged the trial court's discretion. (6) See Tex. Fam. Code Ann. §157.376(a)(2) (Vernon 2002). We do not reach this argument, however, because the Keenes conceded at oral argument that they assumed the burden of showing a "serious and immediate question concerning the [children's] welfare," and that this is the proper measure of the evidence in this case.

**A Serious and Immediate Question Concerning the Children's Welfare?**

At the hearing below, the Keenes argued that returning the children to Christopher created a serious and immediate concern for the children's emotional welfare. They emphasized that the children had experienced an emotional trauma as the result of "the violent death of their mother," and therefore they needed "to remain with the people who can provide them the most comfort: their grandparents and their nanny." Additionally, the Keenes claimed "an additional aggravating factor is that [Christopher] is a suspect in the death of the children's mother." At the conclusion of the hearing, the trial court denied habeas corpus relief explaining his ruling as follows:

[I]t is the Court's opinion that there does exist a serious question as to the immediate welfare of the children; specifically, there's a serious and immediate concern as to the children's emotional well-being, if removed from their current surroundings and environment that they're familiar with, if they are removed from their extended family who have been with them for the past year, and other circumstances that the children are familiar with here in this city.

Texas appellate courts have repeatedly held that a serious and immediate question concerning the children's welfare requires proof of an imminent danger to the children's physical or emotional well-being, or, stated another way, a dire emergency. Schoenfeld, 647 S.W.2d at 955; McElreath v. Stewart, 545 S.W.2d 955, 958 (Tex. 1977) (orig. proceeding). "Unless it was shown, and the trial court found, that the children were in imminent danger of physical or emotional harm and that immediate action was necessary to protect [them], the trial court [is] without authority to deny the writ." Grimes, 717 S.W.2d at 952. The record shows Judge Hale did not base his ruling on the police investigation into Marissa's death and, on this record, it would not have been appropriate to do so. See id. at 951-952 (pending criminal charges against a parent that could result in incarceration do not raise a serious and immediate question concerning the children's welfare). At the time of the hearing, Marissa's death had not even been ruled a homicide. The autopsy report was still pending and the cause and circumstances of Marissa's death remained undetermined. One officer testified that the police department was investigating the death as a homicide and Christopher was a "suspect." The officer further testified that Christopher had cooperated with police to the extent that he had provided a written account of his whereabouts for June 2 and June 3. To the officer's knowledge, the police had not followed up on or verified this information. On cross-examination, Christopher's counsel attempted to develop more evidence concerning the scope and nature of the police investigation, including information about the number of other suspects involved; however, the trial court sustained objections to this testimony. (7) Clearly, the evidence suggesting wrongdoing on Christopher's part was highly speculative and failed to show an immediate danger to the children. We now address the evidence upon which the trial court based its ruling: removal of the children from their current surroundings, which included a familiar environment and the extended family who had been with them for the last year. (8) The Keenes presented several witnesses who testified about the children's current emotional state and the effect of moving them from Laredo to Maryland with their father.

According to Dr. Gladys Keene, the children's grandmother and a pediatrician, the circumstances of Marissa's death, the children's emotional loss, and the loss of stability and continuity placed the children in imminent danger. Dr. Keene testified that she was concerned about Christopher's inquiries about taking the children with him so soon after Marissa's death, his unwillingness to work with her and the children's psychologist during this time of crisis, and his lack of a plan to transition the children from Laredo to Maryland. Dr. Keene believed that the children would be harmed by moving to Maryland and "los[ing] everything else that gives them security." Dr. Keene explained that she felt she had "no choice" but to intervene because the children "cannot just be ripped up and pulled away like nothing happened to them."

Next, Dr. Joann Murphey, a clinical psychologist, testified generally about a child's need for stability to effectively cope with the loss of a parent. Dr. Murphey, who had interviewed the children just once, testified that she had been involved in cases in which a parent died and the other parent was suspected to have caused their death. In her opinion, the hardest situation for children to cope with was a scenario in which the children believed one parent had harmed another.

Finally, Dr. Guillermo E. Gonzalez, the children's psychologist, (9) stated that he was concerned about the "many losses experienced by the children" and about them "moving out someplace where the same kind of

support is not there." He explained that in his opinion such a move could have "long-lasting effects" or "at least, prolong the healing process." Dr. Gonzalez also stated that the "mystery" surrounding their mother's death created "confusion" for the children, but he also indicated the children appeared to be unaware that Christopher was a "suspect" in the investigation.

The overarching concern expressed by Dr. Keene, Dr. Murphey, and Dr. Gonzalez is that the children's very removal from Laredo and relocation to Maryland constitutes an imminent danger. But, it is well-established that merely removing a child from a familiar environment does not rise to the level of a serious and immediate question concerning a child's welfare in the habeas corpus context. See Hui-Mei Wise v. Yates, 639 S.W.2d 460, 461 (Tex. 1982) (orig. proceeding) (one parent's intention to take a child to another country did not constitute a serious and immediate question concerning the child's welfare); Cowan v. Lindsey, 683 S.W.2d 55, 57 (Tex. App.--Tyler 1984, orig. proceeding) (fact that children had lived with their grandparents for a long time and would have to adjust to moving in with their mother did not show an imminent danger under the Family Code or outweigh the mother's right to possession). The move to Maryland--in and of itself--is not a dire emergency under the law. See Strobel, 565 S.W.2d at 239-40 (the child's desire to remain in his or her present situation did not raise a serious and immediate question concerning the child's welfare); Klein, 676 S.W.2d at 172 (fact that the child's emotional well-being would be better served by not changing his home or his lifestyle did not rise to the level of serious and immediate question concerning the child's welfare).

Indeed, as the Keenes acknowledge in their response brief, "a parent[] being a murder suspect" or even "a child's aversion to being with a parent" does not reach the level of a serious and immediate question regarding the children's emotional welfare. The Keenes urge, however, that the evidence here is sufficient because it goes beyond any such single set of circumstances. We disagree. The accumulation of evidence cannot create a need for immediate protection or a dire emergency where none exists. We conclude that as a matter of law the evidence failed to raise a serious and immediate question as to the welfare of the children. See Grimes, 717 S.W.2d at 952 (granting mandamus relief when the evidence fell far short of the proof required).

## Conclusion

Under the circumstances presented here, a trial court's authority to deny habeas corpus relief is narrow and well-defined. See id. Absent evidence showing that the children were in imminent danger of physical or emotional harm and that immediate action was necessary to protect them, Judge Hale had no authority to deny habeas corpus relief. Id. Here, no such evidence was shown. Accordingly, the petition for a writ of mandamus is conditionally granted. Because the clerk of this court has been provided with copies of orders showing the Honorable Judge Hale has already complied with our order issued August 22, 2007 conditionally granting mandamus relief, formal issuance of the writ will not be necessary.

PER CURIAM

1. This proceeding arises out of Cause No. 2007-CVQ-001020-D4, styled Ex parte D.F., M.F., and A.F., Children, pending in the 406th Judicial District Court, Webb County, Texas, the Honorable Oscar J. Hale, Jr. presiding.

2. Christopher also moved for dismissal of the Keenes' suit affecting the parent-child relationship based on a lack of jurisdiction and the Keenes' lack of standing. These issues have not been formally presented to the trial court.

3. Judge Hale entered almost identical temporary orders in the suit affecting parent-child relationship on July 19, 2007.

4. The Keenes argue that section 157.376(a)(2) governs instead of section 157.376(a)(1) because they filed a suit affecting parent-child relationship in the district court of Webb County three days after Marissa's death. Therefore, they maintain it was within the trial court's discretion to enter temporary orders under Chapter 105 rather than compel return of the children to their father. Section 157.376 reads:

(a) If the right to possession of a child is not governed by an order, the court in a habeas corpus proceeding involving the right of possession of the child:

(1) shall compel return of the child to the parent if the right of possession is between a parent and a nonparent and a suit affecting the parent-child relationship has not been filed; or

(2) may either compel return of the child or issue temporary orders under Chapter 105 if a suit affecting the parent-child

relationship is pending and the parties have received notice of a hearing on temporary orders set for the same time as the habeas corpus proceeding.

(b) The court may not use a habeas corpus proceeding to adjudicate the right of possession of a child between two parents or between two or more nonparents.

Tex. Fam. Code Ann. §157.376 (Vernon 2002).

5. Additionally, "[a] grandparent's rights are generally subordinate to a parent's." In re Derzapf, 219 S.W.3d at 334.

6. The Keenes' argument is that Judge Hale's discretion to issue temporary orders should be measured by the standard in Chapter 105 of the Texas Family Code, which does not require the existence of a serious immediate question concerning the child's welfare, but rather directs that the temporary orders be for the "safety and welfare" of the child. See Tex. Fam. Code Ann. §157.376(a)(2). We believe that such an interpretation of the statute may have constitutional implications after Troxel v. Granville, 530 U.S. 57 (2000) (plurality opinion), but it is not necessary for us to address this issue here.

7. An assistant district attorney, who was not a party to the habeas corpus proceeding, was in the courtroom and objected to counsel's questions.

8. Although not part of our analysis, we acknowledge that the record establishes that Christopher was an involved parent. After the children's move to Laredo, Christopher adjusted his employment duties so that he could work remotely, thereby allowing him to travel to Laredo one week per month. He also coordinated with the children's teachers and volunteered at their school. Moreover, one of the Keenes' experts, Dr. Joann Murphey, testified on cross-examination about the paramount importance of the children's relationship with their surviving parent. Dr. Murphey claimed that the children's being with a parent and having that parent put them to bed at night, kiss them, hug them, and tell them that everything is going to be okay was "much more than a hundred times better" than a paid therapist.

9. Dr. Gonzalez had been counseling D.F. for eight months, M.F. for a shorter period, and A.F. only since Marissa's death.

**In re J.P.C.**, No. [02-07-00184-CV](#) (Tex.App.- Fort Worth, July 17, 2008) (grandparent access order entred after death of parent reversed on appeal - statutory standard for award of possession over surviving parent's objection not met)

**OPINION**

### I. Introduction

In one issue, Appellant Dayna Kay C. argues that the trial court abused its discretion when it granted Appellees Richard and Maurine C.'s petition for grandparent access.  We reverse and render.

### II. Factual and Procedural History

Dayna and Robert C. were married May 20, 1996.  They had one child, J.P.C., who was born March 29, 1999.  Dayna filed for divorce from Robert in May 2002.  After the divorce was filed, Robert went to live with his parents, Richard and Maurine C. ("the grandparents").  Subsequently, the trial court entered temporary orders awarding Dayna primary managing conservatorship and awarding Robert standard possession subject to the grandparents= supervision.

In March or April 2003, the divorce proceedings were halted when Robert was diagnosed with a terminal disease.  Robert died on May 9, 2004.  J.P.C. was five years old at the time.  On May 18, 2004, the grandparents filed an original petition for grandparent access.  On January 31, 2007, the trial court issued a rendition letter granting the grandparents possession of and access to J.P.C.  On May 18, 2007, the trial court signed its order granting the grandparents possession and access.  J.P.C. was eight years old at that time.  Dayna brought this appeal.

### III. Standard of Review

Before we determine the merits of Dayna's appeal, we must first decide what standard of review applies to a trial court's determination of grandparent access and possession under section 153.433 of the Texas Family Code.[1]  Tex. Fam. Code Ann. ' 153.433 (Vernon Supp. 2008).  Although section 153.433 does not specifically include a best interest analysis, section 153.002 dictates that the best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child.  Id.  The determination of a minor's best interest requires the court to balance the possible benefits and detriments to the minor in granting grandparent access and possession.[2]  This type of balancing necessarily involves the exercise of judicial discretion and should be reviewed on that basis. See In re Doe 2, 19 S.W.3d at 281.  Moreover, this type of review is used in many other family law contexts; for instance, in child support, adoption, and custody cases the trial court's best interest finding is reviewed for an abuse of discretion.[3]  Id.  Because of the discretionary nature of the trial court's determination and the similarity to review of best interest findings in other family law contexts, we hold that abuse of discretion is the proper standard of review for a trial court's determination regarding grandparent access and possession.

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  Id.  An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence.  In re Barber, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding).  Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision.  Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002).  A trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is

unsettled.  In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135 (Tex. 2004).

In Dayna's sole issue on appeal, she argues that the trial court abused its discretion when it granted the grandparents access to J.P.C. because the evidence was both legally and factually insufficient to support that decision.  In appropriate cases, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion.  Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Tex. Dep't of Health v. Buckner, 950 S.W.2d 216, 218 (Tex. App.- Fort Worth 1997, no writ).  Furthermore, when an abuse of discretion standard of review applies to a trial court's ruling, findings of fact and conclusions of law aid us in reviewing the propriety of the ruling by providing us with an explanation for the ruling.  Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 852 (Tex. 1992); Samuelson v. United Healthcare of Tex., Inc., 79 S.W.3d 706, 710 (Tex. App.- Fort Worth 2002, no pet.).

## IV. Grandparents Access

### A. Applicable Law

Section 153.433 of the Texas Family Code sets forth the requirements that must be met before a court may order grandparent access to a grandchild.[4]  See Tex. Fam. Code Ann. ' 153.433.  The statute presumes that a parent acts in the child's best interest, and it permits a grandparent to obtain court-ordered access only upon a showing that denial of access will "significantly impair the child=s physical health or emotional well-being."  In re Derzapf, 219 S.W.3d 327, 333 (Tex. 2007) (orig. proceeding).

The Legislature has set a high threshold for a grandparent to overcome the presumption that a parent acts in his or her child's best interest: the grandparent must prove that denial of access would "significantly impair" the child's physical health or emotional well-being.  Tex. Fam. Code Ann. ' 153.433(2) (emphasis added); see Derzapf, 219 S.W.3d at 334.  This high threshold exists so that a court will refrain from interfering with child-rearing decisions made by a parent simply because the court believes that a "better decision" could have been made.  See Derzapf, 219 S.W.3d at 334 (quoting Troxel v. Granville, 530 U.S. 57, 73, 120 S. Ct. 2054, 2064 (2000)).

### B. Overcoming the Statutory Presumption

We must now determine whether the grandparents in this case presented sufficient evidence to overcome the presumption enunciated in section 153.433.  To succeed on their claim, the grandparents had to prove by a preponderance of the evidence that the denial of access would "significantly impair" J.P.C.'s physical health or emotional well-being.  See Derzapf, 219 S.W.3d at 334.

In an effort to demonstrate that the denial of access would significantly impair J.P.C., the grandparents urge us to consider their significant and lengthy past contact with J.P.C. that occurred in their home while they cared for Robert during the divorce proceedings.  They argue that since their access to J.P.C. had been limited and restricted after Robert's death, J.P.C.'s behavior was "different" than it had been when they were able to see each other regularly - that J.P.C. was "longing."  Maurine testified that when they were able to have a supervised visit at the park "[J.P.C.] would take me off and - just take me by the hand and want to go off and, you know, sit under the slide and just sit there and just be there.  She just wanted to be with me."  Richard testified that Dayna's supervision of their visits with J.P.C. "caused [J.P.C.] discomfort" and that J.P.C. acted differently, appearing inhibited, pensive, and superficial when Dayna was present.

The grandparents also argue that a clear visitation schedule was good for J.P.C. because it was not in J.P.C.'s best interest to have the constant pulling back and forth between themselves and Dayna as they tried to organize visitations.  They express their fear that without a court order it would become almost impossible to establish regular visits, and as a result, J.P.C.'s memory of her father would dwindle and her father's side of the family would not be able to be a part of her life.  They argue that their fear was evidenced by the fact that J.P.C. threw pictures of her father into the trash.  The grandparents also point to a letter that Dayna wrote to J.

P.C.'s kindergarten teacher in which Dayna described Robert's illness and his "abnormal behaviors and verbal abusiveness" as an example of how Dayna was, according to the grandparents, "making every effort to

control [J.P.C.'s] memor[y] of her father."

We have closely reviewed the record in this case for evidence that denial of access would significantly impair J.
P.C.'s physical health or emotional well-being, and we are unpersuaded by the grandparents' arguments. Our review of the record shows that the grandparents have not presented any probative evidence to show that J.P.
C.'s physical or emotional health would be significantly impaired by the denial of access. See Butnaru, 84 S.
W.3d at 211. Instead, the grandparents have offered only bare, unsupported allegations that the denial of access would significantly impair J.P.C.

For instance, although they argue that limited and restricted access to J.P.C. was, in their opinion, causing her distress and causing her to act "different, inhibited, pensive, and superficial," the only evidence they offer to show that J.P.C. was distressed was Maurine's testimony regarding her interaction with J.P.C. at the park. However, they do not explain how J.P.C.'s alleged "discomfort" amounts to significant impairment, nor do they offer any evidence connecting J.P.C.'s "different, inhibited, pensive, and superficial" behavior to the visitation schedule or Dayna's supervision of their visits. Instead, the "evidence" they raise is merely their own characterization of J.P.C.'s behavior, and their conclusion that such behavior was the result of the limited and restricted access.

Further, while the grandparents argue that without regular, court-ordered visits, J.P.C. would be significantly impaired because her memory of her father would dwindle, the grandparents have not presented any probative evidence to support their belief. For instance, although the grandparents rely on the fact that J.P.C. threw pictures of her father into the trash as evidence that J.P.C.'s memory of her father was dwindling, the record clearly shows that this event occurred during Dayna and Robert's divorce proceedings, while J.P.C. was regularly visiting their house during Robert's periods of visitation, and not subsequent to Robert's death. Thus, the grandparents' reliance on this piece of evidence is misplaced.

Similarly, the grandparents' characterization of Dayna's letter to J.P.C.'s kindergarten teacher as evidence that Dayna was attempting to "control [J.P.C.'s] memor[y] of her father" is also unfounded. Rather, the record shows that the letter was Dayna's attempt to ease J.P.C.'s transition after the loss of her father by informing her teacher of the difficulties that J.P.C. had faced and issues that may arise as a result. Indeed, J.P.C.'s teacher testified that the letter Dayna gave her "was extremely helpful" in letting her know what she might be dealing with in regards to J.P.C. Moreover, the grandparents have not presented any evidence showing that J.
P.C. has been unable to remember her father. In contrast, the record shows that after Robert's death, J.P.C. had pictures of him in her room and that "she [would] have them up for a while. . . and then she [would] take them down."[5]

Furthermore, the grandparents' position that the denial of court-ordered visitation would significantly impair J.
P.C. is based completely on their expressed feeling that it was not in J.P.C.'s best interest to have the constant pulling back and forth between themselves and Dayna, and their fear that without the court order it would become impossible to establish regular visits. However, there is no evidence that the schedule that existed before litigation, although not as frequent as the grandparents would have liked, was harming J.P.C.; again, this is just Maurine and Richard's opinion that regular, unsupervised visits would be better. With no other evidence to demonstrate how J.P.C. would be significantly impaired, these arguments, in and of themselves, are only reflections of the grandparents' fears and speculations and do not support the trial court's finding that the grandparents overcame the statutory presumption.

Significantly, the only testimony presented by the grandparents on the issue of whether J.P.C. was significantly impaired by the denial of access was their own testimony and the testimony of Karen, J.P.C.'s paternal aunt, who testified that if the grandparents were not given access, J.P.C. would have a lot of questions as to why. But "questions" are not evidence of significant impairment. Once again, other than their own opinions and that of an interested, nonexpert witness, the grandparents produced no evidence that J.P.
C. would be significantly impaired in the absence of court-ordered access. In contrast, Dayna presented evidence demonstrating that J.P.C. was not significantly impaired by the denial of access. While the

grandparents allege that the limited and restricted visits were causing J.P.C. distress, Dayna points out that both the grandfather and the paternal aunt actually testified that J.P.C. was a happy little girl. Similarly, J.P.C.'s kindergarten teacher testified that J.P.C. was a loving, sweet child who was very social and interactive with others. Moreover, Dayna points out that although the grandparents claim that the denial of visitation would significantly impair J.P.C., they actually made no effort to contact Dayna to set up a visitation schedule after Robert's death; instead, they immediately filed a petition for grandparent access. Lastly, Dayna argues that the imposition of visitation would serve only to make J.P.C. live under the constraint of a court order, an action that was unnecessary because Dayna was already offering the grandparents supervised visits with J.P.C.

After reviewing the record, we determine that the evidence produced by the grandparents, largely consisting of their own feelings and speculations, did not rise to the level of proving by a preponderance of the evidence that denial of access would significantly impair the physical health or emotional well-being of J.P.C. The mere opinion of the grandparents themselves and an interested, nonexpert witness that the grandparents should be granted access does not overcome the statutory presumption, nor does it support the court's interference with Dayna's parental rights by awarding the grandparents court-ordered access to J.P.C. Thus, the grandparents have failed to show that the denial of access would significantly impair J.P.C.'s physical or emotional well-being. Because a trial court has no discretion in applying the law to the facts, the trial court's determination that the statutory presumption was overcome was an abuse of discretion. See In re Prudential Ins. Co. of Am., 148 S.W.3d at 135.

## V.  Conclusion

Having determined that the grandparents failed to overcome the statutory presumption by proving by a preponderance of the evidence that the denial of access would significantly impair J.P.C.'s physical health or emotional well-being, we hold that the trial court abused its discretion in awarding the grandparents access to J.P.C. Accordingly, we reverse the trial court's order and render judgment denying the grandparents' petition for access.

BOB MCCOY

JUSTICE

PANEL B:   LIVINGSTON, WALKER, and MCCOY, JJ.

WALKER, J. concurs without opinion.

DELIVERED: July 17, 2008

[1] While both parties assert that the trial court's determination of grandparent access and possession is reviewed under an abuse of discretion standard, they do not cite, nor have we found, any authority specifically applying an abuse of discretion review to section 153.433 appeals. Therefore, we address the issue as a threshold matter here.

[2] Cf. In re Doe 2, 19 S.W.3d 278, 281(Tex. 2000) (observing that, in evaluating a minor's request for waiver of parental notification to obtain an abortion, the trial court's determination of the minor's best interests require that the trial court balance the possible benefits and detriments to the minor in notifying her parents).

[3] See, e.g., Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); In re W.E.R., 669 S.W.2d 716, 716 (Tex. 1984); Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982).

[4] The court shall order reasonable possession of or access to a grandchild by a grandparent if:

. . . .

(2) the grandparent requesting possession of or access to the child overcomes the presumption that a parent

acts in the best interest of the parent=s child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being; and

(3) the grandparent requesting possession of or access to the child is a parent of a parent of the child and that parent of the child:

(A) has been incarcerated in jail or prison during the three-month period preceding the filing of the petition;

(B) has been found by a court to be incompetent;

(C) is dead; or

(D) does not have actual or court-ordered possession of or access to the child.

Tex. Fam. Code Ann. ' 153.433(2)B(3).

[5]The testimony regarding J.P.C.'s interaction with her father's pictures after his death was confusing, at best.

Q: Can you tell the Court whether or not there are any photos of your deceased husband in your home?

A: Yes, there are.

Q: Are there any in your daughter=s room?

A: Yes, there are.

Q: And what has she done with the photos in her room of her dad?

A: She would do different things at different times. During the divorce proceedings. . . . The photographs that had been in my room, she had put them away. Fortunately, fished some of them out of the trash can and take
them and hide those.

Q: Since [Robert's] death, has there been any activity of your daughter with her dad's pictures?

A: Yes. There's still activity to where she'll have them up for a while. Then she'll take them down.

# In re D.R.D., No. 05-06-00666-CV, (Tex.App. Dallas August 8, 2007)  (grandparent access denied)

File: 060666F - From documents transmitted: 08/08/2007

REVERSE and RENDER; Opinion issued August 8, 2007

In The
Court of Appeals
Fifth District of Texas at Dallas
................................
No. 05-06-00666-CV
................................

## IN THE INTEREST OF D.R.D., A CHILD

..............................................
On Appeal from the 336th Judicial District Court
Grayson County, Texas
Trial Court Cause No. 01-1000
..............................................

## MEMORANDUM OPINION

Before Justices Morris, Francis, and Mazzant

Opinion By Justice Morris

This is an appeal from an order granting Betty Gayle Rushing visitation with her grandchild, D.R.D., pursuant to the grandparent access statute. In a single issue, the child's mother, Gayla Renee Randolph, challenges the trial court's order asserting, among other things, that Rushing presented no evidence to satisfy the statutory requirements for such an order. We agree. Accordingly, we reverse the trial court's order and render judgment denying Rushing's petition for access. Because all dispositive issues are clearly settled in law, we issue this memorandum opinion. The facts and procedural history of this appeal are well known to the parties; we do not relate them in detail here.

The record shows that Gayla Renee Randolph and Dustin Daniel, Rushing's son, had one child, D.R.D. Daniel died on September 9, 2005. Rushing filed this suit approximately two months after her son's death seeking court-ordered visitation with her grandchild. After a hearing, the trial court granted Rushing's request.

Section 153.433 of the Texas Family Code sets forth the requirements that must be met before a court may order access to a grandchild by a grandparent. See Tex. Fam. Code Ann. § 153.433 (Vernon Supp. 2006). The statute presumes that a parent acts in her child's best interest and it permits a grandparent to obtain court-ordered access only upon a showing that denial of access will "significantly impair the child's physical health or emotional well-being." Id.; In re Derzapf, 219 S.W.3d 327, 333 (Tex. 2007). We review a trial court's order for an abuse of discretion. See Derzapf, 219 S.W.3d at 333. A trial court abuses its discretion when it grants access to a grandparent who has failed to meet this standard. Id.

To prevail on her petition for access, Rushing had to overcome the presumption that Randolph was acting in the best interests of D.R.D. by proving by a preponderance of the evidence that denying Rushing access to D.R.D. would significantly impair the child's physical or emotional health. Id. The record before us contains no evidence from which the trial court could conclude Rushing met her statutory burden. Only Rushing and Randolph testified at the hearing. Rushing testified that it would be in the child's best interest to have visitation with her. There was no evidence, however, to support a finding that denial of access would significantly impair the child's physical health or emotional well-being.

Absent the requisite evidence, the trial court abused its discretion in granting Rushing's petition for access. Accordingly, we resolve Randolph's sole issue in her favor. We reverse the trial court's order granting Rushing access to D.R.D. and render judgment denying Rushing's petition for access.


JOSEPH B. MORRIS
JUSTICE


060666F.P05


File Date[08/08/2007]
File Name[060666F]
File Locator[08/08/2007-060666F]

AdChoices ▷     ► District Court     ► Court Records     ► Civil Court Case     ► Case Law Cases

**TEMPORARY GRANDPARENT VISITATION ORDER SET ASIDE BY MANDAMUS ON DUE PROCESS GROUNDS | NATURAL PARENT WAS NOT GIVEN OPPORTUNITY TO OBJECT AT AN EVIDENTIARY HEARING.**

**In Re Chambless**, No. 07-0767 (Tex. 2008) (per curiam opinion) (orig. proceeding) (mandamus) (grandparent access visitation order nixed on procedural grounds, due process rights of parents)

IN RE STACY D. CHAMBLESS; from Tarrant County;
2nd district (02-07-00291-CV, ___ SW3d ___, 08-23-07) stay order issued October 24, 2007, lifted
Pursuant to Texas Rule of Appellate Procedure 52.8(c), without hearing oral argument, the Court conditionally
grants the petition for writ of mandamus and orders the trial court to set aside temporary order granting paternal
grandparents visitation to grandchild
Per Curiam Texas Supreme Court Opinion [retrieve four-page pdf version from court's website]
**One-page opinion in the appellate court below:** In re Chambles (Tex.App.- Dallas, Aug. 23, 2007)
**Terms:** Grandparent rights to access to and visitation with grandchild | Grandmother | Grandfather |
natural parent preference | presumption favoring biological parents, mother, father | Grandparent access statute |
Texas Family Code | ex parte hearing | temporary order in suit affecting the parent-child relationship |
**Links:** Texas grandparent SAPCR intervention visitation access and custody caselaw
Grandparent and nonparent child custody suits and intervention - Houston cases | SAPCR Cases |
Other Family Law Rulings from the Texas Supreme Court |
Other 2008 Mandamus Rulings by the Texas Supreme Court | per curiam opinions |
Texas Opinions Home Page

## In re Chambless 257 S.W.3d 689 (Tex. 2008) (per curiam) (orig. proc.)

PER CURIAM

In this original proceeding, we must decide whether the trial court abused its discretion in awarding temporary grandparental visitation without affording the custodial parent an opportunity to be heard. See Tex. Fam. Code § 153.433. Because we conclude the trial court abused its discretion, we conditionally grant mandamus relief and direct the trial court to vacate its August 14, 2007 temporary order granting grandparental visitation.

The relator, Stacy D. Chambless, is the mother of seven-year-old J.A.C. In a suit affecting the parent-child relationship, the trial court appointed Stacy managing conservator and J.A.C.'s father, Bobby D. Cook, Jr., possessory conservator of J.A.C. with the paternal grandparents supervising Cook's visitation.
After Cook died in a motorcycle accident, the paternal grandparents filed a petition seeking visitation under section 153.432 of the Texas Family Code. At the hearing on this petition, the grandparents claimed J.A.C. would be significantly harmed if he did not know his father's side of the family, especially J.A.C.'s two half-brothers. In support of their claim, the grandparents offered into evidence a social study report by Rhonda Hopkins, a court-appointed social worker, who opined that depriving the paternal grandparents access would be "very detrimental" to J.A.C.'s emotional well-being. The social worker was not able to attend the hearing and thus Stacy did not have an opportunity to cross-examine her about the report.

Stacy moved for a directed verdict after the presentation of the grandparents' case-in-chief, arguing that the grandparents had failed to show that J.A.C. would suffer significant physical or emotional impairment absent visitation with his grandparents. The trial court, however, denied the motion and recessed the hearing until the social worker was available to testify. The trial court then signed an "interim" visitation order, allowing the grandparents access to J.A.C. for three days each month over Stacy's objection and without giving her an opportunity to present evidence on the subject.

Stacy thereafter sought mandamus relief and an emergency stay in the court of appeals, but the court denied relief. She then sought the same relief in this Court.

We stayed the trial court's interim order to consider the merits of her petition for writ of mandamus.

"Possession of or access to a child by a grandparent is governed by the standards established by

Dell Open For Business

One End-to-End Technology Partner. Unlimited Possibilities. Learn More

○ ○

Chapter 153 [of the Texas Family Code]." Tex. Fam. Code § 102.004(c). A grandparent seeking court-ordered visitation must "overcome[] the presumption that a parent acts in the best interest of the . . . child by proving by a preponderance of the evidence that denial of possession of or access . . . would significantly impair the child's physical health or emotional well-being." Id. § 153.433(2). A trial court abuses its discretion when it grants access to a grandparent who has not met this standard. In re Derzapf, 219 S.W.3d 327, 333 (Tex. 2007) (per curiam).

Stacy complains that the trial court abused its discretion in awarding the paternal grandparents temporary visitation without affording her an opportunity to be heard. She further argues this temporary visitation order violates her fundamental right as a parent. Parents enjoy a fundamental right to make decisions concerning "the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 65 (2000) (plurality opinion). This "natural right which exists between parents and their children is one of constitutional dimensions," Sw. Bell Tel. Co. v. Garza, 164 S.W.3d 607, 622 (Tex. 2004) (quoting Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976)), and is "far more precious than any property right," In the Interest of M.S., 115 S.W.3d 534, 547 (Tex. 2003) (quoting Santosky v. Kramer, 455 U.S. 745, 758-59 (1982)). "So long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family." In re Mays-Hooper, 189 S.W.3d 777, 778 (Tex. 2006) (per curiam) (quoting Troxel, 530 U.S. at 68). The State "[cannot] infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a better decision could be made." Derzapf, 219 S.W.3d at 333 (quoting Troxel, 530 U.S. at 68).

Here, the paternal grandparents concede Stacy is a fit parent and acknowledge Stacy would likely talk to J.A.C. about his father. Stacy also argues that if given the opportunity, she would present evidence that denying the grandparents visitation is in her child's best interest. A parent must be given a meaningful opportunity to be heard before a trial court awards temporary grandparental visitation. Cf. In the Interest of J.W.T., 872 S.W.2d 189, 198 (Tex. 1994) (Hecht, J., concurring) (noting "that in a free society the State cannot deny a [parent] all right to his child without due process"); see also Stanley v. Illinois, 405 U.S. 645, 651 (1972) (finding that a parent's right to "the companionship, care, custody, and management of his or her children" is an important constitutional interest that "undeniably warrants deference and, absent a powerful countervailing interest, protection"). Thus, the trial court abused its discretion in awarding the paternal grandparents temporary visitation with J.A.C. without affording Stacy a meaningful opportunity to be heard.

Without hearing oral argument, we conditionally grant mandamus relief and direct the trial court to vacate its August 14, 2007 temporary order granting grandparental visitation. Tex. R. App. P. 52.8(c). We are confident the trial court will promptly comply; our writ will issue only if it does not.

Opinion delivered: June 27, 2008

[image] **Send this document to a colleague**                                    **Close This Window** [image]

# OPINION

No. 04-06-00809-CV

**IN RE** Jennifer **SANCHEZ**

Original Mandamus Proceeding[1]

Opinion by: Karen Angelini, Justice

Sitting: Catherine Stone, Justice

Karen Angelini, Justice

Rebecca Simmons, Justice

Delivered and Filed: April 4, 2007

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

Jennifer Sanchez seeks a writ of mandamus to compel the trial court to vacate temporary orders in a child custody modification suit. Because the trial court failed to apply the law properly and Sanchez has no remedy by appeal, we conditionally grant the relief requested.

## Factual and Procedural Background

Sanchez is the mother of three-year-old J.H. In June 2006, Sanchez and Priest Anthony Holmes reached an agreement in a suit to establish the parent-child relationship between Holmes and J.H. At the time, Sanchez was attending a vocational training program in Houston during the week and returning to San Antonio on weekends. Meanwhile, J.H. stayed in San Antonio with Sanchez's mother and step-father and attended daycare. Holmes, who also lived in San Antonio, was not working due to an injury. Under the final agreed order, Sanchez had the "exclusive right to designate the primary residence" of J.H. "without regard to geographic location." Holmes had overnight visits with J.H. either one night or three nights per week until December 2006, when Sanchez's training program ended.[2] Thereafter, Holmes's periods of possession would follow the standard possession order.

In August 2006, Sanchez was involved in an altercation that led to her arrest. Based on this incident, Holmes filed suit to modify the final order, seeking primary custody of J.H. Holmes requested temporary orders removing Sanchez as the person with the exclusive right to designate J.H.'s primary residence, alleging the child's present environment placed her in jeopardy. Following an evidentiary hearing, the trial judge denied the temporary orders sought by Holmes. After discussing the evidence, the trial judge stated, "I guess what's bothered the [c]ourt more is this issue, you know, and Mr. Holmes talked about it a lot yesterday, with regards to why do the grandparents have [J.H.] when he's available." The trial judge then rendered "additional" temporary orders, awarding Holmes possession of J.H. "during the week" from Sunday evening to Friday evening and limiting Sanchez's periods of possession to weekends. The temporary orders, which continue in effect "until further order of the [c]ourt," place conditions on Sanchez's right to possession and grant Holmes the "sole discretion" to decide "whether or not the child is placed in a day care center."

Sanchez filed a petition for a writ of mandamus to challenge these temporary orders. Sanchez argues the trial court clearly abused its discretion by ignoring the standard set forth in § 156.006(b)(1) of the Texas Family Code, which provides in pertinent part:

(b) While a suit for modification is pending, the court may **not** render a temporary order that has the effect of changing the designation of the person who has the exclusive right to designate the primary residence of the child under the final order unless:

(1) the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development[.]

Tex. Fam. Code Ann. § 156.006(b)(1) (Vernon Supp. 2006) (emphasis added).[3] In response, Holmes argues the trial court was not bound to follow § 156.006(b)(1) because the temporary orders do not have the effect of changing Sanchez's exclusive right to designate primary residence.**Mandamus Standard of Review**

Mandamus is the appropriate mechanism to challenge temporary orders made while a child custody modification suit is pending because such orders are interlocutory and not appealable. *In re Mays-Hooper*, 189 S.W.3d 777, 778 (Tex. 2006) (orig. proceeding); *Little v. Daggett*, 858 S.W.2d 368, 369 (Tex. 1993) (orig. proceeding); *In re Levay*, 179 S.W.3d 93, 95 (Tex. App.--San Antonio 2005, orig. proceeding).

Generally, a writ of mandamus will issue only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts," and "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.* at 839. Moreover, "[a] trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, without reference to any guiding rules or principles." *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002). **The Effect of the Temporary Orders**

Section 156.006(b) limits a trial court's authority to render temporary orders that have "the effect" of changing the person with the exclusive right to designate primary residence under a final order. Tex. Fam. Code Ann. § 156.006(b)(1) (Vernon Supp. 2006); *In re Levay*, 179 S.W.3d at 95. To determine if temporary orders effectively change the person with the exclusive right to designate primary residence, we must examine the temporary orders in relation to the final order. *In re Ostrofsky*, 112 S.W.3d 925, 929 (Tex. App.--Houston [14th Dist.] 2003, orig. proceeding). This determination does not turn on the trial court's characterization of its ruling, but on the substance of the temporary orders. *See id.* (temporary order changed person with the exclusive right to determine primary residence even if it did not expressly state it). When the temporary orders "deprive[]" a custodial parent "of any discretion inherent in the right to determine the [child's] primary residence," they have "the effect" of changing the designation of the person with the exclusive right to designate a child's primary residence. *In re Levay*, 179 S.W.3d at 96; *In re Ostrofsky*, 112 S.W.3d at 929.

Holmes asserts the temporary orders give him possession of J.H. only when Sanchez is unavailable and thus do not change her exclusive right to designate primary residence. We disagree. The temporary orders grant Holmes possession of J.H. "during the week every week" "beginning at 6:00 p.m. on Sunday and ending at 6:00 p.m. on Friday" and give him the "sole discretion" to decide if J.H. will attend daycare.[4] Additionally, the temporary orders require the parties to exchange possession of J.H. in San Antonio. The temporary orders do not expire when Sanchez completes her training program, but instead extend indefinitely "until further order of the [c]ourt." Under the final order, Sanchez had greater possession and access to J.H. than Holmes and unrestricted authority to establish the child's primary residence anywhere. The temporary orders take away these rights. As a practical matter, Sanchez no longer has the right to take J.H. to another city and establish the child's main residence there.[5] The temporary orders provide that if Sanchez's training program requires her to remain in Houston on the weekends and J.H. cannot be brought to Houston, the child must remain in Holmes's custody. The record shows this provision was made to limit Sanchez's authority to leave J.H. in the grandparents' care.[6]

Together, the substantial reduction in Sanchez's overall possession time, the restrictions placed on her possession rights, and the indefinite duration of the temporary orders, operate to deprive Sanchez of any discretion inherent in her right to designate J.H.'s principal residence. *See In re Levay*, 179 S.W.3d at 97 (temporary orders placing child in a residential facility indefinitely deprived the custodial parent of any discretion inherent in the exclusive right to determine child's residence); *In re Ostrofsky*, 112 S.W.3d at 929 (temporary orders requiring children to attend a boarding school deprived the custodial parent of any discretion inherent in the right to determine primary residence); *cf. Dalton v. Doherty*, 670 S.W.2d 422, 424 (Tex. App.--Fort Worth 1984, no writ) (order completely deprived the managing conservator of his function when it granted the possessory conservator custody of the child at all times except two weekends per month). We conclude that the temporary orders effectively change the designation of the person with the exclusive right to designate primary residence under the final order. As a result, the trial court was not authorized to render these temporary orders unless it found them to be "necessary" because the child's present circumstances would significantly impair her physical health or emotional development. *See* Tex. Fam. Code Ann. § 156.006(b)(1) (Vernon Supp. 2006).

**Necessity Requirement**

Holmes argues that even if the temporary orders effectively change Sanchez's exclusive right to designate primary residence, mandamus should not issue because the "record is replete" with incidents showing the necessity required under the statute.

Holmes does not argue, and the record does not show, that the trial court found any such necessity. The full evidentiary record is not before us; however, the limited record affirmatively shows the temporary orders were not based on any showing of necessity. When the trial judge made his ruling, he stated "based on what the evidence before the [c]ourt is, I am not going to change the designation on [the final order]." Later, he explained his ruling this way: "It's just because a parent should be there instead of a grandparent. That's why I'm doing it. It's strictly because of that." This is not a statutory ground for rendering temporary orders that effectively change the designation of the person with the exclusive right to designate a child's primary residence under a final order. *See* Tex. Fam. Code Ann. § 156.006(b) (Vernon Supp. 2006). By failing to comply with §156.006(b), the trial court clearly abused its discretion. *See In re Levay*, 179 S.W.3d at 97 (granting mandamus relief when the trial court issued temporary orders in violation of § 156.006(b)).

## Conclusion

We conditionally grant the writ. The trial court is directed to vacate its temporary orders. The writ will only issue if the trial court fails to withdraw its temporary orders within ten days of the date of this opinion.

Karen Angelini, Justice

1. This proceeding arises out of Cause No. 2004-EM5-01458, styled *In the Interest of J.H.*, pending in the 37th Judicial District Court, Bexar County, Texas, the Honorable David A. Berchelmann, Jr., presiding. However, the challenged order was signed by the Honorable John D. Gabriel, Jr., presiding judge of the 131st Judicial District Court, Bexar County, Texas.

2. These modified standard possession provisions provided Holmes possession of J.H. during the week from "as early as 3:00 p.m. on the Tuesday prior to the first, third[,] and fifth Fridays of each month ending at 9:00 a.m. on the first, third[,] and fifth Fridays of each month; and from as early as 3:00 p.m. on the Thursday prior to the second and fourth Friday of each month until 9:00 a.m. the following morning."

3. It is undisputed that the additional grounds for rendering such temporary orders do not apply here. Tex. Fam. Code Ann. § 156.006(b)(2), (3) (Vernon Supp. 2006).

4. We recognize that the temporary orders give Sanchez additional possession time at Christmas and during "periods in which [Sanchez] is not in school while [she] is enrolled in school." The latter provision

appears to allow Sanchez additional possession time during her school holidays, but has no application once her training program ends. Aside from these special provisions, the temporary orders essentially reverse the total possession time given to each parent under the final order.

5. To clarify this point, Sanchez's trial counsel inquired, "So, Your Honor is saying that when [Sanchez] gets out of school and takes a job, if she takes a job some place else, she cannot take the child with her?" The trial judge responded, "On her weekends. The schedule will be on her weekends until further orders of the court."

6. When rendering this part of the temporary orders the trial judge stated: "I will tell you this, Mr. Holmes. If you want to give the [maternal] grandparents ... any time, [it's] totally up to you in your discretion."

File: 061554F - From documents transmitted: 01/03/2008
**REVERSE and RENDER; Opinion issued December 19, 2007**

In The
Court of Appeals
Fifth District of Texas at Dallas

............................

**No. 05-06-01554-CV**

............................

**IN THE INTEREST OF J.R.D., A MINOR CHILD**

...........................................................

**On Appeal from the 255th Judicial District Court**
Dallas County, Texas
Trial Court Cause No. 04-19381-S

...........................................................

MEMORANDUM OPINION
Before Justices Morris, Wright, and Moseley
Opinion By Justice Morris

This is an appeal from an order granting Ted and Anita Dettmer access and visitation with their paternal grandchild, J.R.D. J.R.D.'s mother challenges the trial court's order contending, among other things, that the trial court erred in not granting her motion for judgment because the Dettmers presented no evidence to meet their statutory burden of proof under section 153.433 of the Texas Family Code. We agree the Dettmers failed to meet their statutory burden. Accordingly, we reverse the trial court's order and render judgment denying the Dettmers' petition for access. Because all dispositive issues are clearly settled in law, we issue this memorandum opinion. The facts and procedural history of this appeal are well known to the parties; therefore, we do not relate them in detail here.

The Dettmers filed their petiton for grandparent access pursuant to section 153.432 of the Texas Family Code. *See* Tex. Fam. Code Ann. § 153.432 (Vernon Supp. 2007). Section 153.433 sets forth the requirements that must be met before a court may order grandparent access to a grandchild under section 153.432. *See id*. § 153.433. The statute presumes that a parent acts in the best interests of her child and permits a grandparent to obtain court-ordered access only upon a showing by a preponderance of the evidence that denial of such access would "significantly impair the child's physical health or emotional well-being." *Id*; *see also In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007).

A trial was conducted on the Dettmers' petition before the court without a jury. At the conclusion of the trial, J.R.D.'s mother moved for a "directed verdict" arguing the Dettmers failed to meet their statutory burden of proof. A judgment for the defense following such a motion is proper when (1) a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right to recover or (2) if the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *See Prudential Ins. Co. of America v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

The evidence presented at trial consisted of copies of temporary court orders granting the Dettmers access to J.R.D. and the testimony of J.R.D.'s mother and Anita Dettmer. Both witnesses testified the Dettmers were allowed to visit with J.R.D., but J.R.D.'s mother had not provided access on the dates and times specified in the temporary court orders and she no longer permitted the Dettmers to have unsupervised visitation with the child. Anita Dettmer stated she felt J.R.D. needed to know his grandparents and she felt it was important for her to have a relationship with J.R.D because it was "all [she] had left" of her son, J.R.D.'s father, who had recently died. Although J.R.D.'s mother agreed in her testimony that it was important to her child's growth and emotional health to have a relationship with his grandparents, there is no evidence in the record that denial of access would *significantly impair* J.R.D.'s physical health or emotional well-being. *See Derzapf*, 219 S.W.3d at 333.

Absent any evidence that denial of access would significantly impair J.R.D.'s physical health or emotional well-being, the trial court erred in denying the motion for judgment filed by J.R.D.'s mother. We resolve this issue in favor of J.R.D.'s mother. Because of our resolution of this issue, it is unnecessary for us to address any of the remaining issues presented.

We reverse the trial court's order granting the Dettmers access to J.R.D. We render judgment denying the Dettmers' petition for access.


JOSEPH B. MORRIS
JUSTICE

061554F.P05

_____

File Date[01/03/2008]
File Name[061554F]
File Locator[01/03/2008-061554F]

File: 070016F - From documents transmitted: 03/19/2008
**Reversed and Rendered; Opinion issued March 19, 2008**

In The
Court of Appeals
Fifth District of Texas at Dallas

............................

**No. 05-07-00016-CV**

............................

**IN THE INTEREST OF B.N.S., T.L.S., AND J.R.S., MINOR CHILDREN**

...............................................

**On Appeal from the 330th Judicial District Court**
Dallas County, Texas
Trial Court Cause No. 03-03627-Y

...............................................

OPINION
Before Chief Justice Thomas and Justices Bridges and FitzGerald
Opinion By Chief Justice Thomas

This is an appeal from an order granting Kathy Hartzog and Jerry Grills possession of their three grandchildren pursuant to the grandparent access statute. *See* Tex. Fam. Code Ann. § 153.433 (Vernon Supp. 2007). The children's father, James Radford Sayman, challenges the trial court's order, asserting (1) Hartzog and Grills failed to satisfy the statutory requirements for such an order, and (2) the order is unconstitutional because Sayman is a fit parent and there is no evidence he would completely deny access to the children or that the children would suffer emotional harm if the trial court deferred to his decision. Because Hartzog and Grills do not meet the statutory requirements of section 153.433 of the family code, we reverse the trial court's judgment and render judgment that their petition is denied.

**Background**

Sayman and Jennifer Lou Barger divorced in May 2004 and were named joint managing conservators of their three children. Barger is the daughter of Hartzog and Grills. In May 2005, Barger began abusing drugs and Sayman filed a petition to modify the parent-child relationship. Hartzog and Grills intervened, seeking possession of or access to the children pursuant to the grandparent access statute. The trial court entered temporary orders limiting Barger's right to possession of the children to supervised possession at Hannah's House. However, Barger failed to exercise her right to supervised possession of the children.

After a hearing, the trial court granted both Sayman's and the grandparents' petitions. The trial court designated Sayman as the sole managing conservator of the children, granted Hartzog and Grills specific periods of possession of the children, and designated Barger as possessory conservator of the children with a right to supervised possession of the children at Hannah's House every Wednesday from 5:00 p.m. until 8:00 p.m. and every Saturday from 9:00 a.m. until 12:00 p.m. The trial court also found Barger was not having actual possession of the children. Sayman appealed.

**Analysis**

Section 153.433 of the Texas Family Code sets out the requirements that must be met before a trial court may order access to a grandchild by a grandparent:
The court shall order reasonable possession of or access to a grandchild by a grandparent if:

(1) at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated;

(2) the grandparent requesting possession of or access to the child overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being; and

(3) the grandparent requesting possession of or access to the child is a parent of a parent of the child and that parent of the child:


(A) has been incarcerated in jail or prison during the three-month period preceding the filing of the petition;


(B) has been found by a court to be incompetent;


(C) is dead; or


(D) does not have actual or court-ordered possession of or access to the child.

Tex. Fam. Code Ann. § 153.433. We review a trial court's order granting grandparent access for an abuse of discretion. *In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (orig. proceeding) (per curiam). A trial court abuses its discretion when it grants access to a grandparent who fails to meet the statutory requirements. *Id.*

Sayman argues Hartzog and Grills do not meet the requirements of section 153.433(3) because there was no evidence Barger was incarcerated, incompetent, or dead and Barger has court- ordered possession of the children. Hartzog and Grills contend section 153.433(3)(D) is ambiguous and that "[i]f any one of the three [options] exist, the grandparents have met this requirement." They assert because Barger is not exercising her possession and, therefore, does not have actual possession of the children, they meet the statutory requirements.

The goal of statutory construction is to give effect to legislative intent. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). In doing so, we begin with the statute's plain language before resorting to rules of construction. *Id*. Unless a statute is ambiguous, we discern that intent from the language of the statute itself. *Id*.; *see also Tune v. Dep't of Pub. Safety*, 23 S.W.3d 358, 363 (Tex. 2000) ("We must enforce the plain meaning of an unambiguous statute.").

When used in a statute, the word "or" is typically disjunctive and "signifies a separation between two distinct ideas." *Jones v. State*, 175 S.W.3d 927, 932 (Tex. App.-Dallas 2005, no pet.) (citing *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 581 (Tex. 2000)). The term separates words or phrases, indicating that "either of the separated words or phrases may be employed without the other." *Jones*, 175 S.W.3d at 932; *see In re Porter*, 126 S.W.3d 708, 711 (Tex. App.-Dallas 2004, orig. proceeding [mand. denied]) (use of "or" means only one of two events must take place to trigger application of section). Generally, the use of the disjunctive "or" indicates alternatives and requires that those alternatives be treated separately. *Jones*, 175 S.W.3d at 933; *Cherokee Water Co. v. Freeman*, 33 S.W.3d 349, 354 (Tex. App.-Texarkana 2000, no pet.) (term "or" used to connect words, phrases, or clauses representing alternatives).

Section 153.433(3)(D) is written in the disjunctive with three alternatives. A grandparent has the right to access to or possession of the children if the other statutory requirements are met and if the parent of the child does not have (1) actual possession of the children, (2) court-ordered possession of the children, or (3) access to the children. These three alternatives must be treated separately. If one of the listed alternatives is present, the grandparents do not meet the statutory requirements. *See Jones*, 175 S.W.3d at 933; *Porter*, 126 S.W.3d at 711. In this case, Barger has court-ordered possession of the

children. Accordingly, Hartzog and Grills do not meet the statutory requirements for access to or possession of the children.

The trial court abused its discretion in granting Hartzog and Grills's petition when they did not meet the statutory requirements. Therefore, we sustain Sayman's first issue. Due to our disposition of his first issue, we need not address Sayman's second issue contending the order is unconstitutional.

We reverse the trial court's order granting Hartzog and Grills possession of the children and render judgment denying their petition for access.


LINDA THOMAS
CHIEF JUSTICE


070016f.p05


File Date[03/19/2008]
File Name[070016F]
File Locator[03/19/2008-070016F]

# IN THE SUPREME COURT OF TEXAS

No. 06-0669

IN RE RICKY DERZAPF, RELATOR

ON PETITION FOR WRIT OF MANDAMUS

**PER CURIAM**

In 2005, the Legislature substantially amended the grandparent access statute, codified at Family Code sections 153.432-34. The statute now includes a presumption that a parent acts in his child's best interest, and it permits biological or adoptive grandparents to obtain court-ordered access to a grandchild only if they show that denial of access will "significantly impair the child's physical health or emotional well-being." *Id*. § 153.433(2). We conclude that the trial court abused its discretion in awarding access here because the step-grandfather is neither a biological nor an adoptive grandparent, and the grandmother did not overcome the statutory presumption favoring the children's father. We conditionally grant mandamus relief.

**I**

Ricky and Jennifer Derzapf were married in the mid-1990s. They had two sons, B.G.D.,[1] age 15, and A.J.D., age 10, as well as one daughter, J.B.D., age 6. Jennifer died of leukemia on June 3, 2001. During the summer months immediately following Jennifer's death, Connie and Randy Johnson helped Ricky care for the children. Connie is Jennifer's mother and the children's grandmother; Randy is Connie's husband and the children's step-grandfather. During the first few months, Connie and Randy were the children's primary caregivers. This arrangement was necessitated by Ricky's work schedule, especially shortly after Jennifer's death. Initially, Ricky and the Johnsons worked cooperatively on the children's behalf. On most nights, Ricky joined the Johnsons and his children for dinner at the Johnsons' home.

Once the school year began, however, Ricky attempted to reassert himself as the children's primary caregiver—especially for the two older boys. B.G.D. and A.J.D. began spending most nights at home with Ricky. Tension between Ricky and the Johnsons increased during this time. The Johnsons perceived Ricky as emotionally aloof and a negative influence on B.G.D. in particular; Ricky believed that Connie was assuming the role of mother instead of grandmother, directly undermining his influence and authority over the children.[2] Later, Ricky wanted to keep J.B.D. overnight and on weekends, but the Johnsons preferred a more gradual transition.

On May 6, 2003, Connie and Randy filed an original suit affecting the parent-child relationship (SAPCR) seeking custody of the children and requesting that they be appointed sole managing conservators. The Johnsons alleged that Ricky endangered the children and significantly impaired their physical health and emotional development, and they obtained an ex parte temporary restraining order preventing Ricky from obtaining possession of the children. After a hearing, the trial court dissolved the temporary restraining order and returned the children to their father's conservatorship. The trial court noted in its May 22, 2003 letter ruling:

> The evidence at the temporary orders hearing was not "satisfactory proof" that the father's home raises a serious question concerning the children's physical health and welfare.
>
> The main concern of the Johnsons focused on Ricky Derzapf's "neglect" of the children, based on his allowing the children to spend so much time with their grandparents, and the services provided by Connie Johnson in taking the children to doctor and dentist visits, picking them up from school when sick, etc. I do not see this arrangement as neglectful in any way. It appears that this was a mutually agreed upon arrangement following the death of the children's mother which has been a benefit to everyone involved — the children, the father and the grandparents. There was no testimony that the Johnsons ever objected to providing these services, or that they asked Mr. Derzapf to take on more of the responsibilities. If they had done so, I believe he would have stepped up to the plate.

The trial court held that the Johnsons, as grandparents, "lack[ed] standing to be appointed as Sole Managing Conservators or Joint Managing Conservators of the children under section 102.004(a)(1) of the Texas Family Code" because there was no evidence that Ricky's care of the children created "serious question[s] concerning [their] physical health or welfare" as Family Code section 102.004(a) required.[3] The trial court dismissed the case without prejudice on June 4, 2003.

After the Johnsons filed the SAPCR, Ricky discontinued their access to the children. According to Ricky, over the next twelve to eighteen months the children began to heal from their depression spurred by their mother's death and the ongoing tension between the Johnsons and him. Ricky took the children to counseling, and they have since been released from the counselor's care because of their progress in coping with their depression, as evidenced by their social and academic success in school and by the fact that B.G.D. and A.J.D. are no longer on antidepressant medications.

Connie and Randy filed a petition for grandparent access on March 10, 2004. The trial court appointed Dr. Mark R. Otis, a psychologist, to evaluate Connie, Randy, the Johnsons' sons,[4] Ricky, and the children and to advise the court whether the Johnsons should have access. On October 14, 2005, the trial court held an evidentiary hearing. Dr. Otis testified, and his report was admitted into evidence. The twenty-four page report, prepared after interviewing all parties, concluded:

> It is my opinion that the children will benefit from renewed contact with their mother's family. While the children have certainly benefitted from being pulled away from Connie's untoward communications, the children's loss of relatedness to the entire Johnson family has added to the children's feeling of loss following their mother's death. I have specific concern, however, that Connie is at risk to dominate contact with the children and to project her experiences inappropriately on the children, thereby undermining both Ricky's position and the ability of other Johnson family members to relate fully to the children. Additionally, Ricky and the Johnsons have highly polarized views of the situation and one another. Their conflict is now highly intractable and will not yield easily to change.

Dr. Otis recommended family therapy for Connie, Randy, and their sons, in which the primary focus would involve family members "learning how to monitor, coach, restrain and help Connie: 1. block inappropriate communications or questions to the children about their father or faith matters, 2. respect interpersonal and family boundaries, and 3. be mindful to others' relational needs rather than being so focused on her own." He recommended that the children have visitation with *only* Randy and the Uncles, until such time as Connie's therapist determined that she was ready to join family outings. Alternatively, he recommended that the Johnsons and the Uncles have access to the children for one full day every two months.

At the hearing, Dr. Otis testified that the children had formed attachments to the Johnsons, and it would "not be healthy to cut them off." He testified that B.G.D. and A.J.D. had a "lingering sadness"

about their lack of contact with the grandparents, but that it was "not manifested as depression or behavioral problems or acting out" and that it did not "rise to a level of significant emotional impairment."

On February 1, 2006, the trial court signed temporary orders granting the Johnsons and the Uncles visitation[5] on Thanksgiving Day and the first Saturday of each month.[6] On July 7, 2006, the trial court issued amended temporary orders stating that: (1) Connie and Randy had standing; (2) denying access would significantly impair the children's physical health or emotional well-being; (3) Connie and Randy, but not the Uncles, were granted visitation with the children during part of Thanksgiving day and on the first Saturday of each month and could attend the children's extracurricular activities; and (4) the Uncles could pick up and return the children during these visits.

Ricky sought mandamus relief. After granting his motion for temporary relief and staying the trial court's order, the court of appeals denied the mandamus petition in a per curiam memorandum opinion. __ S.W.3d __. For the reasons expressed below, we conditionally grant mandamus relief and direct the trial court to vacate its amended temporary orders of July 7, 2006.

## II

Initially, we must determine whether Randy Johnson, the children's step-grandfather, has standing to pursue grandparent access.[7] "Possession of or access to a child by a grandparent is governed by the standards established by Chapter 153." TEX. FAM. CODE § 102.004(c). Ricky argues that chapter 153 applies only to "biological or adoptive grandparents," and because Randy is neither, he lacks standing to seek access. TEX. FAM. CODE § 153.432(a). The Johnsons disagree, citing three reasons Randy should have standing to bring a suit for grandparent access. First, they argue that although subsection 153.432(a) states that a "biological or adoptive grandparent" may file a suit for possession or access to their grandchildren, subsection 153.432(b) refers only to "a grandparent" as opposed to a "biological or adoptive grandparent,"[8] and thus even non-biological or adoptive grandparents may seek access under subsection (b). *Compare id.* § 153.432(a), *with id.* § 153.432(b).

We disagree. Subsection (b) merely clarifies the circumstances in which a grandparent may request the possession or access described in subsection (a); it does not redefine who may seek access. "[C]ourts should not give an undefined statutory term a meaning out of harmony or inconsistent with

other provisions, although it might be susceptible of such a construction if standing alone." *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). Because Randy is not a biological or an adoptive grandparent, he lacks standing to seek grandparent access under section 153.432 of the Family Code.

Second, the trial court concluded that Randy had "general" standing to file a suit for access to the grandchildren under section 102.003(a)(9) of the Family Code.[9] Randy argues that his original suit was filed on May 6, 2003, and it is undisputed that he and his wife had care, control, and possession for at least six months ending not more than ninety days before they filed suit. That suit, however, was dismissed, and Ricky argues that because the Johnsons did not file another petition until March 2004, that date should govern for purposes of determining section 102.003(a)(9) standing.

Regardless of whether Randy satisfied section 102.003(a)(9)'s general standing requirements for filing a SAPCR—an issue we do not reach—the trial court awarded access based on the standards set forth in section 153.433, the grandparent access statute. As set forth above, Randy does not meet the more specific standing requirements to pursue a claim under that section. Concluding that Randy had standing under section 102.003(a)(9) when access was granted based on chapter 153 would permit an end run around the requirements of section 153.432(a), a result the Legislature cannot have intended.[10] *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 901 (Tex. 2000) (noting "the traditional statutory construction principle that the more specific statute controls over the more general").

Finally, the Johnsons argue that Randy has a justiciable interest sufficient to confer standing, based on *In re C.T.H.*, 112 S.W.3d 262, 265-66 (Tex. App.–Beaumont 2003, no pet.). That case, however, did not involve the grandparent access statute but was instead a child custody dispute between the child's parents, in which the father sought to modify a prior custody order. The maternal grandparents intervened, alleging that they had had care, control, and possession of the child for at least six months, and requesting that their daughter (the children's mother) retain her role as "primary" joint managing conservator, and alternatively, that they be named "primary" joint managing conservators. *C.T.H.*, 112 S.W.3d at 265. Based on the pleadings and the evidence, the trial court concluded that the grandparents had a justiciable interest in the controversy.

We face a different situation here. The grandparent access statute explicitly sets forth who may

sue for access, and Randy did not meet those criteria. We cannot conclude that he has a justiciable interest in the controversy sufficient to override the statutory text permitting only biological or adoptive grandparents to seek access pursuant to the standards set forth in section 153.433. We conclude that the trial court abused its discretion in concluding that Randy had standing and in ordering that he have access to the children.

### III

We now turn to whether the trial court abused its discretion in awarding Connie access pursuant to section 153.433. The Legislature recently amended the grandparent access statute, effective September 1, 2005, changing the requisite standard for a grandparent to obtain court-ordered access to a grandchild. Previously, the statute permitted grandparent access if it was in the "best interest of the child." Act of Apr. 6, 1995, 74th Leg., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 157, *amended by* Act of May 27, 2005, 79th Leg., R.S., ch. 484, 2005 Tex. Gen. Laws 1345. As amended, section 153.433 now echoes the United States Supreme Court's plurality opinion in *Troxel*, 530 U.S. at 68, that a trial court must presume that a fit parent acts in his or her child's best interest. TEX. FAM. CODE § 153.433. As we recently recognized, "so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family." *In re Mays-Hooper*, 189 S.W.3d 777, 778 (Tex. 2006) (quoting *Troxel*, 530 U.S. at 68); *see also Troxel*, 530 U.S. at 72-73 (noting that the constitution "does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better decision' could be made").

Section 153.433(2) requires that a grandparent seeking court-ordered access overcome the presumption that a parent acts in his or her child's best interest by proving by a preponderance of the evidence that "denial . . . of access to the child would significantly impair the child's physical health or emotional well-being." TEX. FAM. CODE § 153.433(2). A trial court abuses its discretion when it grants access to a grandparent who has not met this standard because "'[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts[,]' even when the law is unsettled." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004)(first alteration in original) (footnotes omitted).

To succeed on her claim then, Connie must overcome the statutory presumption that denying the

children access to her in particular—not Connie and Randy jointly or the Johnson family as a whole—would significantly impair the children's physical health or emotional well-being. TEX. FAM. CODE § 153.432(2). Connie argues that unlike *Mays-Hooper*, there is sufficient evidence to prove that denying her access to her grandchildren would cause the grandchildren's emotional well-being to suffer, and she urges us to consider Dr. Otis's testimony in support of her argument.

While it is true that Dr. Otis believed the children would benefit from renewed contact with the Johnson family, he did not testify that denying Connie access to her grandchildren would significantly impair the children's physical or emotional health. Dr. Otis's testimony pertained either to *both* Connie and Randy or to the Johnson family as a whole, but his recommendations do not support renewed contact with Connie alone. To the contrary, Dr. Otis noted that Ricky had a reasonable interest in preserving "the children's hard-won feelings of peace and security" regained after contact with Connie ceased.

Dr. Otis's report concluded that the children should first have renewed contact with Randy, then with the Uncles and extended family, and only later with Connie. Dr. Otis testified that his recommendation "was based on the strength that I perceived that the grandfather, Randy has." In fact, Dr. Otis testified that he could not recommend visitation with Connie, absent supervision, as Connie's problems controlling her impulses could be "very influential" and detrimental to the children.

And while Dr. Otis testified that it may be harmful for Ricky to cut off the Johnsons' access to B.G.D. in particular and that it was in the children's best interest that they have some contact with their grandparents, his testimony does not support awarding Connie access over Ricky's objection. According to Dr. Otis, "[t]he manner in which she resisted the children transitioning to [Ricky's] full-time care interfered with the children's emotional and behavioral adjustment." He also concluded that Connie actively attempted to alienate B.G.D. from his father and that her behavior was "very damaging" to the parent-child relationship. Moreover, while Dr. Otis noted the children's "sadness" at being unable to see their grandparents, he admitted that these feelings did not rise to the level of a significant emotional impairment.

The Legislature set a high threshold for a grandparent to overcome the presumption that a fit parent acts in his children's best interest: the grandparent must prove that denial of access would "*significantly* impair" the children's physical health or emotional well-being. TEX. FAM. CODE §

153.433(2) (emphasis added). There has been no such showing here. A court may not lightly interfere with child-rearing decisions made by Ricky—a fit parent by all accounts—simply because a "better decision" may have been made. *Troxel*, 530 U.S. at 73.

### IV

Finally, we must consider whether Ricky has an adequate appellate remedy. Determining whether a party has an adequate remedy by appeal requires a "careful balanc[ing] of jurisprudential considerations" that "implicate both public and private interests. . . . When the benefits [of mandamus review] outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate." *In re Prudential*, 148 S.W.3d at 136. We have noted:

> Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.

*Id.*

We have previously granted mandamus relief to require a trial court to vacate its temporary orders granting grandparent access. *In re Mays-Hooper*, 189 S.W.3d at 778. A grandparent's rights are generally subordinate to a parent's. *See* TEX. FAM. CODE § 153.433(2); *see also Troxel*, 530 U.S. at 64-65 (plurality opinion) (discussing how statutory rights extended to grandparents and other relatives can create a substantial burden on a parent's traditional role in a child's upbringing). As the *Troxel* plurality stated, "'[i]t is cardinal . . . that the custody, care and nurture of the child reside first in the parents.'" *Troxel*, 530 U.S. at 65 (plurality opinion) (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)). *Troxel* also recognized that "the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court [of the United States]." *Id*.

The temporary orders here divest a fit parent of possession of his children, in violation of *Troxel*'s cardinal principle and without overcoming the statutory presumption that the father is acting in his children's best interest. Such a divestiture is irremediable, and mandamus relief is therefore appropriate. *In re Mays-Hooper*, 189 S.W.3d at 778; *see also Little v. Daggett*, 858 S.W.2d 368, 369 (Tex. 1993)

(granting mandamus relief to vacate trial court's temporary order granting visitation in suit to establish paternity); *Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (holding that mandamus was an appropriate remedy because "the trial court's issuance of temporary orders [was] not subject to interlocutory appeal"); *accord In re Francis*, 186 S.W.3d 534, 538 (Tex. 2006) (stating that a writ of mandamus may be appropriate for reviewing a temporary injunction); *In re Newton*, 146 S.W.3d 648, 651-52 (Tex. 2004) (conditionally granting mandamus relief and noting that "a temporary restraining order is generally not appealable").

V

Without hearing oral argument, we conditionally grant mandamus relief and direct the trial court to vacate its July 7, 2006 amended temporary orders.[11] TEX. R. APP. P. 52.8. We are confident that the trial court will promptly comply; our writ will issue only if it does not.

**OPINION DELIVERED:**     March 23, 2007

---

[1] Although B.G.D. is not Ricky's biological son, Ricky adopted him.

[2] As an example, he cites a letter Connie wrote to B.G.D., noting that once B.G.D. turned seventeen, he could "move out of [his] dad's house [and] never go back . . . ."

[3] Section 102.004(a) was amended, effective September 1, 2005. The version of the statute in effect when the trial court issued its June 4, 2003 order provided, in relevant part:

[A] grandparent may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:

(1) the order requested is necessary because the child's present environment presents a serious question concerning the child's physical health or welfare

Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 157, *amended by* Act of May 27, 2005, 74th Leg., R.S., ch. 489, 2005 Tex. Gen. Laws 1345.

[4] The Johnsons' three sons (collectively, the "Uncles") were among those interviewed by Dr. Otis.

[5] The Uncles were not parties to the suit.

[6] On June 12, 2006, the trial court heard Ricky's motion to dismiss. At the hearing, Ricky's lawyer stated that Ricky would be inclined to grant some type of access to the children, but not court-ordered access and only access that could be

directed and supervised by Ricky "under his rights as a parent to oversee the interaction with the grandparent." The trial court has not ruled on the motion.

[7] We note that standing was among the factors considered by the United States Supreme Court in concluding that Washington's grandparent access statute was unconstitutional. *See Troxel v. Granville*, 530 U.S. 57, 67, 72 (2000) (plurality opinion)(noting the "breathtakingly broad" scope of the Washington statute at issue, which permitted "any person" to sue for access) (citation omitted).

[8] Family Code section 153.432 provides:

(a) *A biological or adoptive grandparent* may request possession of or access to a grandchild by filing:

(1)       an original suit; or

(2)       a suit for modification as provided by Chapter 156.

(b)        A grandparent may request possession of or access to a grandchild in a suit filed for the sole purpose of requesting the relief, without regard to whether the appointment of a managing conservator is an issue in the suit.

TEX. FAM. CODE § 153.432 (emphasis added).

[9] Family Code section 102.003(a)(9) states, "An original suit may be filed at any time by a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM. CODE § 102.003(a)(9).

[10] This is not to say that grandparents may not seek *conservatorship* by satisfying chapter 102's standing requirements. *See, e.g.*, TEX. FAM. CODE § 102.003(a)(9) (authorizing suits by any "person, other than a foster parent" who has had actual care, control, and possession of the child for a designated period); *id*. § 102.004(a) (authorizing a grandparent to file an original suit seeking managing conservatorship under certain circumstances). *Possession* and *access*, however, are governed by chapter 153. *Id*. § 102.004(c).

[11] Because the trial court abused its discretion in ordering access pursuant to section 153.433(2) of the Family Code, we do not reach Ricky's constitutional concerns nor whether the trial court abused its discretion in granting the Johnsons possession of, as opposed to access to, the children.